# EXHIBIT A (CONT.)





**GE Healthcare Financial Services**

## SECOND AMENDMENT TO SCHEDULE DATED AS OF 05/09/2003
## TO MASTER SECURITY AGREEMENT DATED AS OF 05/09/2003
### INTERNAL CONTRACT REFERENCE NUMBER 8527100

This is an Amendment dated as of August 25, 2006 to the Schedule referenced above between General Electric Capital Corporation ("Secured Party") and New York Meg, L.L.C. ("Debtor'), as previously amended by that certain Amendment to Schedule Dated as of 5/09/2003.

**Original**

| Number of Units | Site | Supplier/ Manufacturer | Financed Equipment Cost | Model, VIN #, Unit # and/or Type Of Equipment |
|---|---|---|---|---|
| 1 | New York MEG Center, LLC 300 East 39th Street New York, NY 10016-2140 | 4-D Neuroimaging 9727 Pacific Heights Blvd San Diego, CA 92121 | $2,167,556.76 | 4D Neuro Imaging Brain Mapping System |

**Amended**

| Number of Units | Site | Supplier/ Manufacturer | Financed Equipment Cost | Model, VIN #, Unit # and/or Type Of Equipment |
|---|---|---|---|---|
| 1 | New York MEG Center, LLC 300 East 39th Street New York, NY 10016-2140 | 4-D Neuroimaging 9727 Pacific Heights Blvd San Diego, CA 92121 | $2,061,730.73 | 4D Neuro Imaging Brain Mapping System |

**Original**

**TERMS AND INSTALLMENTS:**

Term of Schedule: 12 months. The term of this Schedule will commence on 10/25/2005 (the "Term Commencement Date") and continue for the term specified immediately above, subject to and in accordance with the terms and conditions of this Schedule.

**Amended**

**TERMS AND INSTALLMENTS:**

Term of Schedule 12 months. The Term of this Schedule will commence on 8/25/2006 (the "Term Commencement Date") and continue for the term specified immediately above, subject to and in accordance with the terms and conditions of this Schedule.

Rev. 10/28/03

Amendment

The Monthly Installment Section is hereby amended as follows:

**Original -** Monthly Installment: 11 Months @ $43,764.45, 1 Month @ $1,842,808.48, plus all applicable taxes. All payments will be in arrears. In states assessing sales and use tax, your Monthly Installments will be adjusted to include the applicable sales and use tax at the same rate that was used to calculate your Monthly Installments under this Agreement. Debtor's payment of Monthly Installments to Secured Party will be in accordance with the "Monthly Installments/Down Payments" section of the Agreement.

**Amended -** Monthly Installment: 11 Months @ $40,000.00, 1 Months @ $1,762,782.30, plus all applicable taxes. All payments will be in advance. In states assessing sales and use tax, your Monthly Installments will be adjusted to include the applicable sales and use tax at the same rate that was used to calculate your Monthly Installments under this Agreement. Debtor's payment of Monthly Installments to Secured Party will be in accordance with the "Monthly Installments/Down Payments" section of the Agreement.

EXCEPT AS PROVIDED IN THIS AMENDMENT, ALL OTHER TERMS AND CONDITIONS OF THE ABOVE REFERENCED SCHEDULE SHALL REMAIN IN FULL FORCE AND EFFECT AS ORIGINALLY WRITTEN.

Secured Party:

General Electric Capital Corporation

By: _____

Print Name: ____Jon Force____

Title: Duly Authorized Signatory

Debtor:

New York Meg, L.L.C.

By: _____

Print Name: ___Jim Cerutti___

Title: __Vice President__

# EXHIBIT C

 **GE Healthcare Financial Services**

## PROMISSORY NOTE
### INTERNAL CONTRACT REFERENCE NUMBER 8527143
### INTERNAL ORDER REFERENCE NUMBER 861-404087

Dated as of _____

FOR VALUE RECEIVED, New York MEG, L.L.C. ("Maker"), located at 3037 South Meridian Street, Indianapolis, IN 46217-3227, promises, jointly and severally if more than one, to pay to the order of General Electric Capital Corporation or any subsequent holder hereof (each, a "Payee") at its mailing address at P.O. Box 641419, Mail Code W-490, Pittsburgh, PA 15264-1419 or at such other place as Payee may designate, the principal sum of $775,000.00, or, if less, the aggregate unpaid principal amount of all advances made by Payee to Maker, as shown on Exhibit A attached hereto, with interest on the unpaid principal balance from time to time outstanding, from and including the date hereof.

Advances under this Promissory Note shall be made from time to time by Payee either to Maker or directly to vendors on Maker's behalf, upon Payee's receipt of Maker's written request on Exhibit B to advance such principal amount (said request to be delivered at least ten (10) days prior to the date the advance is to be made). Each advance shall be noted by Payee on Exhibit A attached hereto. Advances will continue until the "Principal Payment Commencement Date", defined as the earlier of a) six months from the date of this Promissory Note stated above or b) total advances have been made equaling the principal sum disclosed in the first paragraph. No further advances will be made under this Promissory Note after the Principal Payment Commencement Date.

