# EXHIBIT B

UCS-840 (REV 1/2000)

## REQUEST FOR JUDICIAL INTERVENTION

| Supreme | New York | 603376/07 | 10/12/07 | For Clerk Only |
|---|---|---|---|---|
| COURT | COUNTY | INDEX NO. | DATE PURCHASED | |

PLAINTIFF(S):

**GENERAL ELECTRIC CAPITAL CORPORATION**

IAS entry date

DEFENDANT(S):

**NEW YORK MEG, L.L.C.**
**4D NEURO IMAGING, INC.**
**MARTIN EGLI**

Judge Assigned

RJI Date

Date issue joined: __N/A__    Bill of particulars served (Y/N):   [ ] Yes    [ ] No

NATURE OF JUDICIAL INTERVENTION (check ONE box only AND enter information)

[ ] Request for preliminary conference

[ ] Note of issue and/or certificate of readiness

[ ] Notice of motion (return date:_____)
    Relief sought _____

[X] Order to show cause
    (clerk enter return date: 10/30/07 )
    Relief sought Replevin/return of property

[ ] Other ex parte application (specify: _____)

[ ] Notice of petition (return date:_____)
    Relief sought _____

[ ] Notice of medical or dental malpractice action (specify:_____)

[ ] Statement of net worth

[ ] Writ of habeas corpus

[ ] Other (specify: _____)

RECEIVED 2007 OCT 12 A 10:28 NYS SUPREME COURT - CIVIL COMMERCIAL DIVISION

**NATURE OF ACTION OR PROCEEDING** (Check ONE box only)

MATRIMONIAL
[ ] Contested — CM
[ ] Uncontested — UM

COMMERCIAL
[X] Contract — CONT
[ ] Corporate — CORP
[ ] Insurance (where insurer is a party, except arbitration) — INS
[ ] UCC (including sales, negotiable instruments) — UCC
[ ] *Other Commercial — OC

REAL PROPERTY
[ ] Tax Certiorari — TAX
[ ] Foreclosure — FOR
[ ] Condemnation — COND
[ ] Landlord/Tenant — LT
[ ] *Other Real Property — ORP

OTHER MATTERS
[ ] * _____ — OTH

TORTS

Malpractice
[ ] Medical/Pediatric — MM
[ ] Dental — DM
[ ] *Other Professional — OPM

[ ] Motor Vehicle — MV
[ ] *Products Liability — PL

[ ] Environmental — EN
[ ] Asbestos — ASB
[ ] Breast Implant — BI
[ ] *Other Negligence — OTN

[ ] *Other Tort (including intentional) — OT

SPECIAL PROCEEDINGS
[ ] Art. 75 (Arbitration) — ART75
[ ] Art. 77 (Trusts) — ART77
[ ] Art. 78 — ART78
[ ] Election Law — ELEC
[ ] Guardianship (MHL Art. 81) — GUARD81
[ ] *Other Mental Hygiene — MHYG
[ ] *Other Special Proceeding — OSP

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

--------------------------------------------------------------x

GENERAL ELECTRIC CAPITAL CORPORATION

Plaintiff/Petitioner,

- against -

NEW YORK MEG, L.L.C.
4D NEURO IMAGING, INC.
MARTIN EGLI

Defendant/Respondent.

--------------------------------------------------------------x

Index No. _603376/07_

STATEMENT IN SUPPORT OF
REQUEST FOR ASSIGNMENT
TO COMMERCIAL DIVISION

Katten Muchin Rosenman LLP___, counsel for _General Electric Capital Corporation_____, the _Plaintiff_____ in this matter, submits this Statement and the accompanying copy of the pleadings, pursuant to Section 202.70 (d) (2) of the Uniform Rules for the Trial Courts in support of the request of said party for the assignment of this matter to the Commercial Division of this Court.

(1) I have reviewed the standards for assignment of cases to the Commercial Division set forth in Section 202.70. This case meets those standards. I therefore request that this case be assigned to the Division.

(2) The sums at issue in this case (exclusive of punitive damages, interest, costs, disbursements, and counsel fees claimed) are equal to or in excess of the monetary threshold of the Division in this county as set out in Subdivision (a) of said Section, or equitable or declaratory relief is sought, in that _more than_ _$2,400,000 is sought_____

_____

_____

(3) This case falls within the standards set out in Subdivision (b) of the Section and does not come within the groups of cases set out in Subdivision (c) that will not be heard in the Division, in that _____ _the dispute concerns breach of financing contracts in business dealings_ _and UCC security filings._____

_____

_____

Dated: _10|11|07_____

_/s/ Faust_____ (Signature)
_Jonathan J. Faust_____, Esq.

_Katten Muchin Rosenman LLP___ (Firm)
_575 Madison Avenue_____ (Address)
_New York, NY 10022_____
_(212) 940-8639_____ (Phone)
_(212) 894-5639_____ (Fax)
_jonathan.faust@kattenlaw.com_ (E-Mail)

At IAS Part 27 of the Supreme Court of the
State of New York, held in and for the County
of New York, at the County Courthouse, 60
Centre Street, New York, New York 10007,
on the 12 day of October, 2007.

024873

PRESENT:

HON.    HON. JACQUELINE W. SILBERMANN

Justice.

014984

------------------------------------------x

GENERAL ELECTRIC CAPITAL
CORPORATION,

          Plaintiff,

    - against -

NEW YORK MEG L.L.C., 4D NEUROIMAGING,
INC., and MARTIN EGLI,

        Defendants.

------------------------------------------x

#200

Index No. 603376/07

**ORDER TO SHOW CAUSE**

Upon reading and filing the Affidavit of Jon Stork, sworn to October 10, 2007, and the exhibits annexed thereto; the Emergency Affirmation of Jonathan J. Faust, sworn to October 11, 2007; the Summons and Complaint, dated October 11, 2007, and upon all prior pleadings and proceedings heretofore had herein, and good cause having been shown, and after due deliberation being had thereon:

LET the defendants Show Cause before the Honorable (SILBERMANN at IAS Part 2) __, to be held at the County Courthouse, located at 60 Centre Street, New York, New York 10007, on the 30th day of October, 2007 at 9:30 o'clock in the forenoon of that day or as soon after as counsel can be heard, why an Order should not be made and entered:

84113773_1

(a)   determining and declaring the rights of the respective parties to that certain 4D Neuro Imaging Brain Mapping System (the "Equipment") and collateral that is the subject of the Plaintiff's agreements with NEW YORK MEG L.L.C. ("NY MEG");

(b)   directing that the Equipment and collateral immediately be delivered to Plaintiff, at NY MEG's sole cost;

(c)   directing payment of Plaintiff's costs, expenses, legal fees and disbursements in this action; and

(d)   for such other and further relief as may be just, proper and equitable.

**IT IS ORDERED** that service of a copy of this Order to Show Cause and the papers upon which it is based and Plaintiff's Summons and Complaint be good and sufficient if made upon Defendants by hand or overnight courier on or before October 16, 2007; and

**IT IS FURTHER ORDERED** that answering papers, if any, in opposition to plaintiff's motion shall be served so as to arrive at the offices of Plaintiff's attorneys, Katten Muchin Rosenman LLP, 575 Madison Avenue, New York, New York, Attn: Jonathan J. Faust, Esq., by no later than close of business on October 25, 2007.

ENTER:

_____
J.S.C.

HON. JACQUELINE W. SILBERMANN

Certification pursuant to
Rule 130-1.1a

_____
Jonathan J. Faust, Esq.
Katten Muchin Rosenman LLP
575 Madison Avenue
New York, New York 10022
(212) 940-6666
Attorneys for Plaintiff

**ORAL ARGUMENT DIRECTED**

**J.S.C.**

2

At IAS Part __ of the Supreme Court of the
State of New York, held in and for the County
of New York, at the County Courthouse, 60
Centre Street, New York, New York 10007,
on the __ day of October, 2007.

P R E S E N T :

    HON.

                  Justice.

-----------------------------------------------------------x
                      :

GENERAL ELECTRIC CAPITAL      :
CORPORATION,                :    Index No.　**603376/07**
                      :

          Plaintiff,      :

                      :    **ORDER TO SHOW CAUSE**

      - against -      :

                      :

NEW YORK MEG L.L.C., 4D NEUROIMAGING, :
INC., and MARTIN EGLI,         :

                      :

      Defendants.      :

                      :
-----------------------------------------------------------:x

      Upon reading and filing the Affidavit of Jon Stork, sworn to October 10, 2007, and the

exhibits annexed thereto; the Emergency Affirmation of Jonathan J. Faust, sworn to October 11,

2007; the Summons and Complaint, dated October 11, 2007, and upon all prior pleadings and

proceedings heretofore had herein, and good cause having been shown, and after due

deliberation being had thereon:

      LET the defendants Show Cause before the Honorable _____, at IAS Part

__, to be held at the County Courthouse, located at 60 Centre Street, New York, New York

10007, on the 29th day of October, 2007 at 9:30 o'clock in the forenoon of that day or as soon

after as counsel can be heard, why an Order should not be made and entered:

(a)      determining and declaring the rights of the respective parties to that certain 4D Neuro Imaging Brain Mapping System (the "Equipment") and collateral that is the subject of the Plaintiff's agreements with NEW YORK MEG L.L.C. ("NY MEG");

(b)      directing that the Equipment and collateral immediately be delivered to Plaintiff, at NY MEG's sole cost;

(c)      directing payment of Plaintiff's costs, expenses, legal fees and disbursements in this action; and

(d)      for such other and further relief as may be just, proper and equitable.