The interest rate with respect to this Promissory Note will be established for each individual advance on Exhibit A, based on the following formula: 8.17% per annum plus or minus, as applicable, the number of points that the yield on 3 Year Treasury Constant Maturities on the date of the advance, is above or below 2.05%, which was established based on the 3 Year Treasury Constant Maturities as of the week ending April 11, 2003, to be paid in lawful money of the United States, in 39 consecutive monthly installments of principal and interest of 3 Months @ $0.00, 12 Months @ $16,000.00, 23 Months @ $29,841.28 (all payments in arrears) and a final installment which shall be in the amount of the total outstanding principal and interest ("Payment Schedule"). The Payment Schedule may be adjusted by Payee for advances less than the principal amount stated above, accrued interest due, or a change in the interest rate. The final Payment Schedule will be detailed on Exhibit A.

At the Principal Payment Commencement Date, Maker will begin paying principal and interest on the advances outstanding, based on the interest rate applicable on the Principal Payment Commencement Date. The first principal and interest installment shall be due and payable _____ and the following installments shall be due and payable on the same day of each succeeding month (each, a "Payment Date"). Maker authorizes Payee to complete the first Payment Date upon the Principal Payment Commencement Date.

Interest will accrue on each advance noted on Exhibit A at the interest rate disclosed in the first paragraph of this Promissory Note, commencing on the date of each individual advance by Payee until the Principal Payment Commencement Date. All accrued interest will be financed and included in the Payment Schedule, based on the interest rate in effect on the Principal Payment Commencement Date.

# PROMISSORY NOTE

All payments shall be applied first to interest and then to principal. The acceptance by Payee of any payment which is less than payment in full of all amounts due and owing at such time shall not constitute a waiver of Payee's right to receive payment in full at such time or at any prior or subsequent time. Interest shall be calculated on the basis of a 360 day year and will be charged for each calendar day on which any principal is outstanding.

Time is of the essence hereof. If any installment of principal and interest or any other sum due under this Promissory Note is not received within ten (10) days after the applicable Payment Date, the Maker agrees to pay in addition to the amount of each such installment a late payment charge of five percent (5%) of said installment, but not exceeding any lawful maximum. In the event that (i) Maker fails to make payment of any amount due hereunder within ten (10) days after the same becomes due and payable; or (ii) Maker defaults or fails to perform under any term or condition contained in any other agreement with Payee, then the entire principal sum remaining unpaid, together with all interest thereon and any other sum payable under this Promissory Note, at the election of Payee, shall immediately become due and payable, with interest thereon at 20% per annum from the date of such accelerated maturity until paid.

The Maker may prepay in full, but not in part, its entire indebtedness hereunder upon payment of an additional sum as a premium equal to the following percentages of the original principal balance for the indicated period:

Prior to the first annual anniversary date of this Promissory Note: no prepayment permitted;
Month 13 through and including month 24 of this Promissory Note: four percent (4%);
Month 25 through and including month 36 of this Promissory Note: three percent (3%);
Month 37 through and including month 39 of this Promissory Note: two percent (2%); plus all other sums due hereunder.

A default by Maker or any entity managed or controlled by Maker or by any principal of Makers under any other agreement or contract with Payee, regardless of when the agreement or contract was entered into, will, at Payee's sole option, if the default is not cured within ten days after written notice of default, constitute a default under this Promissory Note and all other agreements and contracts between Maker and/or such a principal or entity and Payee.

It is the intention of the parties hereto to comply with the applicable usury laws; accordingly, it is agreed that, notwithstanding any provision to the contrary in this Promissory Note, in no event shall this Promissory Note require the payment or permit the collection of interest in excess of the maximum amount permitted by applicable law. If any such excess interest is contracted for, charged or received under this Promissory Note, or in the event that all of the principal balance shall be prepaid, so that under any of such circumstances the amount of interest contracted for, charged or received under this Promissory Note on the principal balance shall exceed the maximum amount of interest permitted by applicable law, then in such event (a) the provisions of this paragraph shall govern and control, (b) neither Maker nor any other person or entity now or hereafter liable for the payment hereof shall be obligated to pay the amount of such interest to the extent that it is in excess of the maximum amount of interest permitted by applicable law, (c) any such excess which may have been collected shall be either applied as a credit against the then unpaid principal balance or refunded to Maker, at the option of the Payee, and (d) the effective rate of interest shall be automatically reduced to the maximum lawful contract rate allowed under applicable law as now or hereafter construed by the courts having jurisdiction thereof.

It is further agreed that without limitation of the foregoing, all calculations of the rate of interest contracted for, charged or received under this Promissory Note which are made for the purpose of determining whether such rate exceeds the maximum lawful contract rate, shall be made, to the extent permitted by applicable law, by amortizing, prorating, allocating and spreading in equal parts during the period of the full stated term of the indebtedness evidenced hereby, all interest at any time contracted for, charged or received from Maker or otherwise by Payee in connection with such indebtedness; provided, however, that if any applicable state law is amended or the law of the United States of America preempts any applicable state law, so that it becomes lawful for the Payee to receive a greater simple interest per annum rate than is presently allowed, the Maker agrees that, on the effective date of such amendment or preemption, as the case may be, the lawful maximum hereunder shall be increased to the maximum simple interest per annum rate allowed by the higher of the amended state law or the law of the United States of America.