**IT IS ORDERED** that service of a copy of this Order to Show Cause and the papers upon which it is based and Plaintiff's Summons and Complaint be good and sufficient if made upon Defendants by hand or overnight courier on or before October __, 2007; and

**IT IS FURTHER ORDERED** that answering papers, if any, in opposition to plaintiff's motion shall be served so as to arrive at the offices of Plaintiff's attorneys, Katten Muchin Rosenman LLP, 575 Madison Avenue, New York, New York, Attn: Jonathan J. Faust, Esq., by no later than close of business on October __, 2007.

E N T E R :

_____
J.S.C.

Certification pursuant to
Rule 130-1.1a

_____
Jonathan J. Faust, Esq.
Katten Muchin Rosenman LLP
575 Madison Avenue
New York, New York 10022
(212) 940-6666
Attorneys for Plaintiff

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GENERAL ELECTRIC CAPITAL CORPORATION,

                    Plaintiff,

          - against -

NEW YORK MEG L.L.C., 4-D NEUROIMAGING, INC. and
MARTIN EGLI,

                  Defendants.

Index No.

**AFFIRMATION OF
EMERGENCY IN
SUPPORT OF ORDER
TO SHOW CAUSE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**JONATHAN J. FAUST**, an attorney duly admitted to practice before the Courts of the State of New York, hereby affirms the following to be true under penalty of perjury pursuant to CPLR § 2016:

    1.     I am a member of the law firm of Katten Muchin Rosenman LLP ("Plaintiff"), counsel to plaintiff General Electric Capital Corporation. I am familiar with the facts set forth herein based on my personal knowledge and my review of the documents in this matter.

**OVERVIEW**

    2.     Plaintiff is compelled to commence this action because defendant, New York MEG L.L.C. ("NY MEG") has failed to honor its obligations under various agreements pursuant to which Plaintiff agreed to finance defendant NY MEG's purchase of a multi-million dollar 4D Neuro Imaging Brain Mapping System (the "Equipment") from defendant 4D (the manufacturer). NY MEG is in default and breach of its contractual obligations to Plaintiff, by virtue of, inter alia, NY MEG's failure -- and continuing refusal -- to repay Plaintiff in excess of $2.4 million dollars that is overdue.

3.    Under the parties' agreements, NY MEG's default and breach entitles Plaintiff to monetary damages and immediate possession of: (i) the financed equipment; and (ii) specified collateral.

4.    Plaintiff has provided Defendants with appropriate notice of NY MEG's defaults and breaches, and demanded that they be cured.

5.    The defaults and breaches, have not been cured.

6.    Plaintiff has demanded that NY MEG immediately turnover .

7.    Plaintiff has made commercially reasonable efforts to accommodate Defendants in order to avoid litigation (which efforts Plaintiff was not obligated to make).  Plaintiff's efforts have been rebuffed.

**Need For Immediate Relief**

8.    Immediate attention to this application is requested and warranted because Defendants remain in possession of valuable Equipment which belongs to Plaintiff.

9.    Defendants' continued use and possession of the Equipment severely prejudices and jeopardizes Plaintiff's rights and interests.  Defendants -- knowing that the Equipment is to be turned over to Plaintiff – have no incentive to maintain or protect or service the Equipment properly.

10.    Defendant's continued use and possession of the Equipment also causes an injustice in the form of unjust enrichment, as NY MEG is using Equipment for commercial purposes without compensation to Plaintiff.

11.    It would be a profound prejudice to Plaintiff to force it to await a disposition of a lawsuit in the regular course in order to recover the Equipment.

<u>No Prior Application</u>

12.    No prior application for the relief requested herein has been made to this or any other court.

13.    Because of the urgent nature of this situation and the prejudice that Plaintiff faces, Plaintiff respectfully requests that the accompanying Order to Show Cause be signed.

14.    Pursuant to 22 N.Y.C.R.R. 130-1.1a, the undersigned, an attorney admitted to practice in the Courts of New York State, certifies that, upon information and belief, and after reasonable inquiry, the contentions contained in this affirmation are not frivolous.

JONATHAN J. FAUST

Sworn to before me this
11ᵗʰ day of October, 2007

Notary Public

**JOYCE BENTLEY**
**Notary** Public, State of New York
No. 01BE4673410
Qualified in Kings County
Certificate Filed in New York County
Commission Expires September 30, 2010

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GENERAL ELECTRIC CAPITAL CORPORATION,                    :

               Plaintiff,                    :    Index No. _____

        - against -                    :    **AFFIDAVIT OF JON D.**
                                **STORCK IN SUPPORT OF**
NEW YORK MEG L.L.C., 4D NEUROIMAGING, INC.,   :    **PLAINTIFF'S ORDER**
and MARTIN EGLI,                                   **TO SHOW CAUSE**

              Defendants.                    :

                               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF WISCONSIN    )
                       : ss.:
COUNTY OF WAUKESHA )

     **JON D. STORCK**, being duly sworn, deposes and says:

    1.    I am employed as Senior Vice President of Plaintiff GENERAL ELECTRIC CAPITAL CORPORATION. I am familiar with the facts set forth herein based on my personal knowledge and my review of the documents in this matter. I submit this affidavit in support of Plaintiff's application for an Order to Show Cause against defendants NEW YORK MEG L.L.C. ("NY MEG"), 4D NEUROIMAGING, INC. ("4D") and MARTIN EGLI ("EGLI").

**OVERVIEW**

    2.    This Order to Show Cause application seeks the immediate turnover to Plaintiff of a multi-million dollar piece of medical imaging equipment belonging to Plaintiff, called a 4D Neuro Imaging Brain Mapping System (the "Equipment"), which Defendants wrongfully continue to possess and use for their own benefit.

    3.    Pursuant to various agreements, Plaintiff agreed to finance NY MEG's purchase of the Equipment from 4D. NY MEG promised to repay Plaintiff in accordance with a written

84244297.3

schedule, and granted Plaintiff a security interest in the Equipment and specified collateral. NY MEG defaulted on and breached its contractual obligations to Plaintiff by failing and refusing to: (i) pay Plaintiff in excess of $2.4 million dollars in scheduled payments that are overdue; and (ii) maintain a required letter of credit in Plaintiff's favor. NY MEG's defaults and breaches entitle Plaintiff to monetary damages and immediate possession of the Equipment and collateral. Plaintiff believes that NY MEG is the alter ego of 4D and EGLI, making all Defendants jointly and severally liable for NY MEG's misconduct.

4.    Prompt relief is requested and warranted because NY MEG refuses to deliver to Plaintiff the very valuable Equipment and collateral, which now belong to Plaintiff.

5.    Further, Defendants have specifically told me that NY MEG faces imminent business collapse which, if true, places the Equipment in immediate jeopardy.

6.    Defendants' continued (and unauthorized) use and possession of the Equipment severely prejudices and jeopardizes Plaintiff's rights and interests as Defendants -- knowing that NY MEG may not continue as a business concern, and that the Equipment will eventually be turned over to Plaintiff due to NY MEG's default -- have no incentive to maintain, protect or service the Equipment properly. Likewise, there is an obvious injustice in Defendants' use of the Equipment and enjoyment of the collateral, for their own commercial purposes, without compensating Plaintiff.

7.    It would be a profound prejudice to Plaintiff to force it to await a disposition of a lawsuit in the regular course in order to recover the Equipment.

8.    The Equipment and collateral at issue are located at NY MEG's place of business at 300 East 39th Street, New York, New York.

9.    Plaintiff has undertaken genuine, good faith efforts to resolve this dispute without need for the Court's intervention. However, these efforts have been unsuccessful, forcing plaintiff to file the instant action. See Exhibit G (Complaint).

**The Master Security Agreement**

10.     On or about May 9, 2003, Plaintiff and NY MEG entered into a written contract, the "Master Security Agreement Dated As Of 05/09/2003" (the "Master Security Agreement") and corresponding schedule (the "Schedule") pursuant to which Plaintiff agreed to finance NY MEG's purchase of the Equipment.  Copies of the Master Security Agreement and Schedule, together with amendments and addendum thereto, are attached as Exhibits A and B, respectively.

11.     Pursuant to the Master Security Agreement and Schedule, Plaintiff extended credit, financing and/or monies to NY MEG in excess of $2,100,000 to fund NY MEG's purchase of the Equipment.

12.     As relevant to this action, NY MEG agreed to repay Plaintiff for said credit, financing and/or monies as follows: (i) 11 monthly installments payments (the "Installment Payments") of $40,000 (Forty Thousand Dollars) beginning August 25, 2006; and (ii) 1 payment of $1,762,782.30 (One Million Seven Hundred Sixty Two Thousand Seven Hundred Eighty Two Dollars and Thirty Cents; hereinafter the "Balloon Payment") on July 25, 2007.  Exhibit A ¶ 3; Exhibit B (see Second Amendment to the Schedule).

13.     Under the Master Security Agreement, Plaintiff is entitled to recover a late charge of 5% on all monies due but unpaid for more than ten days.  Exhibit A ¶¶ 3, 9(b).

14.     Further, non-payment of any sums due to Plaintiff under the Master Security Agreement and Schedule constituted a default in, or breach of, the same.  Exhibit A ¶ 9(a).

15.     Plaintiff's remedies for default or breach of the Master Security Agreement and Schedule include, but are not limited to: (i) acceleration, and the right to immediate payment, of all outstanding monies due to Plaintiff; and (ii) immediate possession of the Equipment by Plaintiff.  Exhibit A ¶ 9(b).

16.     All costs of returning the Equipment to Plaintiff (including removal costs) in the event of NY MEG's default or breach are to be borne exclusively by NY MEG.  Exhibit A ¶ 8(a).

17.    Plaintiff also is entitled to recover all of its costs (including its attorneys fees) incurred in enforcing and effecting compliance with the Master Security Agreement.  Exhibit A ¶ 17(c).

18.    To protect Plaintiff against NY MEG's default or breach, NY MEG granted Plaintiff a first security interest in the Equipment.