# PROMISSORY NOTE

The Maker and all sureties, endorsers, guarantors or any others (each such person, other than the Maker, an "Obligor") who may at any time become liable for the payment hereof jointly and severally consent hereby to any and all extensions of time, renewals, waivers or modifications of, and all substitutions or releases of any party primarily or secondarily liable on this Promissory Note or any term and provision hereof, which may be made, granted or consented to by Payee, and agree that suit may be brought and maintained against any one or more of them, at the election of Payee without joinder of any other as a party thereto. The Maker and each Obligor hereby waives presentment, demand for payment, notice of nonpayment, protest, notice of protest, notice of dishonor, and all other notices in connection herewith, as well as filing of suit (if permitted by law) and diligence in collecting this Promissory Note, and agrees to pay (if permitted by law) all expenses incurred in collection, including Payee's actual attorneys' fees. Maker and each Obligor hereby waives all benefits of valuation, appraisement and exemption laws.

The Maker and each Obligor hereby waive unconditionally all rights to a jury trial of any claim or cause of action related to, based upon or arising out of this Promissory Note, any related documents, and any dealings between the Maker or any Obligor and the Payee thereto. The scope of this waiver is intended to be all encompassing of any and all disputes that may be filed in any court. This waiver is irrevocable, and may not be modified either orally or in writing. This waiver shall also apply to any subsequent amendments, renewals, supplements or modifications to this Promissory Note and to any other documents or agreements relating to this Promissory Note or any related transaction. In the event of litigation, this Promissory Note may be filed as a written consent to trial by the court.

Maker: New York MEG, L.L.C.

By: _____ (Seal)
Signature

_____ Jim Cerutti/Principal _____
Print name (and title, if applicable)

## EXHIBIT A

AMOUNTS ADVANCED UNDER  PROMISSORY NOTE
DATED AS OF _____
INTERNAL CONTRACT REFERENCE # 8527143
IN THE PRINCIPAL AMOUNT OF
$775,000.00

| DATE | AMOUNT OF ADVANCE | INTEREST RATE | PAYMENT SCHEDULE | AGGREGATE AMOUNT ADVANCED TO DATE |
|---|---|---|---|---|
|  |  |  |  |  |

## EXHIBIT B

### ADVANCE REQUEST UNDER  PROMISSORY NOTE
### DATED AS OF
### INTERNAL CONTRACT REFERENCE # 8527143

Maker, New York MEG, L.L.C., hereby requests an advance under the Promissory Note referenced above in the amount of

$_____.

payable to _____ for the purpose of _____. The amount of this advance

request will be recorded on Exhibit A.

Maker:  New York MEG, L.L.C.

By_____(Seal)
Signature

_Jim Cerutti/Principal_
Print name (and title, if applicable)

Witness _____

 **GE Healthcare Financial Services**

Date:        February 05,2004

Attention:   New York MEG, L.L.C.
             Accounts Payable

Reference:   GE Healthcare Financial Services Financing Transaction

   **Equipment:**   Tenant Improvements
   **Contract #:**   8527143-001
   **Order #:**      861-404087

Thank you for allowing GE Healthcare Financial Services to help you with your financing needs.

The monthly payment for your financing transaction has been revised due to a change in the 3 Year Treasury Constant Maturities from 2.05% to 2.32% at the time of the financing commencement date. Therefore, your monthly payment has been recalculated and is now: 3 months@ $0.00, 12 months@ $16,575.99, and 24 months@ $30,915.54, plus all applicable taxes. The revised interest rate with respect to this financing agreement is 8.44% per annum. The interest rate shall be calculated on the basis of a 360-day year and will be charged for each calendar day on which any pricipal of the finance Equipment cost is outstanding.

Please contact GE Healthcare Financial Services at (800) 225-7480, if you have any questions regarding the above information. A copy of your fully executed contract and monthly invoices will follow.

                        GE Healthcare Financial Services



**GE Healthcare Financial Services**

---

### AMENDMENT TO THE PROMISSORY NOTE DATED AS OF 10/27/2005
### INTERNAL CONTRACT REFERENCE NUMBER 8527143
### INTERNAL ORDER REFERENCE NUMBER 861-404087

This is an Amendment dated as of  to the Promissory Note referenced above between General Electric Capital Corporation ("Lender") and New York Meg, L.L.C. ("Debtor").

The Monthly installments is/(are) hereby amended and restated as follows:

    **Original** –  To be paid in lawful money of the United States, in 39 consecutive monthly installments of principal and interest of 3 Months @ $0.00, 12 Months @ $16,000.00, 23 Months @ $29,841.28 (all payments in arrears) and a final installment which shall be in the amount of the total outstanding principal and interest ("Payment Schedule").

    **Amended** –  To be paid in lawful money of the United States, in 12 consecutive monthly installments of principal and interest of 11 Months @ $16,365.04, 1 Months @ $681,070.28 (all payments in arrears) and a final installment which shall be in the amount of the total outstanding principal and interest ("Payment Schedule").

EXCEPT AS PROVIDED IN THIS AMENDMENT, ALL OTHER TERMS AND CONDITIONS OF THE ABOVE REFERENCED SCHEDULE REMAIN IN FULL FORCE AND EFFECT AS ORIGINALLY WRITTEN.