19.    Plaintiff perfected its security interest in the Equipment by making appropriate public filings. (Exhibit E).

20.    The term of the Master Security Agreement is "until all of [Defendant's] obligations hereunder or under any Schedule(s) are fulfilled."  Exhibit A ¶ 1(b).

21.    The laws of the State of New York govern the parties dealing under the Master Security Agreement and any dispute in connection therewith. Exhibit A ¶ 17(e).

**Letter of Credit**

22.    To protect Plaintiff against any default in, or breach of, NY MEG's payment obligations, the Master Security Agreement obligated NY MEG to post a letter of credit in favor of Plaintiff in the amount of $950,000 (Nine Hundred Fifty Thousand Dollars; hereinafter the "Letter of Credit"), with an expiration date of no earlier than August 31, 2007.

23.    Any expiration or unenforceability of the Letter of Credit, prior to August 31, 2007, constituted a breach and default under the Master Security Agreement.  Exhibit A (see Second Amendment to Master Security Agreement, dated August 25, 2006).

24.    Defendants repeatedly and specifically assured Plaintiff that NY MEG would post, and had posted, a satisfactory Letter of Credit that complied with the terms of the Master Security Agreement.

**Promissory Note**

25.    NY MEG required and requested additional financing in connection with its purchase of the Equipment, which Plaintiff agreed to provide.

26.    To that end, NY MEG executed and delivered to Plaintiff a promissory note, as amended October 27, 2005 and August 25, 2006 (the "Promissory Note"), pursuant to which

Plaintiff extended further credit, financing and/or monies to NY MEG in the principal sum of $775,000 (Seven Hundred Seventy Five Thousand Dollars).  (Exhibit C)

27.    To repay Plaintiff for the additional credit, financing and/or monies extended under the Promissory Note, NY MEG agreed to pay Plaintiff: (i) 11 consecutive monthly payments of $15,000 (Fifteen Thousand Dollars) beginning August 25, 2006; (ii) 1 payment of $650,004.28 (Six Hundred Fifty Thousand Four Dollars and Twenty Eight Cents; hereinafter the "Promissory Balloon Payment") on July 25, 2007; and (iii) a further, final payment of all remaining principal and interest. (See Exhibit C [Second Amendment]).

28.    Combined, under the Master Security Agreement, Schedule and Promissory Note, NY MEG's was obligated to pay to Plaintiff: (i) 11 monthly payments of $55,000 to Plaintiff during the period August 25, 2006 through June 25, 2007; and (ii) $2,412,786.58 in balloon payments on July 25, 2007.

**Supplemental Security Agreement**

29.    On May 14, 2003, NY MEG and Plaintiff executed a supplemental security agreement (the "Supplemental Security Agreement") pursuant to which NY MEG granted Plaintiff a security interest in a wide range of collateral, including but not limited to all of NY MEG's equipment, inventory, intangibles and accounts (the "Collateral").  Exhibit D ¶ 1-2.

30.    The purpose of this Supplemental Security Agreement was to secure NY MEG's performance and payment of all of it debts and obligations to Plaintiff.  Exhibit D ¶¶ 1-2.

31.    Plaintiff perfected its security interest in the Collateral under the Supplemental Security Agreement by making all appropriate filings.  (Exhibit E).

32.    Pursuant to the Supplemental Security Agreement, NY MEG's breach of, or default in, any of the parties' various agreements entitles Plaintiff to execute on and enforce its security interest in, and take immediate possession of, the Collateral.  Exhibit D ¶ 7.

33.    Plaintiff is entitled to recover all of its costs and expenses (including attorney's fees) incurred in enforcing or executing upon its security interests. Exhibit D ¶ 6-8.

**Defendants' Default**

34.    NY MEG has failed and refused to make the required Balloon Payment when due on July 25, 2007.

35.    NY MEG has failed and refused to make the required Promissory Balloon Payment when due on July 25, 2007.

36.    NY MEG has failed and refused to make other payments required under the parties' agreements.

37.    NY MEG's failure to make each of the required payments is and was a material default under, and breach of, the parties' agreements.

38.    Following NY MEG's defaults and breaches, Plaintiff did not promptly draw down on the Letter of Credit or otherwise seek to protect Plaintiff's rights, interests and prerogatives prior to July 31, 2007, because Defendants had led Plaintiff into believing that the Letter of Credit had an August 31, 2007 expiration date -- leaving ample time to negotiate a resolution to NY MEG's default.

39.    Unbeknownst to Plaintiff, and in violation of the Master Security Agreement and Schedule, the Letter of Credit (i.e., Letter of Credit #3849) had an expiration date of, and expired on, July 31, 2007.

40.    The posting of a Letter of Credit with a term that expired prior to August 31, 2007 was a material breach of the Master Security Agreement and Schedule.

41.    Plaintiff has provided Defendants with appropriate notice of the defaults and breaches, and demanded that they be cured.  (See e.g., Exhibit F)

42.    NY MEG has not cured any of the defaults or breaches, and none of the overdue and outstanding amounts has been paid.

**Failed Efforts To Resolve The Parties' Dispute**

43.    In the spirit of good faith and believing that it was still partially protected by a Letter of Credit with a term extending through August 31, 2007 (as contractually promised), Plaintiff undertook to negotiate an amicable resolution to NY MEG's defaults and breaches.

44.    EGLI and 4D, although ostensibly not parties to Plaintiff's contracts with NY MEG, nevertheless attended and controlled these negotiations.

45.    Defendants requested a restructuring of NY MEG's obligations to Plaintiff, with payment terms extending through Summer 2008.

46.    Thereafter, as part of these negotiations, Defendants promised Plaintiff that EGLI and 4D already had procured a further Letter of Credit in favor of Plaintiff (the "New Letter of Credit") that extended through September 2008.  Exhibit H.

47.    On and after August 6 and 10, 2007, Defendants promised Plaintiff that the New Letter of Credit shortly would be delivered to Plaintiff.

48.    Defendants temporized, stalled and delayed in negotiations with Plaintiff.

49.    In early August 2007, as part of the discussions on restructuring NY MEG's obligations, Defendants informed Plaintiff that the prior Letter of Credit had expired.

50.    Defendants never delivered the promised new Letter of Credit to Plaintiff, and now refuse to so do.

51.    Because Defendants insisted on unreasonable terms, the parties failed to reach agreement on any restructuring of NY MEG's outstanding debt.

52.    Defendants have recently advised Plaintiff that NY MEG's continuing viability as a business concern is unlikely, and that its ability to pay Plaintiff anything towards amounts due, would require a dramatic and unlikely increase in business.

**EGLI and 4D**

53.    Although not essential to the determination of this order to show cause -- which concerns Equipment and Collateral in NY MEG's possession -- Plaintiff now believes that 4D and NY MEG are merely fronts through which EGLI acts.

54.    Plaintiff believes that NY MEG is an alter ego of EGLI and 4D, and that EGLI and 4D intentionally use and operate NY MEG -- and its location in New York City -- as the flagship showcase for EGLI's and 4D's other commercial efforts.  Upon information and belief, EGLI, 4D and NY MEG have ignored NY MEG's separate corporate form and independence,

substituted each's interests for the other, commingled funds or otherwise used each other's funds interchangeably, and generally have abused the protections afforded by their separate legal existence, while manipulating transactions involving the two to benefit each other while improperly avoiding lawful liabilities.

55.    Throughout the negotiations regarding a possible restructuring of NY MEG's outstanding obligations to Plaintiff, NY MEG referred Plaintiff (and me) to EGLI. EGLI acted as NY MEG in connection with all discussions regarding payments due and to be made and the issuance and terms of a new Letter of Credit and extension terms.

56.    EGLI made multiple representations to Plaintiff (and me) that he, personally, would satisfy NY MEG's obligations to Plaintiff, if revised terms more favorable to NY MEG were established.

57.    EGLI has informed me that he, personally and directly, advanced and paid the funds used to pay virtually all Installment Payments and monthly payments due from NY MEG under the Promissory Note.

58.    EGLI has represented to me that:

(a)    "I [EGLI] write the checks" to pay Plaintiff;

(b)    "I [EGLI] will shut down" NY MEG if the parties fail to resolve the instant dispute on terms more favorable to NY MEG;

59.    It is my understanding that payments made by EGLI to Plaintiff for NY MEG were not run through NY MEG's accounts or otherwise treated or accounted for as NY MEG expenses separate and discrete from EGLI's personal responsibilities and obligations.

60.    I was told by NY MEG and EGLI that EGLI personally and directly posted the Letter of Credit for NY MEG's benefit using his own funds and credit.

61.    In discussions with me, EGLI has negotiated to advance his and NY MEG's interests, while taunting Plaintiff with arguments that he is personally insulated from liability by virtue of how he structured the parties' business dealings.

62.    Plaintiff believes that 4D is owned and run by EGLI.

**Entitlement to Relief Requested**

63.    Plaintiff has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Master Security Agreement, Schedule, Promissory Note and other agreements.

64.    NY MEG breached these agreements by failing and refusing to pay Plaintiff more than $2.4 million due thereunder, and by posting a Letter of Credit that expired or otherwise was unenforceable prior to August 31, 2007.

65.    As a result, Plaintiff is entitled to: (i) accelerate and declare due all outstanding payments; and/or (ii) possession of the Equipment; and/or (iii) possession of the Collateral.

66.    NY MEG wrongfully has failed and refused to deliver the Equipment and Collateral to Plaintiff, and continues to possess and use these valuable assets for Defendants' own benefit.

67.    NY MEG's defaults, breaches, precarious condition and continuing use of the Equipment and Collateral make delivery of the Equipment and Collateral to Plaintiff a matter of great urgency.