Lender:                                    Debtor:

General Electric Capital Corporation        New York Meg, L.L.C.

By: _____        By: _____

Print Name:     Jon D. Storck            Print Name:   Jim Cerutti
                Vice President

Title:  Duly Authorized Signatory            Title:   Vice President

Amendment (Prom Note)                        Rev. 10/28/03



 **GE Healthcare Financial Services**

---

## SECOND AMENDMENT TO THE PROMISSORY NOTE DATED AS OF 10/27/2005
## INTERNAL CONTRACT REFERENCE NUMBER 8527143
## INTERNAL ORDER REFERENCE NUMBER 861-404087

This is an Amendment dated as of August 25, 2006, to the Promissory Note referenced above, executed and delivered by New York Meg, L.L.C. ("Debtor") to and in favor of General Electric Capital Corporation ("Lender"), as previously amended by that certain Amendment to the Promissory Note Dated as of 10/27/2005 (the "Note").

The following language in the third paragraph of the Note:

"To be paid in lawful money of the United States, in 12 consecutive monthly installments of principal and interest of 11 Months @ $16,365.04, 1 Months @ $681,070.28 (all payments in arrears) and a final installment which shall be in the amount of the total outstanding principal and interest ("Payment Schedule")."

Is hereby amended and restated in its entirety to read as follows:

" To be paid in lawful money of the United States, in 12 consecutive monthly installments of principal and interest of 11 Months @ $15,000.00, 1 Months @ $650,004.28 (all payments in advance) and a final installment which shall be in the amount of the total outstanding principal and interest ("Payment Schedule")."

EXCEPT AS PROVIDED IN THIS AMENDMENT, ALL OTHER TERMS AND CONDITIONS OF THE ABOVE REFERENCED NOTE SHALL REMAIN IN FULL FORCE AND EFFECT AS ORIGINALLY WRITTEN.

Lender:

General Electric Capital Corporation

By: _____

Print Name: ___ Jon Stercy ___

Title:  Duly Authorized Signatory

Debtor:

New York Meg, L.L.C.

By: _____ Jim Cerutti _____

Print Name: ___ Jim Cerutti ___

Title: ___ Vice President ___

Amendment (Prom Note)

Rev. 10/28/03

# EXHIBIT D



# Diligenz®
### At the intersection of speed and accuracy®

## UCC Summary Report

6500 Harbour Heights Pkwy
Suite 400
Mukilteo, WA  98275-4889

Ph: (800) 858-5294
Fx: (800) 345-6059

Order Number: 26386919
Search Date: 5/10/2007
Account Number: 349650
Ref: 214590-136
Subject: New York MEG, L.L.C.
Search Criteria: New York MEG

Total Records Found: 3

### Results for Indiana UCC Search By Company Name - Active

Current as of: 4/19/2007

| GroupID | Filing Number | Category | Filing Date | Exp Date | Debtor Name | Secured Party |
|---------|---------------|----------|-------------|----------|-------------|---------------|
| 0001.001 | 200300004415120 | UCC1 | 5/9/2003 | 5/9/2008 | NEW YORK MEG, L.L.C.<br>3037 SOUTH MERIDIAN ST<br>INDIANAPOLIS, IN  46217 | GENERAL ELECTRIC CAPITAL CORPORATION<br>P.O. BOX 414 W-490<br>MILWAUKEE, WI  53201 |
| 0002.001 | 200300004817035 | UCC1 | 5/21/2003 | 5/21/2008 | NEW YORK MEG, L.L.C.<br>3037 SOUTH MERIDIAN STREET<br>INDIANAPOLIS, IN  46217 | GENERAL ELECTRIC CAPITAL CORPORATION<br>P.O. BOX 414, W-490<br>MILWAUKEE, WI  53201 |
| 0003.001 | 200400001368094 | UCC1 | 2/11/2004 | 2/11/2009 | NEW YORK MEG, L.L.C.<br>3037 SOUTH MERIDIAN ST<br>INDIANAPOLIS, IN  46217 | GENERAL ELECTRIC CAPITAL CORPORATION<br>PO BOX 414 W-490<br>MILWAUKEE, WI  53201 |

*End of Report*

This data is for informational purposes only.  Certification can only be obtained through the appropriate state, county, local, court or jurisdictional office.  Please review actual copies to verify information.  We take great care in providing you with the most accurate and up to date public record information available.  However, responsibility for maintaining public records rests with the filing office of the jurisdiction, and we will accept no liability for errors or omissions in this report.