68.    NY MEG is not entitled to further use or possession of the Equipment, and is neither authorized, capable nor incentivized to be an appropriate custodian or steward therefore.

69.    Plaintiff has commenced this above-captioned action to recover the Equipment and Collateral, which is valued in excess of $2 million.

70.    Defendants have no known defenses to Plaintiff's claim.

71.    Further to the parties' agreements, Plaintiff also is entitled to recover all of its legal costs and fees for this action.

72.    Pursuant to 22 N.Y.C.R.R. 130-1.1a, the undersigned, an attorney, certifies that, upon information and belief, and after reasonable inquiry, the contentions contained in this affirmation are not frivolous.

73.    No prior application for the relief requested herein has been made to this or any other Court.

WHEREFORE, it is respectfully requested by Plaintiff that the Court grant the relief requested in the within Order To Show Cause as follows:

a.     appropriate declaratory relief, including a judgment declaring that Plaintiff is the owner, and entitled to immediate possession, of the Equipment and Collateral, which are to be delivered to Plaintiff forthwith, at Defendants' sole cost;

b.     appropriate preliminary and permanent injunctive relief, and an order of replevin directing Defendants forthwith to deliver and relinquish the Equipment and Collateral to Plaintiff or Plaintiff's representatives, and requiring that NY MEG immediately produce a list of its customers and accounts, and prohibiting Defendants from interfering with Plaintiff's attempts to directly collect accounts and debts due to NY MEG from said customers and accounts, up to the amounts owed to Plaintiff;

c.     the costs of this suit, including attorneys' fees as incurred herein; and

d.     such other and further relief as is just and proper.

_____
JON STORCK
S.V.P.

Sworn to before me this
10th day of October, 2007

_____
Notary Public
Georgian M. Hamilton



84244297.3

# EXHIBIT A

**GE Healthcare Financial Services**

# MASTER SECURITY AGREEMENT
## DATED AS OF 05/09/2003

THIS MASTER SECURITY AGREEMENT is between General Electric Capital Corporation (together with its successors and assigns, if any, **"Secured Party"**) and the undersigned Debtor (**"Debtor"**).    Secured Party has a mailing address at GE Healthcare Financial Services, P.O. Box 641419, Pittsburgh, PA 15264-1419. Debtor is a Limited Liability Company organized and existing under the laws of the State of Indiana. Debtor's mailing address and chief place of business is 3037 South Meridian Street, Indianapolis, IN  46217-3227.  This Agreement contains the general terms that apply to the financing of Equipment (defined below).  Additional terms that apply to the Equipment shall be contained on a schedule ("Schedule") and in the GE Equipment Addendum or the Non-GE Equipment Addendum, as the case may be.

### 1.    FINANCING, TERM AND TERMINATION:

(a)    Secured Party agrees to finance Debtor's purchase of the equipment ("**Equipment**").    All units of Equipment and other property, and all accessories, upgrades, additions, substitutions, replacement parts and tools pertaining thereto are further described in any Schedule signed by both parties.

(b)    This Agreement shall be effective as of the date stated above and, unless sooner terminated by Secured Party as hereinafter provided, shall continue until all of Debtor's obligations hereunder or under any Schedule(s) are fulfilled. The term of each Schedule is as specified in the Schedule and commences upon the Term Commencement Date (defined in subparagraph (c) below). In the event of a conflict between provisions of this Agreement and a Schedule, the provisions of the Schedule shall control.

(c)    The **"Term Commencement Date"** shall begin on (A) in the case of GE Equipment, the earlier of (i) five days after the date the Debtor is notified the Equipment has been assembled and is operating in accordance with the manufacturer's published performance specifications or (ii) the date the Debtor first uses the Equipment or (B) in the case of Non-GE Equipment, the date when Debtor has accepted the Equipment.    However, if the GE Equipment's installation and availability for first use is delayed for any reason for which the Secured Party is not responsible, the GE Equipment's availability for first use may, at Secured Party's discretion, be declared to be 30 days after the date the GE Equipment is delivered.

### 2.    CREATION OF SECURITY INTEREST:
Debtor grants to Secured Party, its successors and assigns, a first security interest in and against the Equipment and in and against all additions, attachments, accessories and accessions to such property, all substitutions, replacements or exchanges therefor, and all insurance and/or other proceeds thereof. This security interest is given to secure the payment and performance of all debts, obligations and liabilities of any kind whatsoever of Debtor to Secured Party and any renewals, extensions and modifications of such debts, obligations and liabilities.

### 3.    MONTHLY INSTALLMENTS/DOWN PAYMENT:
Debtor shall pay monthly installments to Secured Party at its address stated above, except as otherwise directed by Secured Party. Installments shall be in the amount set forth in the applicable Schedule and are due in advance beginning on the Term Commencement Date and on the same day of each consecutive month thereafter.  If any down payment (as stated in the Schedule) is payable, it shall be due when the Debtor signs the Schedule. The down payment shall be applied in the manner set forth under

such Schedule. Subject to set-off for payments made or expenses incurred by Secured Party, Secured Party will refund the down payment paid by Debtor with respect to a Schedule if the Schedule is terminated in writing, before any part of the Equipment is delivered to the Site, (i) by Secured Party or Debtor as a direct result of the other's material breach of a material term or condition of that Schedule or (ii) by mutual written agreement between the parties.  If a monthly installment is not paid within ten days of its due date, Debtor agrees to pay a late charge of five cents ($.05) per dollar on, and in addition to, the amount of such installment but not exceeding the lawful maximum, if any.  All other payments received by Secured Party shall first be applied to any accrued late charge(s) and other monies due Secured Party hereunder and then to any unpaid installments.

### 4.    TAXES:
If permitted by law, Debtor shall report and pay promptly all taxes, fees and assessments due, imposed, assessed or levied against any Equipment (or purchase, ownership, delivery, leasing, possession, use or operation thereof), this Agreement (or any receipts hereunder), any Schedule, Secured Party or Debtor by any governmental entity or taxing authority during or related to the term of this Agreement, including, without limitation, all license and registration fees, and all sales, use, personal property, excise, gross receipts, franchise, stamp or other taxes, imposts, duties and charges, together with any penalties, fines or interest thereon (collectively **"Taxes"**).  Debtor shall have no liability for Taxes imposed by the United States of America or any state or political subdivision thereof which are on or measured by the net income of Secured Party. Debtor shall promptly reimburse Secured Party (on an after tax basis) for any Taxes charged to or assessed against Secured Party.  Debtor shall send Secured Party a copy of each report or return and evidence of Debtor's payment of Taxes upon request by Secured Party.  Debtor's obligations under this Section 4 shall survive any expiration or termination of this Agreement.

### 5.    REPORTS:

(a)    If any tax charge or other lien shall attach to any Equipment, Debtor will notify Secured Party in writing, within ten days after Debtor becomes aware of the tax charge or lien. The notice shall include the full particulars of the tax charge or lien and the location of such Equipment on the date of the notice.

(b)    Debtor will deliver to Secured Party, Debtor's complete financial statements, certified by a recognized firm of certified public accountants within 90 days of the close of each fiscal year of Debtor. Debtor will deliver to Secured Party copies of Debtor's quarterly financial report certified by the chief financial officer of Debtor, within 90 days of the close of each fiscal quarter of Debtor. Debtor will deliver to Secured Party all Forms 10-K and 10-Q, if any, filed with the Securities and Exchange Commission within 30 days after the date on which they are filed.

(c)    Debtor will not change its state of incorporation or organization or its name as it appears in official filings in the state of its incorporation or organization without giving Secured Party at least 10 days' prior written notice.

### 6.    MAINTENANCE:

(a)    Debtor will, at its sole expense, maintain each unit of Equipment in good operating order and repair, normal wear and tear excepted.  The Debtor shall also maintain the Equipment in accordance with manufacturer's recommendations.  Debtor shall make all alterations or modifications required to comply with any

applicable law, rule or regulation dui. the term of this Agreement. If Secured Party requests, Debtor shall affix plates, tags or other identifying labels showing ownership thereof by Debtor and Secured Party's security interest.

(b) Debtor will not attach or install anything on any Equipment that will impair the originally intended function or use of such Equipment without the prior written consent of Secured Party. All additions, parts, supplies, accessories, and equipment ("Additions") furnished or attached to any Equipment that are not readily removable shall become the property of Secured Party. All Additions shall be made only in compliance with applicable law.

**7. INSURANCE:** Debtor agrees at its own expense, to keep the Equipment insured with companies acceptable to Secured Party for such amounts and against such hazards as Secured Party may require, including, but not limited to, all risk physical damage insurance for the Equipment itself, with losses under the policies payable to Secured Party or its assigns, if any, and liability coverage for personal injuries, death and/or property damages on terms satisfactory to Secured Party. Secured Party and/or its officers, agents, employees and/or successors and/or assigns shall be named as an additional insured under all such insurance policies with loss payable clauses under said policies payable in Secured Party's favor, as Secured Party's interest may appear. Said Equipment shall be insured for not less than its stated replacement value or such other amount as Secured Party shall specify. Said liability insurance shall be in an amount of not less than two million dollars ($2,000,000.00) or such other amount as Secured Party shall specify. Debtor hereby appoints Secured Party as its attorney-in-fact to make proof of loss and claims for insurance and to make adjustments with insurers and to receive payment of and execute or endorse all documents, checks or drafts in connection with payments made with respect to such insurance policies. Debtor may not make adjustments with insurers except with Secured Party's prior written consent. The policies will provide that the insurance may not be altered or canceled by the insurer until after thirty days written notice to Secured Party. In the event of damage to or loss, secretion, destruction or theft of the Equipment, or any portion of the Equipment, whether in whole or in part, Debtor will pay to Secured Party the replacement value of all Equipment, or of the portion of the Equipment affected if the value and use of the remainder of the Equipment are not affected at the time of such occurrence (except the extent that Secured Party indefeasibly receives proceeds of insurance covering such Equipment). Secured Party may, at Secured Party's option, apply proceeds of insurance, in whole or in part, (i) to repair or comparably replace the Equipment or any portion of it, or (ii) to satisfy any of Debtor's obligations pursuant to this Agreement or a Schedule.