Indiana Secretary of State
Filing Number: 200300004415120
Filing Date    : 05/09/2003 17:30:00

MAY 0 9 2003

**NATIONAL SERVICE INFORMATION, INC.**
320 N. Meridian St.
Suite 817
Indianapolis, IN 46204

8952032 - 9

Courier: First Class Mail
Debtor: New York Meg, L.L.C.
Juris: Indiana, IN

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| New York Meg, L.L.C. | | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3037 South Meridian Street | Indianapolis | IN | 46217 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | LLC | IN | 2002121800076 | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| General Electric Capital Corporation | | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 414, W-490 | Milwaukee | WI | 53201 | USA |

4. This FINANCING STATEMENT covers the following collateral:

One (1) 4D Neuro Imaging Brain Mpping System "together with (i) all substitutions for, and products and proceeds of any of the foregoing property, (ii) all accessions thereto, (iii) all accessories, attachments, parts, equipment and repairs now or hereafter attached or affixed to or used in connection with any of the foregoing property, (iv) all warehouse receipts, bills of lading and other documents of title now or hereafter covering any of the foregoing property, and (v) all insurance and/or other proceeds of any type of the foregoing property"

| 5. ALTERNATIVE DESIGNATION (if applicable): | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA 8527100/861-404086 filed by Nesha Beamon 05/07/200

IN-SOS

LexisNexis Document Solutions
801 Adlai Stevenson Drive
Springfield, IL 62703-4261

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

**Indiana Secretary of State**
**Filing Number: 200300004817035**
**Filing Date    : 05/21/2003 17:30:00**

NATIONAL SERVICE INFORMATION, INC.
320 N. Meridian St.
Suite 817
Indianapolis, IN 46204

8952684 - 4

Courier: First Class Mail
Debtor: New York Meg, L.L.C.
Juris: Indiana, IN

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

MAY 2 1 2003

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| New York Meg, L.L.C. | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3037 South Meridian Street | Indianapolis | IN | 46217 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | LLC | IN | 2002121800076   NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| General Electric Capital Corporation | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 414, W-490 | Milwaukee | WI | 53201 | USA |

4. This FINANCING STATEMENT covers the following collateral:

All now owned or hereafter acquired equipment, fixtures, inventory (including all goods held for sale, lease or demonstration or to be furnished under contracts of service, goods leased to others, trade-ins and repossessions), raw materials, work in process and materials or supplies used or consumed in Obligor's business), documents relating to inventory, general intangibles, accounts, contract rights, chattel paper and instruments, securities, investment property, deposit accounts, supporting obligations, letter of credit rights, commercial tort claims, and information contained in computer media (such as data bases, source and object codes and information therein), computer equipment, machinery, tools, furniture, together with all additions, attachments, and accessions now and hereafter affixed thereto and/or used in connection therewith, all replacements, thereof and substitutions therefore, and all cash and non-cash proceeds and products thereof.

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS    Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | All Debtors | Debtor 1 | Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA 8527100/861-404086 filed by Nesha Beamon 05/19/200

IN-SOS

LexisNexis Document Solutions
801 Adlai Stevenson Drive
Springfield, IL 62703-4261

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

**Indiana Secretary of State**
**Filing Number: 200400001368094**
**Filing Date      : 02/11/2004 17:30:00**

UC
FOL
A. N

B. S

**NATIONAL SERVICE INFORMATION, INC.**
320 N. Meridian St.
Suite 817
Indianapolis, IN 46204

8967180 - 5

FEB 1 1 2004

Courier: First Class Mail
Debtor: New York Meg, L.L.C.
Juris: Indiana, IN

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only *one* debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| New York Meg, L.L.C. | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 3037 South Meridian Street | Indianapolis | IN | 46217 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | LLC | IN | 2002121800076 | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only *one* debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only *one* secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| General Electric Capital Corporation | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| P.O. Box 414, W-490 | Milwaukee | WI | 53201 | USA |

4. This FINANCING STATEMENT covers the following collateral:

All now owned or hereafter acquired equipment, fixtures, inventory (including all goods held for sale, lease or demonstration or to be furnished under contracts of service, goods leased to others, trade-ins and repossessions, raw materials, work in process and materials or supplies used or consumed in Obligor's business), documents relating to inventory, general intangibles, accounts, contract rights, chattel paper and instruments, securities, investment property, deposit accounts, supporting obligations, letter of credit rights, commercial tort claims, and information contained in computer media (such as data bases, source and object codes and information therein), computer equipment, machinery, tools, furniture, together with all additions, attachments, and accessions now and hereafter affixed thereto and/or used in connection therewith, all replacements, thereof and substitutions therefore, and all cash and non-cash proceeds and products thereof.

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS      Attach Addendum | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]       [optional] | | All Debtors | Debtor 1 | Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA 8527143/861-404087 filed by Nesha Beamon 02/09/200

IN-SOS

LexisNexis Document Solutions
801 Adlai Stevenson Drive
Springfield, IL 62703-4261

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

# EXHIBIT E



**GE Healthcare Financial Services**

## SECURITY AGREEMENT

### 1. SECURITY INTEREST

The undersigned ("Obligor", whether one or more) grants General Electric Capital Corporation ("Company") a security interest in property, wherever located, checked in Section 2 ("Collateral") to secure all debts, obligations and liabilities of Obligor to Company arising out of credit previously granted, credit contemporaneously granted and credit granted in the future by Company to Obligor or to another guaranteed or indorsed by Obligor ("Obligations").

### 2. DESCRIPTION OF COLLATERAL

One or more boxes must be checked.