**8. ACCESS AND REMOVAL:**

(a) The cost of removal and turnover, including all transportation, of the Equipment in the event of Debtor's default of a Schedule will be at Debtor's expense. If Debtor makes modifications to the site after the Equipment has been installed which impede the removal of the Equipment, the cost of removing the impediments and restoring the site will be at Debtor's expense.

(b) If, following an event of default, Secured Party exercises its right to demand that Debtor turn over the Equipment to Secured Party, the Equipment will be turned over to Secured Party or assigns, in the same condition and appearance as when received by Debtor (reasonable wear and tear excepted) and in good working order and condition, operable in accordance with the manufacturers then prevailing performance specifications. All waste material and fluid must be removed from the Equipment and disposed of by Debtor in accordance with then current waste disposal laws. If the Equipment is not so turned over, Secured Party, at Debtor's sole expense, may have the Equipment restored to such a condition. If Secured Party so requires, the units shall be de-installed and crated by an authorized manufacturer's representative or such other service person as is reasonably satisfactory to Secured Party.

**9. DEFAULT AND REMEDIES:**

(a) Secured Party may declare this Agreement in default if: (i) Debtor breaches its obligation to pay monthly installments or any other sum owing to Secured Party (under this Agreement or otherwise) when due and fails to cure the breach within ten days; (ii) Debtor breaches any of its insurance obligations under Section 7 above; (iii) Debtor breaches any of its other obligations and fails to cure that breach within 30 days after written notice from Secured Party; (iv) any representation or warranty made by Debtor in connection with this Agreement shall be incorrect, false or misleading in any material respect; (v) Debtor or any guarantor or other obligor for the Debtor's obligations hereunder ("**Guarantor**") becomes insolvent or ceases to do business as a going concern; (vi) Debtor assigns any of its interests in this Agreement or in the Equipment without Secured Party's prior consent; (vii) if Debtor or any Guarantor is a natural person, any death or incompetency of Debtor or such Guarantor; (viii) a petition is filed by or against Debtor or any Guarantor under any bankruptcy or insolvency laws (in which event, it would be an immediate event of default) and in the event of an involuntary petition, the petition is not dismissed within 45 days of the filing date; (ix) any material adverse change occurs in Debtor's financial condition or business operations (or of any Guarantor) or any material change occurs in the ownership of Debtor (or of any Guarantor), or (x) Debtor improperly files an amendment or termination statement relating to a filed financing statement describing the Equipment. Debtor's default under a Schedule or a default by Debtor or any entity managed or controlled by Debtor or by any principal of Debtor under any other agreement or contract with Secured Party, will at Secured Parties sole option, constitute a default of this Agreement and all Schedules entered into pursuant to this Agreement.

(b) Upon the occurrence of an event of default hereunder, Secured Party shall have the non-exclusive option to: (i) declare all sums due and to become due for the full term of any or all of the Schedules immediately due and payable; (ii) declare all other amount(s) due Secured Party hereunder immediately due and payable; (iii) collect from Debtor, on all monies due but unpaid for more than ten days, a late charge of five cents per dollar on, and in addition to, the amount of all such monies, but not exceeding the lawful maximum; (iv) take possession of the Equipment and remove same from its existing location(s) without notice to or consent of Debtor; and store and/or dispose (by public sale or otherwise) of the Equipment at its then existing location(s) at no charge to Secured Party; (v) sell or lease any or all items of Equipment at public or private sale or lease at such time or times as Secured Party may determine and if notice thereof is required by law, any notice in writing of any such sale or lease by Secured Party to Debtor not less than ten days prior to the date thereof shall constitute reasonable notice thereof to Debtor; (vi) otherwise dispose of, hold, use, operate, or keep idle such Equipment, all as Secured Party, in its sole discretion, may determine; and (vii) assert any other remedies available to Secured Party at law or in equity (including, without limitation, under the Uniform Commercial Code).

(c) After deducting all expenses of retaking, repairing, holding, transporting, selling and/or reletting the Equipment, the net proceeds (if any) from such sale or reletting by Secured Party shall be applied against Debtor's obligation hereunder. The proceeds of any sale, re-lease, or other disposition (if any) shall be applied in the following priorities: (i) first, to pay all Secured Party's costs, charges and expenses in taking, removing, holding, repairing, selling, re-leasing and disposing of the Equipment; (ii) second, to the extent not previously paid by Debtor (or by a Guarantor of Debtor's obligations hereunder) to pay Secured Party all amounts due from Debtor hereunder; and (iii) lastly, any surplus shall be delivered to Debtor. Secured Party shall have the right to seek a deficiency from Debtor notwithstanding Secured Party's repossession or abandonment of the Equipment, or Secured Party's sale or reletting the Equipment to a third party.

(d) The foregoing remedies are cumulative, and nonexclusive of any other rights and remedies that Debtor may have under any other agreement or at law or in equity and may be exercised individually or concurrently, any or all thereof may be

Master Security Ag                              Page 2 of 4                              (Rev. 03/10/03)

exercised instead of or in addition to each other or any remedies at law, in equity, or under statute. Debtor waives notice of sale or other disposition (and the time and place thereof), and the manner and place of any advertising. Debtor shall pay Secured Party's actual attorney's fees incurred in connection with the enforcement, assertion, defense or preservation of Secured Party's rights and remedies under this Agreement, or if prohibited by law, such lesser sum as may be permitted. Waiver of any default shall not be a waiver of any other or subsequent default.

**10. ASSIGNMENT:** DEBTOR SHALL NOT SELL, TRANSFER, ASSIGN, ENCUMBER OR SUBLET ANY EQUIPMENT OR THE INTEREST OF DEBTOR IN THE EQUIPMENT OR THE RIGHTS OR OBLIGATIONS OF DEBTOR UNDER THIS AGREEMENT WITHOUT THE PRIOR WRITTEN CONSENT OF SECURED PARTY. Secured Party may, without the consent of Debtor, assign this Agreement, any Schedule or the right to enter into a Schedule provided that any such assignment shall not relieve Secured Party of its obligations hereunder. Debtor agrees that if Debtor receives written notice of an assignment from Secured Party, Debtor will pay all monthly installments and all other amounts payable under any assigned Schedule to such assignee or as instructed by Secured Party. Debtor also agrees to confirm in writing receipt of the notice of assignment as may be reasonably requested by Secured Party or assignee. Debtor hereby waives and agrees not to assert against any such assignee any defense, set-off, recoupment claim or counterclaim which Debtor has or may at any time have against Secured Party for any reason whatsoever.

**11. NO THIRD PARTY BENEFICIARIES:** This Agreement is for the benefit of Debtor and Secured Party and no person or legal entity is, or shall be, considered an intended third party beneficiary thereof, and no person other than Debtor and Secured Party shall have an enforceable right to any benefits under this Agreement.

**12. REPRESENTATIONS, WARRANTIES AND COVENANTS OF DEBTOR:** Debtor makes each of the following representations, warranties, and covenants to Secured Party on the date hereof and on the date of execution of each Schedule.

(a)  Debtor has full power and capacity to enter into, and perform under, this Agreement, the Schedules and all related documents (together, the **"Documents"**). Debtor is duly qualified to do business wherever necessary to carry on its present business and operations, including the jurisdiction(s) where the Equipment is or is to be located.

(b)  The Documents have been duly authorized, executed and delivered by Debtor and constitute valid, legal and binding agreements, enforceable in accordance with their terms, except to the extent that the enforcement of remedies may be limited under applicable bankruptcy and insolvency laws.

(c)  No approval, consent or withholding of objections is required from any governmental authority or any person or entity with respect to the entry into or performance by Debtor of the Documents except such as have already been obtained.

(d)  The entry into and performance by Debtor of the Documents will not: (i) violate any judgment, order, law or regulation applicable to Debtor or any provision of Debtor's organizational documents; or (ii) result in any breach of, constitute a default under or result in the creation of any lien, charge, security interest or other encumbrance upon any Equipment pursuant to any indenture, mortgage, deed of trust, bank loan or credit agreement or other instrument (other than this Agreement) to which Debtor is a party.

(e)  There are no suits or proceedings pending or threatened in court or before any commission, board or other administrative agency against or affecting Debtor, which if decided against Debtor will have a material adverse effect on its business or operations or its ability to fulfill its obligations under this Agreement.

(f)  The Equipment is and will remain tangible personal property.

(g)  Each financial statement delivered to Secured Party has been prepared in accordance with generally accepted accounting principles consistently applied. Since the date of the most recent financial statement, there has been no material adverse change in the financial condition of the Debtor.

(h)  Debtor's exact legal name is as set forth in the last page of this Agreement and Debtor is and will be at all times validly existing and in good standing under the laws of the state of its formation (specified in the first sentence of this Agreement).

(i)  The Equipment will at all times be used for commercial or business purposes.

(j)  Debtors agrees that the Equipment will be used by Debtor solely in the conduct of its business and in a manner complying with all applicable laws, regulations and insurance policies.

(k)  Debtor will not move any Equipment from the location specified on the Schedule, without the prior written consent of Secured Party.

(l)  Debtor will keep the Equipment free and clear of all liens and encumbrances other than those which result from acts of Secured Party.