(a) **X All Collateral.** If checked here, all now owned or hereafter acquired equipment, fixtures, inventory (including all goods held for sale, lease or demonstration or to be furnished under contracts of service, goods leased to others, trade-ins and repossessions, raw materials, work in process and materials or supplies used or consumed in Obligor's business), documents relating to inventory, general intangibles, accounts, contract rights, chattel paper and instruments, securities, investment property, deposit accounts, supporting obligations, letter of credit rights, commercial tort claims, and information contained in computer media (such as data bases, source and object codes and information therein), computer equipment, machinery, tools, furniture, together with all additions, attachments, and accessions now and hereafter affixed thereto and/or used in connection therewith, all replacements, thereof and substitutions therefore, and all cash and non-cash proceeds and products thereof.

(b) ☐ **Scheduled Collateral.** If checked here, all inventory, accounts, contract rights, equipment, general intangibles, instruments, documents of title and chattel paper described in the attached schedule and any additional schedules delivered by Obligor to Company from time to time;

(c) ☐ **All Inventory.** If checked here, all inventory and documents relating to inventory now owned or hereafter acquired by Obligor, including all goods held for sale, lease or demonstration or to be furnished under contracts of service, goods leased to others, trade-ins and repossessions, raw materials, work in process and materials or supplies used or consumed in Obligor's business;

(d) ☐ **All Receivables.** If checked here, all accounts, contract rights, chattel paper and instruments now owned or hereafter acquired by Obligor;

(e) ☐ **All Equipment.** If checked here, all equipment and fixtures now owned or hereafter acquired by Obligor;

(f) ☐ **All General Intangibles.** If checked here, all general intangibles now owned or hereafter acquired by Obligor; and all additions and accessions to, all spare and repair parts, special tools, equipment and replacements for, all returned or re-possessed goods the sale of which gave rise to, and all proceeds and products of the foregoing.

(g) ☐ **Specific Collateral.** If checked here, the following described property now owned or hereafter acquired by Obligor

### 3. OBLIGOR'S WARRANTIES

Obligor warrants that while any of the Obligations are unpaid:

(a) **Ownership.** Obligor owns the Collateral free of all encumbrances and security interests (except Company's security interest). Chattel paper constituting Collateral evidences a perfected security interest in the goods covered by it, free from all other encumbrances and security interests, and no financing statement (other than Company's) is on file covering the Collateral or any of it. Obligor, acting alone, may grant a security interest in the Collateral.

(b) **Sale of Goods or Services Rendered.** Each account and chattel paper constituting Collateral as of this date arose from the performance of services by Obligor or from a bona fide sale or lease of goods, which have been delivered or shipped to the account debtor and for which Obligor has genuine invoices, shipping documents or receipts.

(c) **Enforceability.** Each account, contract right and chattel paper constituting Collateral as of this date is genuine and enforceable against the account debtor according to its terms. It and the transaction out of which it arose comply with all applicable laws and regulations. The amount represented by Obligor to Company as owing by each account debtor is the amount actually owing and is not subject to setoff, credit, allowance or adjustment, except discount for prompt payment, nor has any account debtor returned the goods or disputed his or its liability.

(d) **Due Date.** No payment on any account or chattel paper constituting Collateral is as of this date more than 15 days overdue, there has been no default according to the terms of any such Collateral and no step has been taken to foreclose the security interest it evidences or otherwise enforce its payment.

(e) **Financial Condition of Account Debtor.** As of this date Obligor has no notice or knowledge of anything which might impair the credit standing of any account debtor and Obligor will advise Company upon receipt of any such notice or knowledge affecting Collateral.

(f) **Valid Organization.** If a corporation, Obligor is a duly organized, validly existing and in good standing under the laws of the state of organization and if a foreign corporation is licensed to do business in the states in which this transaction takes place.

(g) **Other Agreements.** Obligor is not in default under any agreement for the payment of money.

Security Agreement                                                                                    (Rev. 4/28/03)

(h) **Authority to Contract.** The execution and delivery of this Agreement and any instruments evidencing Obligations will not violate or constitute a breach of Obligor's Articles of Incorporation, By-Laws, partnership agreement, operating agreement or any agreement or restriction to which Obligor is a party or is subject.

(i) **Accuracy of Information.** All information, certificates or statements given to Company pursuant to this Agreement shall be true and complete when given. The Obligor's exact legal name is as set forth in the last page of this Agreement.

(j) **Addresses.** The address of Obligor's place of business, or if Obligor has more than one place of business, then the address of the Obligor's chief executive office, is shown opposite Obligor's signature. The address where the Collateral will be kept, if different from that appearing opposite Obligor's signature, is __300 East 39th Street, New York, New York__ Such locations shall not be changed without prior written consent of Company, but the parties intend that the Collateral, wherever located, is covered by the Agreement.

(k) **Change of Name or Address.** Obligor shall immediately advise Company in writing of any change in name or address.

## 4. SALE AND COLLECTIONS

(a) **Sale of Inventory.** So long as no default exists under any of the obligations or this Agreement, Obligor may (a) sell inventory in the ordinary course of Obligor's business for cash or on terms customary in the trade, at the prices not less than any minimum sale price shown on instruments evidencing Obligations and describing inventory, or (b) lease inventory on terms customary in the trade.

(b) **Verification and Notification.** Upon default Company may at any time and Obligor shall, upon request of Company, notify the account debtors to make payment directly to Company and Company may enforce collection of, settle, compromise, extend or renew the indebtedness of such account debtors. Until account debtors are so notified, Obligor as agent of Company, shall make collections on the Collateral. Company may at any time notify the bailee of any Collateral of Company's security interest.