**13. USURY SAVINGS:** It is the intention of the parties hereto to comply with any applicable usury laws to the extent that any Schedule is determined to be subject to such laws. Accordingly, it is agreed that, notwithstanding any provision to the contrary in any Schedule or this Agreement, in no event shall any Schedule require the payment or permit the collection of interest in excess of the maximum amount permitted by applicable law. If any such excess interest is contracted for, charged or received under any Schedule or this Agreement, or in the event that all of the principal balance shall be prepaid, so that under any of such circumstances the amount of interest contracted for, charged or received under any Schedule or this Agreement shall exceed the maximum amount of interest permitted by applicable law, then in such event (i) the provisions of this paragraph shall govern and control, (ii) neither Debtor nor any other person or entity now or hereafter liable for the payment hereof shall be obligated to pay the amount of such interest to the extent that it is in excess of the maximum amount of interest permitted by applicable law, (iii) any such excess which may have been collected shall be either applied as a credit against the then unpaid principal balance or refunded to Debtor, at the option of the Secured Party, and (iv) the effective rate of interest shall be automatically reduced to the maximum lawful contract rate allowed under applicable law as now or hereafter construed by the courts having jurisdiction thereof.

**14. LIMITATION OF REMEDIES AND DAMAGES:** THE TOTAL LIABILITY OF SECURED PARTY AND ITS REPRESENTATIVES TO DEBTOR AND DEBTOR'S EXCLUSIVE REMEDY RELATING TO A SCHEDULE IS LIMITED TO THE MONTHLY INSTALLMENT WHICH IS THE BASIS FOR THE CLAIM. Debtor agrees that Secured Party and its representatives have no liability to Debtor for (i) any penal, punitive, special, incidental, or consequential damages such as lost profit or revenue, (ii) any assistance not required under the Schedule, or (iii) anything occurring after the end of a Schedule. Debtor will be barred from any remedy unless Debtor gives Secured Party prompt written notice of the problem. This is a commercial transaction. Any claim related to this contract will be covered solely by commercial legal principles. SECURED PARTY, ITS REPRESENTATIVES AND ASSIGNS WILL NOT HAVE ANY NEGLIGENCE OR OTHER TORT LIABILITY TO DEBTOR OR ANY PERSON OR ENTITY, ARISING FROM THIS AGREEMENT AND ANY OTHER DOCUMENT OR ANY USE OF ANY EQUIPMENT.

**15. COMPLIANCE WITH REPORTING RESPONSIBILITIES:** Debtor agrees to fully and accurately account for, and report in any

applicable cost reports, all items and c    ces received from Secured Party under this Agreement, in a way which complies with all applicable laws and regulations, including the Federal Social Security Act and implementing regulations relating to Medicare, Medicaid and the Federal Health Care Programs.

**16.   FILING:** Debtor will sign and return to Secured Party when requested such instrument(s) as applicable law requires or permits to give public notice of Secured Party's interest in the Equipment. In addition, Debtor hereby authorizes Secured Party to file a financing statement and amendments thereto describing the Equipment described in any and all Schedules now and hereafter executed pursuant hereto and adding any collateral described therein and containing any other information required by the applicable Uniform Commercial Code. Debtor hereby irrevocably appoints Secured Party or its designee as Debtor's agent and attorney-in-fact to sign such instrument(s) on Debtor's behalf and to file them.

**17.   MISCELLANEOUS:**

(a)   DEBTOR AND SECURED PARTY UNCON-DITIONALLY WAIVE THEIR RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, ANY OF THE DOCUMENTS, ANY DEALINGS BETWEEN DEBTOR AND SECURED PARTY RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN DEBTOR AND SECURED PARTY. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT. THIS WAIVER IS IRREVOCABLE. THIS WAIVER MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING. THE WAIVER ALSO SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, ADDENDA OR MODIFICATIONS TO THIS AGREEMENT, ANY RELATED DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

(b)   Time is of the essence of this Agreement. Secured Party's failure at any time to require strict performance by Debtor of any of the provisions hereof shall not waive or diminish Secured Party's right at any time to demand strict compliance with this Agreement. If more than one Debtor is named in this Agreement, the liability of each shall be joint and several. All notices required to be given hereunder shall be deemed adequately given if sent by registered or certified mail to the addressee at its address stated herein, or at such other place as such addressee may have specified in writing by notice as prescribed in this Agreement. This Agreement and any addendum, schedule and annexes hereto constitute the entire agreement of the parties with respect to the subject matter hereof. No prior proposals, statements, course of dealing, or usage of trade will be a part of this Agreement. NO

VARIATION OR MOL    ATION OF THIS AGREEMENT OR ANY WAIVER OF ANY OF ITS PROVISIONS OR CONDITIONS SHALL BE VALID UNLESS IN WRITING AND SIGNED BY AN AUTHORIZED REPRESENTATIVE OF THE PARTIES HERETO.

(c)   If Debtor does not comply with any provision of this Agreement, Secured Party shall have the right, but shall not be obligated, to effect such compliance, in whole or in part. All reasonable amounts spent and obligations incurred or assumed by Secured Party in effecting such compliance shall constitute an additional installment due to Secured Party. Debtor shall pay the additional installment within five days after the date Secured Party sends notice to Debtor requesting payment. Secured Party's effecting such compliance shall not be a waiver of Debtor's default.

(d)   Any provisions in this Agreement, any Schedule, addendum or amendment hereto that are in conflict with any statute, law or applicable rule shall be deemed omitted, modified or altered to conform thereto, but the remaining provisions shall remain enforceable as written.

(e)   THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES OF SUCH STATE), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, REGARDLESS OF THE LOCATION OF THE EQUIPMENT.

(f)   Debtor agrees that neither it nor its affiliates will in the future issue any press release or other public disclosure using the name of General Electric Capital Corporation or its affiliates or referring to this Agreement without at least two (2) business days' prior notice to Secured Party and without the prior written consent of Secured Party unless (and only to the extent that) Debtor or its affiliate is required to do so under law and then, in any event, such Debtor or affiliate will consult with Secured Party before issuing such press release or other public disclosure. Debtor consents to the publication by Secured Party of a tombstone or similar advertising material relating to the financing transactions contemplated by this Agreement.

(g)   There is no restriction either express or implied on any disclosure or dissemination of the structure or tax aspects of the transactions contemplated by this Agreement. Further, the Secured Party acknowledges that it has no proprietary rights to any tax matter or tax idea or to any element of the transaction structure.

(h)   This Agreement and any related documents may be authenticated by manual signature, facsimile or, if approved in writing by Secured Party, electronic means, all of which shall be equally valid.

**IN WITNESS WHEREOF,** Debtor and Secured Party have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

| SECURED PARTY: | DEBTOR: |
|---|---|
| **General Electric Capital Corporation** | **New York MEG, L.L.C.** |
| By: _Thomas J. Bruce_ (signature) | By: (signature) |
| Name: _Thomas J. Bruce_ | Name: _Jim Cerutti_ |
| Title:   Duly Authorized Signatory | Title: _Principal_ |


**GE Healthcare Financial Services**

# NON-GE EQUIPMENT ADDENDUM
## DATED AS OF 05/09/2003
## TO MASTER SECURITY AGREEMENT
## DATED AS OF 05/09/2003

THIS ADDENDUM ("Addendum") is attached and made a part of the above referenced Master Security Agreement (the "Agreement") between General Electric Capital Corporation ("Secured Party") and the undersigned Debtor ("Debtor") and is incorporated by reference into the Agreement. This Addendum modifies and supplements the Agreement and sets forth additional terms and conditions that apply to Equipment that has not been manufactured by the General Electric Company or its affiliate. Any conflict between this Addendum and the Agreement shall be resolved so as to give effect to the provisions of this Addendum. Capitalized terms not otherwise defined herein shall have the meaning set forth in the Agreement.

1.    **TRANSPORTATION AND RISK OF LOSS:**

      (a)    The Equipment will be shipped to the site identified in a Schedule by the Supplier of the Equipment. Debtor will inform Secured Party of the date the Equipment is delivered within 5 days of such delivery. Any necessary assembly or installation will be described in the Schedule. The Debtor agrees to accept shipment of the Equipment and to cooperate with any assembler to permit the assembler to complete its task without delay.

      (b)    The Debtor or the Supplier will bear responsibility for transportation and risk of loss of the Equipment at all times. At no time will Secured Party bear the risk of loss. The use of the term "risk of loss" herein shall include, without limitation, the entire risk of any loss, theft, damage to, or destruction of any unit of Equipment from any cause whatsoever.

2.    **INDEMNIFICATION:** Debtor hereby agrees to indemnify Secured Party, its agents, employees, successors and assigns (on an after tax basis) from and against any and all losses, damages, penalties, injuries, claims, actions and suits, including legal expenses, of whatsoever kind and nature arising out of or relating to the Equipment or this Agreement, except to the extent the losses, damages, penalties, injuries, claims, actions, suits or

expenses result from Secured Party's gross negligence or willful misconduct ("Claims"). This indemnity shall include, but is not limited to, Secured Party's strict liability in tort and Claims, arising out of (i) the selection, manufacture, purchase, acceptance or rejection of Equipment, the ownership of Equipment during the term of this Agreement, and the delivery, lease, possession, maintenance, uses, condition, return or operation of Equipment (including, without limitation, latent and other defects, whether or not discoverable by Secured Party or Debtor and any claim for patent, trademark or copyright infringement or environmental damage) or (ii) the condition of Equipment sold or disposed of after use by Debtor or employees of Debtor. Debtor shall, upon request, defend any actions based on, or arising out of, any of the foregoing. All of Secured Party's rights, privileges and indemnities contained in this Section 2 shall survive the expiration or other termination of this Agreement. The rights, privileges and indemnities contained herein are expressly made for the benefit of, and shall be enforceable by Secured Party, its successors and assigns.