(c) **Deposit with Company.** At any time Company may require that all proceeds of Collateral received by Obligor shall be held by Obligor upon an express trust for Company, shall not be commingled with any other funds or property of Obligor and shall be turned over to Company in precisely the form received (but endorsed by Obligor if necessary for collection) not later than the business day following the day of their receipt. All proceeds of Collateral received by Company directly or from Obligor shall be applied against the Obligations in such order and at such times as Company shall determine.

## 5. OBLIGOR'S COVENANTS

**Obligor agrees:**

(a) **Maintenance of Collateral.** Obligor shall: maintain the Collateral in good condition and repair and not permit its value to be  impaired; keep it free from all liens, encumbrances and security interests (other than Company's security interest) defend it against all claims and legal proceedings by persons other than Company; pay and discharge when due all taxes, license fees, levies and other charges upon it; not sell, lease or otherwise dispose of it or permit it to become a fixture or an accession to other goods, except for sales or leases of inventory as provided in this Agreement, not permit it to be used in violation of any applicable law, regulation or policy of insurance; and, as to Collateral consisting of instruments and chattel paper, preserve rights in it against prior parties. Loss of or damage to the Collateral shall not release Obligor from any of the obligations.

(b) **Insurance.** Obligor shall keep the Collateral and Company's interest in it under policies with such provisions, for such amounts and by such insurers as shall be satisfactory to Company from time to time, and shall furnish evidence of such insurance satisfactory to Company. Subject to Company's satisfaction, Obligor is free to select the insurance agent or insurer through which insurance is obtained. Obligor assigns (and directs any insurer to pay) to Company the proceeds of all such insurance and any premium refund, and authorizes Company to endorse in the name of Obligor any instrument for such proceeds or refunds and, at the option of Company, to apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to restoration of the Collateral, returning any excess to Obligor. Company is authorized, in the name of Obligor or otherwise, to make, adjust and/or settle claims under any credit insurance financed by Company or any insurance on the Collateral, or cancel the same after the occurrence of an event of default.

(c) **Maintenance of Security Interest.** Obligor shall pay all expenses and, upon request, take any action reasonably deemed advisable by Company to preserve the Collateral or to establish, determine priority of, perfect, continue perfected, terminate and/or enforce Company's interest in it or rights under this Agreement.

(d) **Taxes and other charges.** Obligor shall pay and discharge all lawful taxes, assessments and government charges upon Obligor or against its properties prior to the date on which penalties attach, unless and the extent only that such taxes, assessments and charges are contested in good faith and by appropriate proceedings by Obligor.

(e) **Records and statements.** Obligor shall keep accurate and complete records respecting the Collateral in such form as Company may approve. At such times as Company may require, Obligor shall furnish to Company a statement certified by Obligor and in such form and containing such information as may be prescribed by Company, showing the current status and value of the Collateral.

(f) **Inspection of Collateral.** At reasonable times Company may examine the Collateral and Obligor's records pertaining to it, wherever located, and make copies of records. Obligor shall assist Company in so doing.

(g) **Chattel Paper.** Company may require that chattel paper constituting Collateral shall be on forms approved by Company, Obligor shall promptly make all such chattel paper, and all copies, to indicate conspicuously the Company's interest and, upon request, deliver them to Company.

## 6. RIGHTS OF COMPANY

(a) **Authority to Perform for Obligor.** Upon the occurrence of an event of default or if Obligor fails to perform any of Obligor's duties set forth in this Agreement or in any evidence of or document relating to the Obligations, Company is authorized, in Obligor's name or otherwise, to take any such action including without limitation signing Obligor's name or paying any amount so required, and the cost shall be one of the Obligations secured by this Agreement and shall be payable by Obligor upon demand with interest from the date of payment by Company at the highest rate stated in any evidence of any Obligation but not in excess of the maximum rate permitted by law.

(Rev. 4/28/03)

Security Agreement

(b) **Power of attorney.** Obligor irrevocably appoints any officer of Company as Obligor's attorney, with power after an event of default to receive, open and dispose of all mail addressed as to Obligor; and to notify the Post Office authorities to change the address for delivery of all mail address to Obligor to such address as Company may designate.

## 7. DEFAULT

(a) The following events shall constitute an event of default hereunder:

(i) **Nonperformance.** Obligor fails to pay when due any of the Obligations or to perform, or rectify breach of, any warranty or other undertaking by Obligor in this Agreement or in any evidence of or document relating to the Obligations;

(ii) **Inability to Perform.** Obligor ceases to exist, becomes insolvent or the subject of bankruptcy or insolvency proceedings;

(iii) **Misrepresentation.** Any representation made to induce Company to extend credit to Obligor, under this Agreement or otherwise, is false in any material respect when made; or

(iv) **Insecurity.** Any other event which causes Company in good faith to deem itself insecure.

(b) Upon an event of default, all of the Obligations shall, at the option of Company and without any notice or demand, become immediately payable, and Company shall have the following remedies as well as all other rights and remedies for default provided by the Wisconsin Uniform Commercial Code, and any other applicable law and any document relating to the Obligations:

(i) **Repossession.** Company may take possession of Collateral without notice or hearing, which Obligor waives.