3.    **DISCLAIMER:** DEBTOR ACKNOWLEDGES THAT IT HAS SELECTED THE EQUIPMENT WITHOUT ANY ASSISTANCE FROM SECURED PARTY, ITS AGENTS OR EMPLOYEES. SECURED PARTY DOES NOT MAKE, HAS NOT MADE, NOR SHALL BE DEEMED TO MAKE OR HAVE MADE, ANY WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, WITH RESPECT TO THE EQUIPMENT LEASED UNDER THIS AGREEMENT OR ANY COMPONENT THEREOF, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY AS TO DESIGN, COMPLIANCE WITH SPECIFICATIONS, QUALITY OF MATERIALS OR WORKMANSHIP, MERCHANTABILITY, FITNESS FOR ANY PURPOSE, USE OR OPERATION, SAFETY, PATENT, TRADEMARK OR COPYRIGHT INFRINGEMENT, OR TITLE. All such risks, as between Secured Party and Debtor, are to be borne by Debtor.

IN WITNESS WHEREOF, Debtor and Secured Party have caused this Addendum to be executed by their duly authorized representatives as of the date first above written.

SECURED PARTY:                                                DEBTOR:

General Electric Capital Corporation                          New York MEG, L.L.C.

By:  _Thomas J. Bruce_                     By:  _(signature)_

Name:  _Thomas J. Bruce_                   Name:  _Jim Cerutti_

Title:  Duly Authorized Signatory          Title:  _Principal_



**GE Healthcare Financial Services**

## ACCEPTANCE CERTIFICATE
### RELATING TO SCHEDULE DATED AS OF 05/09/2003
### TO MASTER SECURITY AGREEMENT DATED AS OF 05/09/2003
### INTERNAL CONTRACT REFERENCE NUMBER 8527100
### INTERNAL ORDER REFERENCE NUMBER 861-404086
### EQUIPMENT DESCRIPTION: 4D Neuro Imaging Brain Mapping System

To:  General Electric Capital Corporation

Pursuant to the provisions of the above referenced Schedule and Master Security Agreement, the undersigned, on behalf of, and as authorized and instructed by Debtor hereby certifies that the Equipment described in the above-referenced Schedule has been delivered and received; that the Equipment has been fully assembled as required; that installation or other work necessary prior to the use of the Equipment has been fully completed as required; that the Equipment has been examined and/or tested and is in good order and operating condition and is in all respects satisfactory; and that Debtor has accepted the Equipment unconditionally.

The equipment was first delivered to Debtor on _12/26/03_ and copies of the bill(s) of lading or other documentation acceptable to Debtor which show the date of delivery are attached hereto.

Debtor has read and reviewed the above-referenced Master Security Agreement and Schedule, and hereby reaffirms and acknowledges its terms and conditions.  Debtor further represents and warrants that all representations and warranties made by Debtor in such Master Security Agreement were true and accurate when originally made and are true and accurate as of the date set forth below.

The undersigned hereby certifies and represents that the undersigned is duly authorized to execute and deliver this ACCEPTANCE NOTICE on behalf of the Debtor.

Debtor:
New York MEG, L.L.C.

_____
Authorized Signature

Principal
Title

December 26, 2003
Date



**GE Healthcare Financial Services**

## AMENDMENT TO
## MASTER SECURITY AGREEMENT DATED AS OF 05/09/2003

This is an Amendment dated as of 10/27/2005 to the Schedule and Master Security Agreement referenced above between General Electric Capital Corporation ("Secured Party") and New York Meg, L.L.C. ("Debtor").

The 8. Access and Removal Section(s) is/(are) hereby amended as follows:

**Original** - or (x) Debtor improperly files an amendment or termination statement relating to a filed financing statement describing the Equipment;

**Amended** - or (x) Debtor improperly files an amendment or termination statement relating to a filed financing statement describing the Equipment; or (xi) the letter of credit in the amount of nine hundred fifty thousand dollars ($950,000) pledged in connection with this Agreement for the benefit of Secured Party expires or is unenforceable for any reason.

EXCEPT AS PROVIDED IN THIS AMENDMENT, ALL OTHER TERMS AND CONDITIONS OF THE ABOVE REFERENCED SCHEDULE REMAIN IN FULL FORCE AND EFFECT AS ORIGINALLY WRITTEN.

Secured Party:                                         Debtor:

General Electric Capital Corporation                  New York Meg, L.L.C.

By: _____                           By: _____
      Jon D. Storck
Print Name: _Vice President_                           Print Name: _Jim Cerutti_

Title: Duly Authorized Signatory                       Title: _Vice President_



**GE Healthcare Financial Services**

---

### SECOND AMENDMENT TO
### MASTER SECURITY AGREEMENT DATED AS OF 05/09/2003

This is an Amendment dated as of August 25, 2006 to the Master Security Agreement referenced above (as heretofore amended, the "Agreement") between General Electric Capital Corporation ("Secured Party") and New York Meg, L.L.C. ("Debtor').

Section 8(a) of the Agreement, entitled "Default and Remedies" is hereby amended as follows:

The "or" immediately preceding the reference to "(x)" is deleted, and there is added immediately following clause (x) the following text:

"; or (xi) the letter of credit in the amount of nine hundred fifty thousand dollars ($950,000) issued for the account of Debtor to and in favor of Secured Party expires, is terminated or is unenforceable for any reason (except that Debtor shall be permitted to replace such letter of credit with a replacement letter of credit in the same amount, having an expiration date no earlier than August 31, 2007, issued by a financial institution satisfactory to Secured Party, and otherwise in form and substance satisfactory to Secured Party".

EXCEPT AS PROVIDED IN THIS AMENDMENT, ALL OTHER TERMS AND CONDITIONS OF THE AGREEMENT REMAIN IN FULL FORCE AND EFFECT AS ORIGINALLY WRITTEN.

Secured Party:                              Debtor:

General Electric Capital Corporation        New York Meg, L.L.C.

By: _____              By: _____

Print Name: Jin Sperry                      Print Name:  Jim Cerutti

Title:  Duly Authorized Signatory           Title:  Vice President

# EXHIBIT B

**GE Healthcare Financial Services**

Internal Contract Ref. # 8527100
Internal Order Ref. # 861-404086

# EQUIPMENT SCHEDULE
## DATED AS OF 05/09/2003
## TO MASTER SECURITY AGREEMENT
## DATED AS OF 05/09/2003

This Schedule is executed pursuant to, and incorporates by reference the terms and conditions of the Master Security Agreement identified above ("Agreement"). Except as provided herein, capitalized terms not defined herein shall have the meanings assigned to them in the Agreement.

**1.   EQUIPMENT:** Subject to the terms and conditions of the Agreement, Secured Party agrees in the case of GE Equipment to sell to Debtor, and in the case of non-GE Equipment to finance Debtor's purchase of, the Equipment described below (the "Equipment").

| Number of Units | Site | Supplier/ Manufacturer | Financed Equipment Cost | Model, VIN & Unit # and/or Type Of Equipment |
|---|---|---|---|---|
| 1 | New York MEG Center, LLC 300 East 39th Street New York, NY 10016-2140 | 4-D Neuroimaging 9727 Pacific Heights Blvd San Diego, CA 92121 | $2,491,000.00 | 4D Neuro Imaging Brain Mapping System |

**2.   TERMS AND INSTALLMENTS:**

**A.   Term of Schedule:** 39 months.  The term of this Schedule will commence on the Term Commencement Date specified in the "Financing, Term and Termination" section of the Agreement and continue for the term specified immediately above, subject to and in accordance with the terms and conditions of this Schedule.

**B.   Down Payment:** $0.00.  Debtor's payment of the down payment to Secured Party will be made on or before execution and return of this Schedule.  Secured Party's retention of the down payment is subject to the "Monthly Installments/Down Payments" section of the Agreement.

**C.   Monthly Installment:** 3 Months @ $0.00; 12 Months @ $45,490.00; 24 Months @ $97,528.78, plus all applicable taxes. All payments will be in arrears.  In states assessing sales and use tax, your Monthly Installments will be adjusted to include the applicable sales and use tax at the same rate that was used to calculate your Monthly Installments under this Agreement. Debtor's payment of Monthly Installments to Secured Party will be in accordance with the "Monthly Installments/Down Payments" section of the Agreement.  The interest rate with respect to this Schedule will be established on the Term Commencement Date. The interest rate will be equal to 7.45% per annum plus or minus, as applicable, the number of points that the yield on 3 Year Interest Rate Swaps on the Term Commencement Date is above or below 2.36%, which was established based on the 3 Year Interest Rate Swaps as of the week ending 4/4/2003.  The interest rate shall be calculated on the basis of a 365-day year and will be charged for each calendar day on which any principal of the financed Equipment cost is outstanding.

**3.   PREPAYMENT PENALTY.**  The Debtor may prepay in full, but not in part, its entire indebtedness hereunder upon payment of an additional sum as a premium equal to the following percentages of the original financed Equipment cost for the indicated period:

Prior to the first annual anniversary date of this Schedule: no prepayment permitted

Month thirteen (13) through and including month twenty-four (24) of this Schedule: four percent (4%)

Month twenty-five (25) through and including month thirty-six (36) of this Schedule: three percent (3%)

Month thirty-seven (37) through and including month forty-eight (48) of this Schedule: two percent (2%)

And one percent (1%) thereafter, plus all other sums due hereunder.

**4.   AUTODRAFTING:**

**A.**   Debtor hereby authorizes Secured Party to initiate debit entries for Debtor's payment of the charges which are due periodically under this Schedule and any service contracts relating to the Equipment and the financial institution indicated below to debit with the amounts thereof the account listed below.