(ii) **Assembling Collateral.** Company may require Obligor to assemble the Collateral and to make it available to Company at any convenient place designated by Company.

(iii) **Expenses and Application of Proceeds.** Obligor shall reimburse Company for any expense incurred by Company in protecting or enforcing its rights under this Agreement before and after judgment, including, without limitation, reasonable attorney's fees and legal expenses and all expenses of taking possession, holding, preparing for disposition and disposing of the Collateral. After deduction of such expenses, Company may apply the proceeds of disposition to the Obligations in such order and amounts as it elects.

(c) **Notice of Disposition.** Written notice, when required by law, sent to any address of Obligor in this Agreement at least ten (10) calendar days (counting the day of sending) before the date of proposed disposition of the Collateral is reasonable notice.

(d) **Waiver.** Company may permit Obligor to remedy any default without waiving the default so remedied, and Company may waive any default without waiving any other subsequent or prior default by Obligor.

## 8.  MISCELLANEOUS

(a) Obligor agrees to promptly reimburse the Company for actual out-of-pocket expenses, including without limitation, reasonable counsel fees, incurred by the Company in connection with the administration and enforcement of this Agreement.

(b) THIS AGREEMENT SHALL BE BINDING UPON OBLIGOR AND ITS SUCCESSORS AND ASSIGNS (INCLUDING A DEBTOR-IN-POSSESSION ON BEHALF OF OBLIGOR), AND SHALL INURE TO THE THE BENEFIT OF, AND BE ENFORCEABLE BY, THE COMPANY AND ITS SUCCESSORS AND ASSIGNS, AND SHALL BE GOVERNED BY, AND CONSTURED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF WISCONSIN APPLICABLE TO THE CONTRACTS MADE AND PERFORMED IN THAT STATE, AND NONE OF THE TERMS OR PROVISIONS OF THIS AGREEMENT MAY BE WAIVED, ALTERED MODIFIED OR AMENDED EXCEPT IN WRITING DULY SIGNED FOR AND ON BEHALF OF THE COMPANY AND OBLIGOR.

(c) If for any reason any provision or provisions hereof are determined to be invalid and contrary to any existing or future law, such invalidity shall not impair the operation of or effect those portions of this Agreement which are valid.

(d) Except as otherwise provided herein, whenever it is provided herein that any notice, demand, request, consent, approval, declaration or other communication shall or may be given by Company to Obligor, each such notice, demand, request, consent, approval, declaration or other communication shall be in writing and shall be given to Obligor at the address below.

(e) This Agreement may be executed in any number of separate counterparts by one or more of the parties hereto and all of said counterparts taken together shall constitute one and the same instrument.

The obligations hereunder, if involving more than one Obligor, shall be joint and several.

Signed this 14 day of __May__ , 2003 .

Obligor:

New York Meg, L.L.C.

By: _____
Authorized Signature

(  Principal  )
Title

_____

_____

Security Agreement

(Rev. 4/28/03)

Page 3 of 4

Address

Security Agreement

(Rev. 4/28/03)

# EXHIBIT F



**Katten**

KattenMuchinRosenman LLP

525 W. Monroe Street
Chicago, IL 60661-3693
312.902.5200 tel
312.902.1061 fax

Mike Rupe
Mike.rupe@kattenlaw.com
312.902.5616 direct
312.577.4581 fax

September 10, 2007

**Via Email**

New York Meg, L.L.C.
11595 N. Meridian Street, Suite 300
Carmel, Indiana 46032
Attn.: John M. Hakes
Email: hakes@usmedicalmgt.com

**Re:** **Those certain documents, agreements and instruments (collectively, the "Documents") by and among GE Healthcare Financial Services, a division of General Electric Capital Corporation ("GECC"), and New York Meg, L.L.C. ("NY Meg"; together with all other credit parties thereto, the "Credit Parties").**

Gentlemen:

We have been engaged to represent GECC in connection with all matters arising from and related to the Documents, including the enforcement of its rights and remedies thereunder, and this letter is written at the request of, and on behalf of, GECC.

Please be advised that certain defaults and events of default under the Documents (collectively, the "Defaults") have occurred and arc continuing as a result of, among other things, (i) the Credit Parties' failure to make the payments required under the Documents, and (ii) the expiration of that certain standby letter of credit #3849, in the amount of $950,000 USD, prior to August 31, 2007.

Please be further advised, as a result of the Defaults, GECC, pursuant to the Documents and applicable law, is entitled to exercise any and all of its rights and remedies under the Documents, at law, in equity or otherwise.

GECC hereby reserves and preserves in all respects any and all rights, claims, remedies and causes of action that it may have against any person or entity including, without limitation, the Credit Parties (including, without limitation, Martin Egli) and their affiliates, members, officers and directors, arising from or related to the Documents, applicable law, equity and/or otherwise.



**Katten**
Katten Muchin Rosenman LLP

Page 2

Nothing herein shall be construed or interpreted as a waiver of any of GECC's rights, claims, remedies or causes of action against any person or entity, whether under the Documents, applicable law, equity and/or otherwise.

Very truly yours,
**KATTEN MUCHIN ROSENMAN LLP**

Mike Rupe

cc:     Jon D. Storck
        Alan T. Beckman