Financial Institution Name: **First Bank**
Financial Institution
Address:                    PO Box 390
                           996 S. State Rd. 135
City: Greenwood        State: IN Zip: 46143

B.   The following information can be provided from Debtor's check so please attach a copy of a voided check:

Account Name: **New York MEG, L.L.C.**

Nine-digit Financial Institution ID Number: 074908471

Your Financial Institution Account Number: 408916

C.   Debtor further authorizes Secured Party to adjust the dollar amount transferred from Debtor's account to correspond to periodic changes in the payment due, if any, under the terms of this Schedule.

D.   Debtor hereby authorizes Secured Party to automatically debit all current or past due property taxes (if applicable).

E.   Rules and Regulations

(i)   Debtor understands that due to the difference in timing between the Term Commencement Date and the booking of this Schedule, the initial debit may be for more then one periodic charge but will not be more than the actual total monthly amounts due at that time.

(ii)   Failure to have adequate funds in Debtor's account shall constitute an event of default under this Schedule.

(iii)   Debtor understands that it will continue to receive an invoice each month as notification of the amount to be debited from its account.

(iv)   Debtor must provide Secured Party with written notice at least 30 days in advance of Debtor's intent to revoke, terminate or modify this authorization of the information contained herein. In the event Debtor revokes or terminates this authorization, Debtor must remit its periodic charges directly to Secured Party at the address specified in the Agreement. Failure to pay the periodic charges on or before the due date shall constitute an event of default under this Schedule.

(v)   If a deduction is made in error, Debtor has the right to be immediately refunded by Secured Party for the amount of the erroneous deduction provided that Debtor provides written notification of the erroneous deduction within 15 days after its account statement is issued or 45 days after the monies are paid to Secured Party.

5.   **Debtor does further certify that as of the date hereof (i) Debtor is not in default under the Agreement; (ii) the representations and warranties made by Debtor pursuant to or under the Agreement are true and correct on the date hereof and (iii) Debtor has reviewed and approves of the purchase documents for the Equipment, if any.**

6.   Any modified or additional terms and conditions of this Schedule are set forth in the following attachments to this Schedule: _____.

7.   Except as expressly modified hereby, all terms and provisions of the Agreement shall remain in full force and effect.

SECURED PARTY:

**General Electric Capital Corporation**

By: _Thomas A. Brun_
Name: _Thomas J. Bruce_
Title:   Duly Authorized Signatory

DEBTOR:

**New York MEG, L.L.C.**

By: _[signature]_
Name: _Jim Cerutti_
Title:     Principal

 **GE Healthcare Financial Services**

**ADDENDUM TO SCHEDULE DATED AS OF 05/09/2003**
**TO MASTER LOAN AGREEMENT DATED AS OF 05/09/2003**
**INTERNAL CONTRACT REFERENCE NUMBER 8527100**
**INTERNAL ORDER REFERENCE NUMBER 861-404086**

**DISTRIBUTIONS RESTRICTIONS**

This Addendum dated 05/07/2003, between General Electric Capital Corporation (hereinafter "Lessor") and New York Meg, L.L.C. (hereinafter "Lessee") is attached to and made a part of Schedule to the Master Agreement referenced above by and between Lessor and Lessee (hereinafter "Agreement"). Unless otherwise noted, all terms used herein have the same meaning they are accorded in the Agreement. The Schedule is hereby amended and supplemented as follows:

WHEREAS, Lessor, as an inducement to enter into the Agreement, desires Lessee to subordinate payment of shareholder salaries, bonuses, commission, fees and/or dividends to the payment of any Monthly Rental payments that may be then due and payable to Lessor by Lessee under the Agreement.

NOW THEREFORE, in consideration of the foregoing, it is hereby mutually agreed between Lessor and Lessee as follows:

1. During the term of this Schedule, no salary, bonus, commission, management and billing fees and/or dividend will be paid to any shareholder or partners of Lessee unless and until any and all Monthly Rental payments that are then currently due and payable to Lessor under the Agreement have been paid in full.

2. For purposes of this Agreement, the term "shareholder" includes any and all shareholders who become such subsequent to the date of this Agreement.

**Lessor:**

**General Electric Capital Corporation**


By: _Thomas A. Brown_

Title: _Duly Authorized Signatory_

**Lessee:**

**New York Meg, L.L.C.**


By: _____

Title: _Principal_____

**(GE)** **GE Healthcare Financial Services**

### AMENDMENT TO SCHEDULE DATED AS OF 05/09/2003
### TO MASTER SECURITY AGREEMENT DATED AS OF 05/09/2003
### INTERNAL CONTRACT REFERENCE NUMBER 8527100

This is an Amendment dated as of 10/27/2005 to the Schedule and Master Security Agreement referenced above between General Electric Capital Corporation ("Secured Party") and New York Meg, L.L.C. ("Debtor").

**Original**

| Number of Units | Site | Supplier/ Manufacturer | Financed Equipment Cost | Model, VIN #, Unit # and/or Type Of Equipment |
|---|---|---|---|---|
| 1 | New York MEG Center, LLC 300 East 39th Street New York, NY 10016-2140 | 4-D Neuroimaging 9727 Pacific Heights Blvd San Diego, CA 92121 | $2,491,000.00 | 4D Neuro Imaging Brain Mapping System |

**Amended**

| Number of Units | Site | Supplier/ Manufacturer | Financed Equipment Cost | Model, VIN #, Unit # and/or Type Of Equipment |
|---|---|---|---|---|
| 1 | New York MEG Center, LLC 300 East 39th Street New York, NY 10016-2140 | 4-D Neuroimaging 9727 Pacific Heights Blvd San Diego, CA 92121 | $2,167,556.76 | 4D Neuro Imaging Brain Mapping System |

**Original**

**TERMS AND INSTALLMENTS:**

Term of Schedule: 39 months. The term of this Schedule will commence on the Term Commencement Date specified in the "Financing, Term and Termination" section of the Agreement and continue for the term specified immediately above, subject to and in accordance with the terms and conditions of this Schedule.

**Amended**

**TERMS AND INSTALLMENTS:**

Term of Schedule 12 months. The Term of this Schedule will commence on 10/25/2005 (the "Term Commencement Date") and continue for the term specified immediately above, subject to and in accordance with the terms and conditions of this Schedule.

Amendment                                                                                                           Rev. 10/28/03

The Monthly Installment Section(s) is/(are) hereby amended as follows:

**Original** - Monthly Installment: 3 Months @ $0.00; 12 Months @ $45,490.00; 24 Months @ $97,528.78, plus all applicable taxes. All payments will be in arrears. In states assessing sales and use tax, your Monthly Installments will be adjusted to include the applicable sales and use tax at the same rate that was used to calculate your Monthly Installments under this Agreement. Debtor's payment of Monthly Installments to Secured Party will be in accordance with the "Monthly Installments/Down Payments" section of the Agreement.

**Amended** - Monthly Installment: 11 Months @ $43,784.45, 1 Months @ $1,842,808.48, plus all applicable taxes. All payments will be in arrears. In states assessing sales and use tax, your Monthly Installments will be adjusted to include the applicable sales and use tax at the same rate that was used to calculate your Monthly Installments under this Agreement. Debtor's payment of Monthly Installments to Secured Party will be in accordance with the "Monthly Installments/Down Payments" section of the Agreement.

EXCEPT AS PROVIDED IN THIS AMENDMENT, ALL OTHER TERMS AND CONDITIONS OF THE ABOVE REFERENCED SCHEDULE REMAIN IN FULL FORCE AND EFFECT AS ORIGINALLY WRITTEN.

Secured Party:                                    Debtor:

General Electric Capital Corporation              New York Meg, L.L.C.

By: _____                     By: _____

Print Name: _____Jon D. Storck_____              Print Name: ___Jim Cerutti_____
                   Vice President

Title: Duly Authorized Signatory                  Title: ___Vice President_____



**GE Healthcare Financial Services**

---

### SECOND AMENDMENT TO SCHEDULE DATED AS OF 05/09/2003
### TO MASTER SECURITY AGREEMENT DATED AS OF 05/09/2003
### INTERNAL CONTRACT REFERENCE NUMBER 8527100

This is an Amendment dated as of August 25, 2006 to the Schedule referenced above between General Electric Capital Corporation ("Secured Party") and New York Meg, L.L.C. ("Debtor'), as previously amended by that certain Amendment to Schedule Dated as of 5/09/2003.

### Original

| Number of Units | Site | Supplier/ Manufacturer | Financed Equipment Cost | Model, VIN #, Unit # and/or Type Of Equipment |
|---|---|---|---|---|
| 1 | New York MEG Center, LLC 300 East 39th Street New York, NY 10016-2140 | 4-D Neuroimaging 9727 Pacific Heights Blvd San Diego, CA 92121 | $2,167,556.76 | 4D Neuro Imaging Brain Mapping System |

### Amended

| Number of Units | Site | Supplier/ Manufacturer | Financed Equipment Cost | Model, VIN #, Unit # and/or Type Of Equipment |
|---|---|---|---|---|
| 1 | New York MEG Center, LLC 300 East 39th Street New York, NY 10016-2140 | 4-D Neuroimaging 9727 Pacific Heights Blvd San Diego, CA 92121 | $2,061,730.73 | 4D Neuro Imaging Brain Mapping System |

### Original

**TERMS AND INSTALLMENTS:**

Term of Schedule: 12 months.  The term of this Schedule will commence on 10/25/2005 (the "Term Commencement Date") and continue for the term specified immediately above, subject to and in accordance with the terms and conditions of this Schedule.

### Amended

**TERMS AND INSTALLMENTS:**

Term of Schedule 12 months.  The Term of this Schedule will commence on 8/25/2006 (the "Term Commencement Date") and continue for the term specified immediately above, subject to and in accordance with the terms and conditions of this Schedule.

Amendment

Rev. 10/28/03