# EXHIBIT B (CONT.)

The Monthly Installment Section is hereby amended as follows:

**Original –** <u>Monthly Installment</u>: 11 Months @ $43,764.45, 1 Month @ $1,842,808.48, plus all applicable taxes. All payments will be in arrears. In states assessing sales and use tax, your Monthly Installments will be adjusted to include the applicable sales and use tax at the same rate that was used to calculate your Monthly Installments under this Agreement. Debtor's payment of Monthly Installments to Secured Party will be in accordance with the "Monthly Installments/Down Payments" section of the Agreement.

**Amended –** <u>Monthly Installment</u>: 11 Months @ $40,000.00, 1 Months @ $1,762,782.30, plus all applicable taxes. All payments will be in advance. In states assessing sales and use tax, your Monthly Installments will be adjusted to include the applicable sales and use tax at the same rate that was used to calculate your Monthly Installments under this Agreement. Debtor's payment of Monthly Installments to Secured Party will be in accordance with the "Monthly Installments/Down Payments" section of the Agreement.

EXCEPT AS PROVIDED IN THIS AMENDMENT, ALL OTHER TERMS AND CONDITIONS OF THE ABOVE REFERENCED SCHEDULE SHALL REMAIN IN FULL FORCE AND EFFECT AS ORIGINALLY WRITTEN.

Secured Party:

General Electric Capital Corporation

By: _____

Print Name: ___Jon Force___

Title: Duly Authorized Signatory

Debtor:

New York Meg, L.L.C.

By: _____

Print Name: ___Jim Cerutti___

Title: ___Vice President___

# EXHIBIT C



**GE Healthcare Financial Services**

# PROMISSORY NOTE
## INTERNAL CONTRACT REFERENCE NUMBER 8527143
## INTERNAL ORDER REFERENCE NUMBER 861-404087

Dated as of _____

FOR VALUE RECEIVED, New York MEG, L.L.C. ("Maker"), located at 3037 South Meridian Street, Indianapolis, IN 46217-3227, promises, jointly and severally if more than one, to pay to the order of General Electric Capital Corporation or any subsequent holder hereof (each, a "Payee") at its mailing address at P.O. Box 641419, Mail Code W-490, Pittsburgh, PA 15264-1419 or at such other place as Payee may designate, the principal sum of **$775,000.00**, or, if less, the aggregate unpaid principal amount of all advances made by Payee to Maker, as shown on Exhibit A attached hereto, with interest on the unpaid principal balance from time to time outstanding, from and including the date hereof.

Advances under this Promissory Note shall be made from time to time by Payee either to Maker or directly to vendors on Maker's behalf, upon Payee's receipt of Maker's written request on Exhibit B to advance such principal amount (said request to be delivered at least ten (10) days prior to the date the advance is to be made). Each advance shall be noted by Payee on Exhibit A attached hereto. Advances will continue until the "Principal Payment Commencement Date", defined as the earlier of a) six months from the date of this Promissory Note stated above or b) total advances have been made equaling the principal sum disclosed in the first paragraph. No further advances will be made under this Promissory Note after the Principal Payment Commencement Date.

The interest rate with respect to this Promissory Note will be established for each individual advance on Exhibit A, based on the following formula: **8.17%** per annum plus or minus, as applicable, the number of points that the yield on 3 Year Treasury Constant Maturities on the date of the advance, is above or below 2.05%, which was established based on the 3 Year Treasury Constant Maturities as of the week ending April 11, 2003, to be paid in lawful money of the United States, in 39 consecutive monthly installments of principal and interest of **3 Months @ $0.00, 12 Months @ $16,000.00, 23 Months @ $29,841.28 (all payments in arrears)** and a final installment which shall be in the amount of the total outstanding principal and interest ("Payment Schedule"). The Payment Schedule may be adjusted by Payee for advances less than the principal amount stated above, accrued interest due, or a change in the interest rate. The final Payment Schedule will be detailed on Exhibit A.

At the Principal Payment Commencement Date, Maker will begin paying principal and interest on the advances outstanding, based on the interest rate applicable on the Principal Payment Commencement Date. The first principal and interest installment shall be due and payable _____ and the following installments shall be due and payable on the same day of each succeeding month (each, a "Payment Date"). Maker authorizes Payee to complete the first Payment Date upon the Principal Payment Commencement Date.

Interest will accrue on each advance noted on Exhibit A at the interest rate disclosed in the first paragraph of this Promissory Note, commencing on the date of each individual advance by Payee until the Principal Payment Commencement Date. All accrued interest will be financed and included in the Payment Schedule, based on the interest rate in effect on the Principal Payment Commencement Date.

# PROMISSORY NOTE

All payments shall be applied first to interest and then to principal. The acceptance by Payee of any payment which is less than payment in full of all amounts due and owing at such time shall not constitute a waiver of Payee's right to receive payment in full at such time or at any prior or subsequent time. Interest shall be calculated on the basis of a 360 day year and will be charged for each calendar day on which any principal is outstanding.

Time is of the essence hereof. If any installment of principal and interest or any other sum due under this Promissory Note is not received within ten (10) days after the applicable Payment Date, the Maker agrees to pay in addition to the amount of each such installment a late payment charge of five percent (5%) of said installment, but not exceeding any lawful maximum. In the event that (i) Maker fails to make payment of any amount due hereunder within ten (10) days after the same becomes due and payable; or (ii) Maker defaults or fails to perform under any term or condition contained in any other agreement with Payee, then the entire principal sum remaining unpaid, together with all interest thereon and any other sum payable under this Promissory Note, at the election of Payee, shall immediately become due and payable, with interest thereon at 20% per annum from the date of such accelerated maturity until paid.

The Maker may prepay in full, but not in part, its entire indebtedness hereunder upon payment of an additional sum as a premium equal to the following percentages of the original principal balance for the indicated period:

> Prior to the first annual anniversary date of this Promissory Note: no prepayment permitted;
> Month 13 through and including month 24 of this Promissory Note: four percent (4%);
> Month 25 through and including month 36 of this Promissory Note: three percent (3%);
> Month 37 through and including month 39 of this Promissory Note: two percent (2%); plus all other sums due hereunder.

A default by Maker or any entity managed or controlled by Maker or by any principal of Makers under any other agreement or contract with Payee, regardless of when the agreement or contract was entered into, will, at Payee's sole option, if the default is not cured within ten days after written notice of default, constitute a default under this Promissory Note and all other agreements and contracts between Maker and/or such a principal or entity and Payee.

It is the intention of the parties hereto to comply with the applicable usury laws; accordingly, it is agreed that, notwithstanding any provision to the contrary in this Promissory Note, in no event shall this Promissory Note require the payment or permit the collection of interest in excess of the maximum amount permitted by applicable law. If any such excess interest is contracted for, charged or received under this Promissory Note, or in the event that all of the principal balance shall be prepaid, so that under any of such circumstances the amount of interest contracted for, charged or received under this Promissory Note on the principal balance shall exceed the maximum amount of interest permitted by applicable law, then in such event (a) the provisions of this paragraph shall govern and control, (b) neither Maker nor any other person or entity now or hereafter liable for the payment hereof shall be obligated to pay the amount of such interest to the extent that it is in excess of the maximum amount of interest permitted by applicable law, (c) any such excess which may have been collected shall be either applied as a credit against the then unpaid principal balance or refunded to Maker, at the option of the Payee, and (d) the effective rate of interest shall be automatically reduced to the maximum lawful contract rate allowed under applicable law as now or hereafter construed by the courts having jurisdiction thereof.

It is further agreed that without limitation of the foregoing, all calculations of the rate of interest contracted for, charged or received under this Promissory Note which are made for the purpose of determining whether such rate exceeds the maximum lawful contract rate, shall be made, to the extent permitted by applicable law, by amortizing, prorating, allocating and spreading in equal parts during the period of the full stated term of the indebtedness evidenced hereby, all interest at any time contracted for, charged or received from Maker or otherwise by Payee in connection with such indebtedness; provided, however, that if any applicable state law is amended or the law of the United States of America preempts any applicable state law, so that it becomes lawful for the Payee to receive a greater simple interest per annum rate than is presently allowed, the Maker agrees that, on the effective date of such amendment or preemption, as the case may be, the lawful maximum hereunder shall be increased to the maximum simple interest per annum rate allowed by the higher of the amended state law or the law of the United States of America.

## PROMISSORY NOTE

The Maker and all sureties, endorsers, guarantors or any others (each such person, other than the Maker, an "Obligor") who may at any time become liable for the payment hereof jointly and severally consent hereby to any and all extensions of time, renewals, waivers or modifications of, and all substitutions or releases of any party primarily or secondarily liable on this Promissory Note or any term and provision hereof, which may be made, granted or consented to by Payee, and agree that suit may be brought and maintained against any one or more of them, at the election of Payee without joinder of any other as a party thereto. The Maker and each Obligor hereby waives presentment, demand for payment, notice of nonpayment, protest, notice of protest, notice of dishonor, and all other notices in connection herewith, as well as filing of suit (if permitted by law) and diligence in collecting this Promissory Note, and agrees to pay (if permitted by law) all expenses incurred in collection, including Payee's actual attorneys' fees. Maker and each Obligor hereby waives all benefits of valuation, appraisement and exemption laws.

The Maker and each Obligor hereby waive unconditionally all rights to a jury trial of any claim or cause of action related to, based upon or arising out of this Promissory Note, any related documents, and any dealings between the Maker or any Obligor and the Payee thereto. The scope of this waiver is intended to be all encompassing of any and all disputes that may be filed in any court. This waiver is irrevocable, and may not be modified either orally or in writing. This waiver shall also apply to any subsequent amendments, renewals, supplements or modifications to this Promissory Note and to any other documents or agreements relating to this Promissory Note or any related transaction. In the event of litigation, this Promissory Note may be filed as a written consent to trial by the court.

Maker:  New York MEG, L.L.C.

By: _____ (Seal)
Signature

_____ Jim Cerutti/Principal _____
Print name (and title, if applicable)

**EXHIBIT A**

AMOUNTS ADVANCED UNDER PROMISSORY NOTE
DATED AS OF _____
INTERNAL CONTRACT REFERENCE # 8527143
IN THE PRINCIPAL AMOUNT OF
$775,000.00

| DATE | AMOUNT OF ADVANCE | INTEREST RATE | PAYMENT SCHEDULE | AGGREGATE AMOUNT ADVANCED TO DATE |
|------|-------------------|---------------|------------------|-----------------------------------|
|      |                   |               |                  |                                   |

**EXHIBIT B**

### ADVANCE REQUEST UNDER PROMISSORY NOTE
DATED AS OF _____
INTERNAL CONTRACT REFERENCE # 8527143

Maker, New York MEG, L.L.C., hereby requests an advance under the Promissory Note referenced above in the amount of

$_____.

payable to _____ for the purpose of _____. The amount of this advance

request will be recorded on Exhibit A.

Maker: New York MEG, L.L.C.

By:_____(Seal)
Signature

_____
Witness

Jim Cerutti/Principal
Print name (and title, if applicable)

 **GE Healthcare Financial Services**

Date:        February 05,2004

Attention:   New York MEG, L.L.C.
             Accounts Payable

Reference:   GE Healthcare Financial Services Financing Transaction

    **Equipment:**   Tenant Improvements
    **Contract #:**   8527143-001
    **Order #:**      861-404087

Thank you for allowing GE Healthcare Financial Services to help you with your financing needs.

The monthly payment for your financing transaction has been revised due to a change in the 3 Year Treasury Constant Maturities from 2.05% to 2.32% at the time of the financing commencement date. Therefore, your monthly payment has been recalculated and is now: 3 months@ $0.00, 12 months@ $16,575.99, and 24 months@ $30,915.54, plus all applicable taxes. The revised interest rate with respect to this financing agreement is 8.44% per annum. The interest rate shall be calculated on the basis of a 360-day year and will be charged for each calendar day on which any pricipal of the finance Equipment cost is outstanding.

Please contact GE Healthcare Financial Services at (800) 225-7480, if you have any questions regarding the above information. A copy of your fully executed contract and monthly invoices will follow.

                              GE Healthcare Financial Services



**GE Healthcare Financial Services**

## AMENDMENT TO THE PROMISSORY NOTE DATED AS OF 10/27/2005
### INTERNAL CONTRACT REFERENCE NUMBER 8527143
### INTERNAL ORDER REFERENCE NUMBER 861-404087

This is an Amendment dated as of  to the Promissory Note referenced above between General Electric Capital Corporation ("Lender") and New York Meg, L.L.C. ("Debtor").

The Monthly Installments is/(are) hereby amended and restated as follows:

**Original –**  To be paid in lawful money of the United States, in 39 consecutive monthly installments of principal and interest of 3 Months @ $0.00, 12 Months @ $16,000.00, 23 Months @ $29,841.28 (all payments in arrears) and a final installment which shall be in the amount of the total outstanding principal and interest ("Payment Schedule").

**Amended –**  To be paid in lawful money of the United States, in 12 consecutive monthly installments of principal and interest of 11 Months @ $16,365.04, 1 Months @ $681,070.28 (all payments in arrears) and a final installment which shall be in the amount of the total outstanding principal and interest ("Payment Schedule").

EXCEPT AS PROVIDED IN THIS AMENDMENT, ALL OTHER TERMS AND CONDITIONS OF THE ABOVE REFERENCED SCHEDULE REMAIN IN FULL FORCE AND EFFECT AS ORIGINALLY WRITTEN.

Lender:                                                      Debtor:

General Electric Capital Corporation              New York Meg, L.L.C.

By: _____              By: _____

Print Name:  Jon D. Storck                            Print Name:  Jim Cerutti
             Vice President

Title:  Duly Authorized Signatory                    Title:  Vice President

Amendment (Prom Note)                                            Rev. 10/28/03



 *GE Healthcare Financial Services*

# SECOND AMENDMENT TO THE PROMISSORY NOTE DATED AS OF 10/27/2005
## INTERNAL CONTRACT REFERENCE NUMBER 8527143
## INTERNAL ORDER REFERENCE NUMBER 861-404087

This is an Amendment dated as of August 25, 2006, to the Promissory Note referenced above, executed and delivered by New York Meg, L.L.C. ("Debtor") to and in favor of General Electric Capital Corporation ("Lender"), as previously amended by that certain Amendment to the Promissory Note Dated as of 10/27/2005 (the "Note").

The following language in the third paragraph of the Note:

"To be paid in lawful money of the United States, in 12 consecutive monthly installments of principal and interest of 11 Months @ $16,365.04, 1 Months @ $681,070.28 (all payments in arrears) and a final installment which shall be in the amount of the total outstanding principal and interest ("Payment Schedule")."

Is hereby amended and restated in its entirety to read as follows:

" To be paid in lawful money of the United States, in 12 consecutive monthly installments of principal and interest of 11 Months @ $15,000.00, 1 Months @ $650,004.28 (all payments in advance) and a final installment which shall be in the amount of the total outstanding principal and interest ("Payment Schedule")."

EXCEPT AS PROVIDED IN THIS AMENDMENT, ALL OTHER TERMS AND CONDITIONS OF THE ABOVE REFERENCED NOTE SHALL REMAIN IN FULL FORCE AND EFFECT AS ORIGINALLY WRITTEN.

Lender:

General Electric Capital Corporation

By: _____

Print Name: __Jon Storck_____

Title: Duly Authorized Signatory

Debtor:

New York Meg, L.L.C.

By: _____

Print Name: __Jim Cerutti_____

Title: __Vice President_____

Amendment (Prom Note)

Rev. 10/28/03

# EXHIBIT D

**GE Healthcare Financial Services**

## SECURITY AGREEMENT

### 1. SECURITY INTEREST

The undersigned ("Obligor", whether one or more) grants General Electric Capital Corporation ("Company") a security interest in property, wherever located, checked in Section 2 ("Collateral") to secure all debts, obligations and liabilities of Obligor to Company arising out of credit previously granted, credit contemporaneously granted and credit granted in the future by Company to Obligor or to another guaranteed or indorsed by Obligor ("Obligations").

### 2. DESCRIPTION OF COLLATERAL

One or more boxes must be checked.

(a)  **X  All Collateral.**  If checked here, all now owned or hereafter acquired equipment, fixtures, inventory (including all goods held for sale, lease or demonstration or to be furnished under contracts of service, goods leased to others, trade-ins and repossessions, raw materials, work in process and materials or supplies used or consumed in Obligor's business), documents relating to inventory, general intangibles, accounts, contract rights, chattel paper and instruments, securities, investment property, deposit accounts, supporting obligations, letter of credit rights, commercial tort claims, and information contained in computer media (such as data bases, source and object codes and information therein), computer equipment, machinery, tools, furniture, together with all additions, attachments, and accessions now and hereafter affixed thereto and/or used in connection therewith, all replacements, thereof and substitutions therefore, and all cash and non-cash proceeds and products thereof.

(b)  ☐  **Scheduled Collateral.**  If checked here, all inventory, accounts, contract rights, equipment, general intangibles, instruments, documents of title and chattel paper described in the attached schedule and any additional schedules delivered by Obligor to Company from time to time;

(c)  ☐  **All Inventory.**  If checked here, all inventory and documents relating to inventory now owned or hereafter acquired by Obligor, including all goods held for sale, lease or demonstration or to be furnished under contracts of service, goods leased to others, trade-ins and repossessions, raw materials, work in process and materials or supplies used or consumed in Obligor's business;

(d)  ☐  **All Receivables.**  If checked here, all accounts, contract rights, chattel paper and instruments now owned or hereafter acquired by Obligor;

(e)  ☐  **All Equipment.**  If checked here, all equipment and fixtures now owned or hereafter acquired by Obligor;

(f)  ☐  **All General Intangibles.**  If checked here, all general intangibles now owned or hereafter acquired by Obligor; and all additions and accessions to, all spare and repair parts, special tools, equipment and replacements for, all returned or re-possessed goods the sale of which gave rise to, and all proceeds and products of the foregoing.

(g)  ☐  **Specific Collateral.**  If checked here, the following described property now owned or hereafter acquired by Obligor

### 3. OBLIGOR'S WARRANTIES

Obligor warrants that while any of the Obligations are unpaid:

(a)  **Ownership.**  Obligor owns the Collateral free of all encumbrances and security interests (except Company's security interest). Chattel paper constituting Collateral evidences a perfected security interest in the goods covered by it, free from all other encumbrances and security interests, and no financing statement (other than Company's) is on file covering the Collateral or any of it. Obligor, acting alone, may grant a security interest in the Collateral.

(b)  **Sale of Goods or Services Rendered.**  Each account and chattel paper constituting Collateral as of this date arose from the performance of services by Obligor or from a bona fide sale or lease of goods, which have been delivered or shipped to the account debtor and for which Obligor has genuine invoices, shipping documents or receipts.

(c)  **Enforceability.**  Each account, contract right and chattel paper constituting Collateral as of this date is genuine and enforceable against the account debtor according to its terms. It and the transaction out of which it arose comply with all applicable laws and regulations. The amount represented by Obligor to Company as owing by each account debtor is the amount actually owing and is not subject to setoff, credit, allowance or adjustment, except discount for prompt payment, nor has any account debtor returned the goods or disputed his or its liability.

(d)  **Due Date.**  No payment on any account or chattel paper constituting Collateral is as of this date more than 15 days overdue, there has been no default according to the terms of any such Collateral and no step has been taken to foreclose the security interest it evidences or otherwise enforce its payment.

(e)  **Financial Condition of Account Debtor.**  As of this date Obligor has no notice or knowledge of anything which might impair the credit standing of any account debtor and Obligor will advise Company upon receipt of any such notice or knowledge affecting Collateral.

(f)  **Valid Organization.**  If a corporation, Obligor is a duly organized, validly existing and in good standing under the laws of the state of organization and if a foreign organization is licensed to do business in the states in which this transaction takes place.

(g)  **Other Agreements.**  Obligor is not in default under any agreement for the payment of money.

Security Agreement                                                                                                (Rev. 4/28/03)

(h) **Authority to Contract.** The execution and delivery of this Agreement and any instruments evidencing Obligations will not violate or constitute a breach of Obligor's Articles of Incorporation, By-Laws, partnership agreement, operating agreement or any agreement or restriction to which Obligor is a party or is subject.

(i) **Accuracy of Information.** All information, certificates or statements given to Company pursuant to this Agreement shall be true and complete when given. The Obligor's exact legal name is as set forth in the last page of this Agreement.

(j) **Addresses.** The address of Obligor's place of business, or if Obligor has more than one place of business, then the address of the Obligor's chief executive office, is shown opposite Obligor's signature. The address where the Collateral will be kept, if different from that appearing opposite Obligor's signature, is ___300 East 39th Street, New York, New Yor__ Such locations shall not be changed without prior written consent of Company, but the parties intend that the Collateral, wherever located, is covered by the Agreement.

(k) **Change of Name or Address.** Obligor shall immediately advise Company in writing of any change in name or address.

## 4. SALE AND COLLECTIONS

(a) **Sale of Inventory.** So long as no default exists under any of the obligations or this Agreement, Obligor may (a) sell inventory in the ordinary course of Obligor's business for cash or on terms customary in the trade, at the prices not less than any minimum sale price shown on instruments evidencing Obligations and describing inventory, or (b) lease inventory on terms customary in the trade.

(b) **Verification and Notification.** Upon default Company may at any time and Obligor shall, upon request of Company, notify the account debtors to make payment directly to Company and Company may enforce collection of, settle, compromise, extend or renew the indebtedness of such account debtors. Until account debtors are so notified, Obligor as agent of Company, shall make collections on the Collateral. Company may at any time notify the bailee of any Collateral of Company's security interest.

(c) **Deposit with Company.** At any time Company may require that all proceeds of Collateral received by Obligor shall be held by Obligor upon an express trust for Company, shall not be commingled with any other funds or property of Obligor and shall be turned over to Company in precisely the form received (but endorsed by Obligor if necessary for collection) not later than the business day following the day of their receipt. All proceeds of Collateral received by Company directly or from Obligor shall be applied against the Obligations in such order and at such times as Company shall determine.

## 5. OBLIGOR'S COVENANTS

**Obligor agrees:**

(a) **Maintenance of Collateral.** Obligor shall: maintain the Collateral in good condition and repair and not permit its value to be impaired; keep it free from all liens, encumbrances and security interests (other than Company's security interest;) defend it against all claims and legal proceedings by persons other than Company; pay and discharge when due all taxes, license fees, levies and other charges upon it; not sell, lease or otherwise dispose of it or permit it to become a fixture or an accession to other goods, except for sales or leases of inventory as provided in this Agreement, not permit it to be used in violation of any applicable law, regulation or policy of insurance; and, as to Collateral consisting of instruments and chattel paper, preserve rights in it against prior parties. Loss of or damage to the Collateral shall not release Obligor from any of the obligations.

(b) **Insurance.** Obligor shall keep the Collateral and Company's interest in it under policies with such provisions, for such amounts and by such insurers as shall be satisfactory to Company from time to time, and shall furnish evidence of such insurance satisfactory to Company. Subject to Company's satisfaction, Obligor is free to select the insurance agent or insurer through which insurance is obtained. Obligor assigns (and directs any insurer to pay) to Company the proceeds of all such insurance and any premium refund, and authorizes Company to endorse in the name of Obligor any instrument for such proceeds or refunds and, at the option of Company, to apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to restoration of the Collateral, returning any excess to Obligor. Company is authorized, in the name of Obligor or otherwise, to make, adjust and/or settle claims under any credit insurance financed by Company or any insurance on the Collateral, but cancel the same after the occurrence of an event of default.

(c) **Maintenance of Security Interest.** Obligor shall pay all expenses and, upon request, take any action reasonably deemed advisable by Company to preserve the Collateral or to establish, determine priority of, perfect, continue perfected, terminate and/or enforce Company's interest in it or rights under this Agreement.

(d) **Taxes and other charges.** Obligor shall pay and discharge all lawful taxes, assessments and government charges upon Obligor or against its properties prior to the date on which penalties attach, unless and the extent only that such taxes, assessments and charges are contested in good faith and by appropriate proceedings by Obligor.

(e) **Records and statements.** Obligor shall keep accurate and complete records respecting the Collateral in such form as Company may approve. At such times as Company may require, Obligor shall furnish to Company a statement certified by Obligor and in such form and containing such information as may be prescribed by Company, showing the current status and value of the Collateral.

(f) **Inspection of Collateral.** At reasonable times Company may examine the Collateral and Obligor's records pertaining to it, wherever located, and make copies of records. Obligor shall assist Company in so doing.

(g) **Chattel Paper.** Company may require that chattel paper constituting Collateral shall be on forms approved by Company, Obligor shall promptly make all such chattel paper, and all copies, to indicate conspicuously the Company's interest and, upon request, deliver them to Company.

## 6. RIGHTS OF COMPANY

(a) **Authority to Perform for Obligor.** Upon the occurrence of an event of default or if Obligor fails to perform any of Obligor's duties set forth in this Agreement or in any evidence of or document relating to the Obligations, Company is authorized, in Obligor's name or otherwise, to take any such action including without limitation signing Obligor's name or paying any amount so required, and the cost shall be one of the Obligations secured by this Agreement and shall be payable by Obligor upon demand with interest from the date of payment by Company at the highest rate stated in any evidence of any Obligation but not in excess of the maximum rate permitted by law.

Security Agreement                                                               (Rev. 4/28/03)

(b) **Power of attorney.** Obligor irrevocably appoints any officer of Company as Obligor's attorney, with power after an event of default to receive, open and dispose of all mail addressed as to Obligor; and to notify the Post Office authorities to change the address for delivery of all mail address to Obligor to such address as Company may designate.

## 7. DEFAULT

(a) The following events shall constitute an event of default hereunder:

(i) **Nonperformance.** Obligor fails to pay when due any of the Obligations or to perform, or rectify breach of, any warranty or other undertaking by Obligor in this Agreement or in any evidence of or document relating to the Obligations;

(ii) **Inability to Perform.** Obligor ceases to exist, becomes insolvent or the subject of bankruptcy or insolvency proceedings;

(iii) **Misrepresentation.** Any representation made to induce Company to extend credit to Obligor, under this Agreement or otherwise, is false in any material respect when made; or

(iv) **Insecurity.** Any other event which causes Company in good faith to deem itself insecure.

(b) Upon an event of default, all of the Obligations shall, at the option of Company and without any notice or demand, become immediately payable, and Company shall have the following remedies as well as all other rights and remedies for default provided by the Wisconsin Uniform Commercial Code, and any other applicable law and any document relating to the Obligations:

(i) **Repossession.** Company may take possession of Collateral without notice or hearing, which Obligor waives.

(ii) **Assembling Collateral.** Company may require Obligor to assemble the Collateral and to make it available to Company at any convenient place designated by Company.

(iii) **Expenses and Application of Proceeds.** Obligor shall reimburse Company for any expense incurred by Company in protecting or enforcing its rights under this Agreement before and after judgment, including, without limitation, reasonable attorney's fees and legal expenses and all expenses of taking possession, holding, preparing for disposition and disposing of the Collateral. After deduction of such expenses, Company may apply the proceeds of disposition to the Obligations in such order and amounts as it elects.

(c) **Notice of Disposition.** Written notice, when required by law, sent to any address of Obligor in this Agreement at least ten (10) calendar days (counting the day of sending) before the date of proposed disposition of the Collateral is reasonable notice.

(d) **Waiver.** Company may permit Obligor to remedy any default without waiving the default so remedied, and Company may waive any default without waiving any other subsequent or prior default by Obligor.

## 8. MISCELLANEOUS

(a) Obligor agrees to promptly reimburse the Company for actual out-of-pocket expenses, including without limitation, reasonable counsel fees, incurred by the Company in connection with the administration and enforcement of this Agreement.

(b) THIS AGREEMENT SHALL BE BINDING UPON OBLIGOR AND ITS SUCCESSORS AND ASSIGNS (INCLUDING A DEBTOR-IN-POSSESSION ON BEHALF OF OBLIGOR), AND SHALL INURE TO THE BENEFIT OF, AND BE ENFORCEABLE BY, THE COMPANY AND ITS SUCCESSORS AND ASSIGNS, AND SHALL BE GOVERNED BY, AND CONSTURED AND ENFORECED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF WISCONSIN APPLICABLE TO THE CONTRACTS MADE AND PERFORMED IN THAT STATE, AND NONE OF THE TERMS OR PROVISIONS OF THIS AGREEMENT MAY BE WAIVED, ALTERED MODIFIED OR AMENDED EXCEPT IN WRITING DULY SIGNED FOR AND ON BEHALF OF THE COMPANY AND OBLIGOR.

(c) If for any reason any provision or provisions hereof are determined to be invalid and contrary to any existing or future law, such invalidity shall not impair the operation of or effect those portions of this Agreement which are valid.

(d) Except as otherwise provided herein, whenever it is provided herein that any notice, demand, request, consent, approval, declaration or other communication shall or may be given by Company to Obligor, each such notice, demand, request, consent, approval, declaration or other communication shall be in writing and shall be given to Obligor at the address below.

(e) This Agreement may be executed in any number of separate counterparts by one or more of the parties hereto and all of said counterparts taken together shall constitute one and the same instrument.

The obligations hereunder, if involving more than one Obligor, shall be joint and several.

Signed this 1 4 day of May , 2003 .

Obligor:

New York Meg, L.L.C.

By: _____
Authorized Signature

(    Principal    )
Title

_____

_____

Address

# EXHIBIT E

# Diligenz®

At the intersection of speed and accuracy.®

**UCC Summary Report**

6500 Harbour Heights Pkwy
Suite 400
Mukilteo, WA  98275-4889

Ph: (800) 858-5294
Fx: (800) 345-6059

Order Number: 26386919
Search Date: 5/10/2007
Account Number: 349650
Ref: 214590-136
Subject: New York MEG, L.L.C.
Search Criteria: New York MEG

Total Records Found: 3

Results for Indiana UCC Search By Company Name - Active

Current as of: 4/19/2007

| GroupID | Filing Number | Category | Filing Date | Exp Date | Debtor Name | Secured Party |
|---------|---------------|----------|-------------|----------|-------------|---------------|
| 0001.001 | 200300004415120 | UCC1 | 5/9/2003 | 5/9/2008 | NEW YORK MEG, L.L.C.<br>3037 SOUTH MERIDIAN ST<br>INDIANAPOLIS, IN  46217 | GENERAL ELECTRIC CAPITAL CORPORATION<br>P.O. BOX 414 W-490<br>MILWAUKEE, WI  53201 |
| 0002.001 | 200300004817035 | UCC1 | 5/21/2003 | 5/21/2008 | NEW YORK MEG, L.L.C.<br>3037 SOUTH MERIDIAN STREET<br>INDIANAPOLIS, IN  46217 | GENERAL ELECTRIC CAPITAL CORPORATION<br>P.O. BOX 414, W-490<br>MILWAUKEE, WI  53201 |
| 0003.001 | 200400001368094 | UCC1 | 2/11/2004 | 2/11/2009 | NEW YORK MEG, L.L.C.<br>3037 SOUTH MERIDIAN ST<br>INDIANAPOLIS, IN  46217 | GENERAL ELECTRIC CAPITAL CORPORATION<br>PO BOX 414 W-490<br>MILWAUKEE, WI  53201 |

*End of Report*

This data is for informational purposes only.  Certification can only be obtained through the appropriate state, county, local, court or jurisdictional office.  Please review actual copies to verify information.  We take great care in providing you with the most accurate and up to date public record information available.  However, responsibility for maintaining public records rests with the filing office of the jurisdiction, and we will accept no liability for errors or omissions in this report.

Indiana Secretary of State
Filing Number: 200300004415120
Filing Date    : 05/09/2003 17:30:00

MAY 0 9 2003

**NATIONAL SERVICE INFORMATION, INC.**
320 N. Meridian St.
Suite 817
Indianapolis, IN 46204

8952032 - 9

Courier: First Class Mail
Debtor: New York Meg, L.L.C.
Juris: Indiana, IN

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| New York Meg, L.L.C. | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3037 South Meridian Street | Indianapolis | IN | 46217 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | LLC | IN | 2002121800076 | NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| General Electric Capital Corporation | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 414, W-490 | Milwaukee | WI | 53201 | USA |

4. This FINANCING STATEMENT covers the following collateral:

One (1) 4D Neuro Imaging Brain Mpping System "together with (i) all substitutions for, and products and proceeds of any of the foregoing property, (ii) all accessions thereto, (iii) all accessories, attachments, parts, equipment and repairs now or hereafter attached or affixed to or used in connection with any of the foregoing property, (iv) all warehouse receipts, bills of lading and other documents of title now or hereafter covering any of the foregoing property, and (v) all insurance and/or other proceeds of any type of the foregoing property"

| 5. ALTERNATIVE DESIGNATION [if applicable]: | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS    Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | | All Debtors | Debtor 1 | Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA 8527100/861-404086 filed by Nesha Beamon 05/07/200

IN-SOS

LexisNexis Document Solutions
801 Adlai Stevenson Drive
Springfield, IL 62703-4261

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Indiana Secretary of State
Filing Number: 200300004817035
Filing Date    : 05/21/2003 17:30:00

**NATIONAL SERVICE INFORMATION, INC.**
320 N. Meridian St.
Suite 817
Indianapolis, IN 46204

8952684 - 4

Courier: First Class Mail
Debtor: New York Meg, L.L.C.
Juris: Indiana, IN

MAY 2 1 2003

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| New York Meg, L.L.C. | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3037 South Meridian Street | Indianapolis | IN | 46217 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | LLC | IN | 2002121800076 | NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| General Electric Capital Corporation | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 414, W-490 | Milwaukee | WI | 53201 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

All now owned or hereafter acquired equipment, fixtures, inventory (including all goods held for sale, lease or demonstration or to be furnished under contracts of service, goods leased to others, trade-ins and repossessions, raw materials, work in process and materials or supplies used or consumed in Obligor's business), documents relating to inventory, general intangibles, accounts, contract rights, chattel paper and instruments, securities, investment property, deposit accounts, supporting obligations, letter of credit rights, commercial tort claims, and information contained in computer media (such as data bases, source and object codes and information therein), computer equipment, machinery, tools, furniture, together with all additions, attachments, and accessions now and hereafter affixed thereto and/or used in connection therewith, all replacements, thereof and substitutions therefore, and all cash and non-cash proceeds and products thereof.

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. | This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS    Attach Addendum | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|---|---|

**8. OPTIONAL FILER REFERENCE DATA** 8527100/861-404086 filed by Nesha Beamon 05/19/200

IN-SOS

LexisNexis Document Solutions
801 Adlai Stevenson Drive
Springfield, IL 62703-4261

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Indiana Secretary of State
Filing Number: 200400001368094
Filing Date   : 02/11/2004 17:30:00

UC
FOL

A.

B.

FEB 11 2004

**NATIONAL SERVICE INFORMATION, INC.**
320 N. Meridian St.
Suite 817
Indianapolis, IN 46204

8967180 - 5

Courier: First Class Mail
Debtor: New York Meg, L.L.C.
Juris: Indiana, IN

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| New York Meg, L.L.C. | | | | |

OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3037 South Meridian Street | Indianapolis | IN | 46217 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION LLC | 1f. JURISDICTION OF ORGANIZATION IN | 1g. ORGANIZATIONAL ID #, if any 2002121800076 | □ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | □ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| General Electric Capital Corporation | | | | |

OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 414, W-490 | Milwaukee | WI | 53201 | USA |

4. This FINANCING STATEMENT covers the following collateral:

All now owned or hereafter acquired equipment, fixtures, inventory (including all goods held for sale, lease or demonstration or to be furnished under contracts of service, goods leased to others, trade-ins and repossessions, raw materials, work in process and materials or supplies used or consumed in Obligor's business), documents relating to inventory, general intangibles, accounts, contract rights, chattel paper and instruments, securities, investment property, deposit accounts, supporting obligations, letter of credit rights, commercial tort claims, and information contained in computer media (such as data bases, source and object codes and information therein), computer equipment, machinery, tools, furniture, together with all additions, attachments, and accessions now and hereafter affixed thereto and/or used in connection therewith, all replacements, thereof and substitutions therefore, and all cash and non-cash proceeds and products thereof.

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. □ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS   Attach Addendum | | [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | All Debtors | Debtor 1 | Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA 8527143/861-404087 filed by Nesha Beamon 02/09/200

IN-SOS

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

LexisNexis Document Solutions
801 Adlai Stevenson Drive
Springfield, IL 62703-4261

# EXHIBIT F

# Katten

**Katten Muchin Rosenman LLP**

525 W. Monroe Street
Chicago, IL 60661-3693
312.902.5200 tel
312.902.1061 fax

**Mike Rupe**
Mike.rupe@kattenlaw.com
312.902.5616 direct
312.577.4581 fax

September 10, 2007

**<u>Via Email</u>**

New York Meg, L.L.C.
11595 N. Meridian Street, Suite 300
Carmel, Indiana 46032
Attn.: John M. Hakes
Email: hakes@usmedicalmgt.com

**Re:** **Those certain documents, agreements and instruments (collectively, the "<u>Documents</u>") by and among GE Healthcare Financial Services, a division of General Electric Capital Corporation ("<u>GECC</u>"), and New York Meg, L.L.C. ("<u>NY Meg</u>"; together with all other credit parties thereto, the "<u>Credit Parties</u>").**

Gentlemen:

We have been engaged to represent GECC in connection with all matters arising from and related to the Documents, including the enforcement of its rights and remedies thereunder, and this letter is written at the request of, and on behalf of, GECC.

Please be advised that certain defaults and events of default under the Documents (collectively, the "<u>Defaults</u>") have occurred and are continuing as a result of, among other things, (i) the Credit Parties' failure to make the payments required under the Documents, and (ii) the expiration of that certain standby letter of credit #3849, in the amount of $950,000 USD, prior to August 31, 2007.

Please be further advised, as a result of the Defaults, GECC, pursuant to the Documents and applicable law, is entitled to exercise any and all of its rights and remedies under the Documents, at law, in equity or otherwise.

GECC hereby reserves and preserves in all respects any and all rights, claims, remedies and causes of action that it may have against any person or entity including, without limitation, the Credit Parties (including, without limitation, Martin Egli) and their affiliates, members, officers and directors, arising from or related to the Documents, applicable law, equity and/or otherwise.



Page 2

Nothing herein shall be construed or interpreted as a waiver of any of GECC's rights, claims, remedies or causes of action against any person or entity, whether under the Documents, applicable law, equity and/or otherwise.

Very truly yours,
**KATTEN MUCHIN ROSENMAN LLP**

Mike Rupe

cc:   Jon D. Storck
       Alan T. Beckman

# EXHIBIT G

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| GENERAL ELECTRIC CAPITAL CORPORATION, | Index No. _____ |
| Plaintiff, | **SUMMONS** |
| - against - | ASSIGNED JUSTICE: |
| NEW YORK MEG L.L.C., 4D NEUROIMAGING, INC. and MARTIN EGLI, | _____ |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TO THE ABOVE-NAMED DEFENDANTS:

You are hereby summoned and required to serve upon plaintiff's attorneys an answer to the complaint in this action within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York.  In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.  Venue is based on § 503(a) of the New York Civil Practice Law and Rules.

Dated:    New York, New York
          October 11, 2007

KATTEN MUCHIN ROSENMAN LLP

By: _____

        Jonathan J. Faust, Esq.
Attorneys for Plaintiff
575 Madison Avenue
New York, New York  10022
(212) 940-8800

To:

New York MEG L.L.C.
300 East 39th Street
New York, New York

4-D Neuroimaging, Inc.
c/o D. Scott Buchanan
9727 Pacific Heights Blvd.
San Diego California 92121-3719

Martin P. Egli
Swisspartners Investment Network AG
Am Schanzengraben 23
P.O. Box
CH-8022 Zürich

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GENERAL ELECTRIC CAPITAL CORPORATION,          :

                   Plaintiff,          :     Index No. _____

         - against -          :     <u>COMPLAINT</u>

NEW YORK MEG L.L.C., 4D NEUROIMAGING, INC.,   :
and MARTIN EGLI,

                        :

              Defendants.          :

                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        Plaintiff GENERAL ELECTRIC CAPITAL CORPORATION, by its attorneys Katten Muchin Rosenman LLP, for its complaint against defendants NEW YORK MEG L.L.C. ("NY MEG"), 4D NEUROIMAGING, INC. ("4D") and MARTIN EGLI ("EGLI"), alleges as follows:

        1.      Pursuant to various agreements, Plaintiff agreed to finance NY MEG's purchase of the equipment from 4D worth over $2,000,000 (Two Million Dollars). NY MEG promised to repay Plaintiff in accordance with a written schedule, and granted Plaintiff a security interest in the equipment and specified collateral. NY MEG defaulted on and breached its contractual obligations to Plaintiff by failing and refusing to: (i) pay Plaintiff in excess of $2.4 million dollars in scheduled payments that are overdue; and (ii) maintain a required letter of credit in Plaintiff's favor. NY MEG's defaults and breaches entitle Plaintiff to monetary damages and immediate possession of the equipment and collateral.

        2.      Upon information and belief, defendant NY MEG is the alter ego of defendants 4D and EGLI. Accordingly, Defendants are jointly and severally liable for the misconduct alleged herein.

**Parties**

3.      Plaintiff is a Delaware corporation that does business in, among other places, New York County, New York.  GE Healthcare Financial Services is a component of Plaintiff that is engaged in the business of, inter alia, providing financing for the purchase of medical equipment, including, but not limited to, magnetic resonance imaging (MRI) machines, computerized tomography (CT) machines, ultrasound and other machines used in the health and medical profession.

4.      Upon information and belief, Defendant NY MEG is an Indiana limited liability company, with its primary place of business at 300 East 39th Street, New York, New York.

5.      Upon information and belief, Defendant 4D is a California corporation, with its primary place of business at 9727 Pacific Heights Blvd., San Diego, California.

6.      Upon information and belief, Defendant EGLI is an individual who resides out-of-state, but who regularly travels to, and conducts business in and specifically directed at, New York.

7.      Upon information and belief, NY MEG is an alter ego of EGLI and 4D.  Upon information and belief, EGLI and 4D intentionally use and operate NY MEG -- and its location in New York City -- as the flagship showcase for EGLI's and 4D's other commercial efforts. Upon further information and belief, EGLI, 4D and NY MEG have ignored NY MEG's separate corporate form and independence, substituted each's interests for the other, commingled funds or otherwise used each other's funds interchangeably, and generally have abused the protections afforded by their separate legal existence, while manipulating transactions involving the two to benefit each other while improperly avoiding lawful liabilities.

**Jurisdiction**

8.      The Court has jurisdiction over NY MEG by virtue of its presence in this state and its regular transaction of business in New York.

9.      The Court has jurisdiction over the defendants 4D and EGLI, pursuant to CPLR 302(a), because, inter alia, each regularly conducts and transacts business in, and purposefully

directed at, New York, including supplying goods and services in the state. In addition, numerous transactions and meetings occurred in New York in connection with the transactions underlying the instant dispute. Upon information and belief, each of EGLI and 4D regularly comes to New York to transact business. The foregoing subjects defendants to New York's "long-arm" jurisdiction.

**The Master Security Agreement**

10.    On or about May 9, 2003, Plaintiff and NY MEG entered into a written contract, the "Master Security Agreement Dated As Of 05/09/2003" (the "Master Security Agreement") and corresponding schedule (the "Schedule") pursuant to which Plaintiff agreed to finance NY MEG's purchase of a 4D Neuro Imaging Brain Mapping System (the "Equipment"). Copies of the Master Security Agreement and Schedule, together with subsequent amendments and addendum thereto, are attached as Exhibits A and B, respectively.

11.    Pursuant to the Master Security Agreement and Schedule, Plaintiff extended credit, financing and/or monies to NY MEG in excess of $2,100,000 to fund NY MEG's purchase of the Equipment.

12.    Thereafter, NY MEG purchased the Equipment from 4D.

13.    As relevant to this action, to repay Plaintiff for said credit, financing and/or monies, NY MEG was obligated to pay Plaintiff as follows: (i) 11 monthly installments payments (the "Installment Payments") of $40,000 (Forty Thousand Dollars) beginning August 25, 2006; and (ii) 1 payment of $1,762,782.30 (One Million Seven Hundred Sixty Two Thousand Seven Hundred Eighty Two Dollars and Thirty Cents; hereinafter the "Balloon Payment") on July 25, 2007. (Exhibit A ¶ 3; Exhibit B [see Second Amendment to the Schedule]).

14.    Under the Master Security Agreement, Plaintiff is entitled to recover a late charge of 5% on all monies due but unpaid for more than ten days. Exhibit A ¶¶ 3, 9(b).

15.    Further, non-payment of any sums due to Plaintiff under the Master Security Agreement and Schedule constituted a default in, or breach of, the same. Exhibit A ¶ 9(a).

16.    Plaintiff's remedies for default or breach of the Master Security Agreement and Schedule include, but are not limited to: (i) acceleration, and the right to immediate payment, of all outstanding monies due to Plaintiff; and (ii) immediate possession of the Equipment by Plaintiff. Exhibit A ¶ 9(b).

17.    All costs of returning the Equipment to Plaintiff (including removal costs) in the event of NY MEG's default or breach are to be borne exclusively by NY MEG.  Exhibit A ¶ 8(a).

18.    Plaintiff also is entitled to recover all of its costs (including its attorneys fees) incurred in enforcing and effecting compliance with the Master Security Agreement.  Exhibit A ¶ 17(c).

19.    To protect Plaintiff against NY MEG's default or breach, NY MEG granted Plaintiff a first security interest in the Equipment.

20.    Plaintiff perfected its security interest in the Equipment by making appropriate public filings. (Exhibit E).

21.    The term of the Master Security Agreement is "until all of [Defendant's] obligations hereunder or under any Schedule(s) are fulfilled." Exhibit A ¶ 1(b).

22.    The laws of the State of New York govern the parties dealing under the Master Security Agreement and any dispute in connection therewith. Exhibit A ¶ 17(e).

**Letter of Credit**

23.    To protect Plaintiff against any default in, or breach of, NY MEG's payment obligations, the Master Security Agreement obligated NY MEG to post a letter of credit in favor of Plaintiff in the amount of $950,000 (Nine Hundred Fifty Thousand Dollars; hereinafter the "Letter of Credit"), with an expiration date of no earlier than August 31, 2007.

24.    Any expiration or unenforceability of the Letter of Credit, prior to August 31, 2007, constituted a breach and default under the Master Security Agreement.  Exhibit A (see Second Amendment to Master Security Agreement, dated August 25, 2006).

25.    Defendants repeatedly and specifically assured Plaintiff that NY MEG would post, and had posted, a satisfactory Letter of Credit that complied with the terms of the Master Security Agreement.

**Promissory Note**

26.    NY MEG required and requested additional financing in connection with its purchase of the Equipment, which Plaintiff agreed to provide.

27.    To that end, NY MEG executed and delivered to Plaintiff a promissory note, as amended October 27, 2005 and August 25, 2006 (the "Promissory Note"), pursuant to which Plaintiff extended further credit, financing and/or monies to NY MEG in the principal sum of $775,000 (Seven Hundred Seventy Five Thousand Dollars). (Exhibit C)

28.    To repay Plaintiff for said additional credit, financing and/or monies, NY MEG was obligated to pay Plaintiff: (i) 11 consecutive monthly payments of $15,000 (Fifteen Thousand Dollars) beginning August 25, 2006; (ii) 1 payment of $650,004.28 (Six Hundred Fifty Thousand Four Dollars and Twenty Eight Cents; hereinafter the "Promissory Balloon Payment") on July 25, 2007; and (iii) a further, final payment of all remaining principal and interest. (See Exhibit C [Second Amendment]).

29.    Combined, under the Master Security Agreement, Schedule and Promissory Note, NY MEG's was obligated to pay to Plaintiff: (i) 11 monthly payments of $55,000 to Plaintiff during the period August 25, 2006 through June 25, 2007; and (ii) $2,412,786.58 in balloon payments on July 25, 2007.

**Supplemental Security Agreement**

30.    On or about May 14, 2003, NY MEG and Plaintiff executed a separate security agreement (the "Supplemental Security Agreement") pursuant to which NY MEG granted to Plaintiff a security interest in a wide range of collateral, including but not limited to all of NY MEG's equipment, inventory, intangibles and accounts (the "Collateral"). Exhibit D ¶¶ 1-2.

31.    The purpose of this Supplemental Security Agreement was to secure NY MEG's performance and payment of all of it debts and obligations to Plaintiff. Exhibit D ¶¶ 1-2.

32.    Plaintiff perfected its security interest in the Collateral under the Supplemental Security Agreement by making all appropriate filings.  (Exhibit E).

33.    NY MEG's breach of, or default in, the parties' various agreements entitles Plaintiff to execute on and enforce its security interest in the Collateral.  Exhibit D ¶ 7.

34.    Plaintiff is entitled to recover all of its costs and expenses (including attorney's fees) incurred in enforcing or executing upon its security interests. Exhibit D ¶ 6-8.

35.    Upon information and belief, the Equipment and Collateral is located at NY MEG's place of business at 300 East 39th Street, New York, New York, or another premises controlled by NY MEG.

**Defendants' Default**

36.    NY MEG has failed and refused to make the required Balloon Payment when due on July 25, 2007.

37.    NY MEG has failed and refused to make the required Promissory Balloon Payment when due on July 25, 2007.

38.    NY MEG has failed and refused to make other payments required under the parties' agreements.

39.    NY MEG's failure to make each of the required payments is and was a material default under, and breach of, the parties' agreements.

40.    Following NY MEG's payment defaults and breaches, Plaintiff did not promptly draw down on the Letter of Credit or otherwise seek to protect Plaintiff's rights, interests and prerogatives prior to July 31, 2007, because Defendants had led Plaintiff into believing that the Letter of Credit had an August 31, 2007 expiration date -- leaving ample time to negotiate a resolution to NY MEG's default.

41.    Unbeknownst to Plaintiff, and in violation of the Master Security Agreement and Schedule, the Letter of Credit (i.e., Letter of Credit #3849) had an expiration date of, and expired on, July 31, 2007.

42.     The posting of a Letter of Credit with a term that expired prior to August 31, 2007 was a material breach of the Master Security Agreement and Schedule.

43.     Plaintiff has provided Defendants with appropriate notice of the defaults and breaches, and demanded that they be cured.  (See e.g., Exhibit F)

44.     NY MEG has not cured any of the defaults or breaches, and none of the overdue and outstanding amounts has been paid.

45.     By virtue of the foregoing defaults and breach of agreements, and in accordance with the terms of the parties' agreements, Plaintiff has demanded, demands, and is entitled to: (i) payment of all outstanding amounts due to Plaintiff, including applicable late charges; and (ii) possession of the Equipment and Collateral.

**Failed Efforts To Resolve The Parties' Dispute**

46.     In the spirit of good faith and believing that it was still partially protected by a Letter of Credit with a term extending through August 31, 2007 (as contractually promised), Plaintiff undertook to negotiate an amicable resolution to NY MEG's defaults and breaches.

47.     EGLI and 4D, although ostensibly not parties to Plaintiff's contracts with NY MEG, nevertheless attended and controlled negotiations.

48.     Upon information and belief, there is no legitimate reason for EGLI and 4D to have participated in (much less dominated) said discussions if NY MEG was legitimately operated as a legal entity separate and distinct from EGLI and 4D.

49.     Defendants requested a restructuring of NY MEG's obligations to Plaintiff, with payment terms extending through Summer 2008.

50.     Thereafter, as part of these discussions, Defendants promised Plaintiff that EGLI and 4D had procured a further Letter of Credit (the "New Letter of Credit") that extended through September 2008.

51.     On and after August 6 and 10, 2007, Defendants promised Plaintiff that the New Letter of Credit shortly would be delivered to Plaintiff.

52.     Defendants temporized, stalled and delayed in negotiations with Plaintiff.

53.    In early August 2007, as part of the discussions on restructuring NY MEG's obligations, Defendants informed Plaintiff that the prior Letter of Credit had expired.

54.    Defendants never delivered the promised new Letter of Credit to Plaintiff, and now refuse to so do.

55.    Because Defendants insisted on unreasonable terms, the parties failed to reach agreement on any restructuring of NY MEG's outstanding debt.

56.    Defendants have recently advised Plaintiff that NY MEG's continuing viability as a business concern is unlikely, and that its ability to pay Plaintiff anything towards amounts due, would require a dramatic and unlikely increase in business.

57.    NY MEG's defaults and precarious condition make delivery of the Equipment to Plaintiff a matter of great urgency.  NY MEG is not entitled to further use or possession of the Equipment, and is neither authorized, capable nor incentivized to be an appropriate custodian or steward therefore.

58.    Plaintiff has fully and completely performed all of its obligations to NY MEG.

59.    At no time has any Defendant ever provided any notice that Plaintiff in any way breached its obligations under the terms of any of the parties' agreements.

**EGLI**

60.    Upon information and belief, 4D and NY MEG are merely fronts through which EGLI acts.

61.    Upon information and belief, EGLI personally and directly advanced and paid, out of his personal accounts, the funds used to pay virtually all Installment Payments and monthly payments due from NY MEG under the Promissory Note.

62.    EGLI has represented to Plaintiff that:

(a)    "I [EGLI] write the checks" to pay Plaintiff;

(b)    "I [EGLI] will shut down" NY MEG if the parties fail to resolve the instant dispute on terms more favorable to NY MEG;

63.    Upon information and belief, payments made by EGLI to Plaintiff for NY MEG were not run through NY MEG's accounts or otherwise treated or accounted for as NY MEG expenses separate and discrete from EGLI's personal responsibilities and obligations.

64.    Upon information and belief, EGLI personally and directly posted the Letter of Credit for NY MEG's benefit using his own funds and credit.

65.    Throughout the negotiations beginning in July 2007 regarding NY MEG's defaults and breaches, NY MEG referred Plaintiff to EGLI (and EGLI acted as NY MEG) in connection with all discussions and negotiations regarding payments due and to be made and the issuance and terms of a new Letter of Credit and extension terms.

66.    EGLI made multiple representations to Plaintiff that he, personally, would satisfy NY MEG's obligations to Plaintiff, if revised terms more favorable to NY MEG were established.

67.    In discussions with Plaintiff, EGLI has negotiated to advance his and NY MEG's interests, while taunting Plaintiff with arguments that he is personally insulated from liability by virtue of how he structured the parties' business dealings.

68.    Upon information and belief, 4D is owned and run by EGLI.

69.    Upon information and belief, EGLI and 4D use NY MEG and the Equipment as their flagship operation and showplace to advertise and demonstrate imaging devices for sale to potential third party purchasers.

70.    Upon information and belief, EGLI and 4D run, operates and/or controls NY MEG, which they use for their personal advantage, without observing corporate formalities and without regard for NY MEG's separate corporate existence.

## FIRST CAUSE OF ACTION

### (For Breach Of The Master Security Agreement And Schedule Thereto)

71.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 70, as though fully set forth herein.

72.    Except as excused by and/or because of Defendants, Plaintiff has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Master Security Agreement, Schedule and other agreements.

73.    NY MEG breached the Master Security Agreement and the Schedule by, among other things, failing and refusing to pay Plaintiff amounts due thereunder.

74.    NY MEG also has breached the Master Security Agreement and the Schedule by, among other things, posting a Letter of Credit that expired or otherwise was unenforceable prior to August 31, 2007.

75.    On September 10, 2007, and on multiple prior and subsequent dates, counsel for Plaintiff sent NY MEG written notice of default and breach, notifying Defendants of, and identifying, NY MEG's above-described defalcations (see e.g. Exhibit F), none of which have been cured.

76.    Defendants above-described misconduct constitutes defaults under, and breaches of, the Master Security Agreement and Schedule.

77.    Under the Master Security Agreement and the Schedule, Plaintiff has the "non-exclusive option" to: (i) accelerate and declare due all outstanding payments; and/or (ii) return of the Equipment.

78.    Plaintiff has declared, and declares, all outstanding monies due to Plaintiff from NY MEG immediately due and payable in full.

79.    Plaintiff is entitled to immediate and full payment of all such sums, none of which have been paid.

80.    Plaintiff also is entitled to immediate return of the Equipment, at Defendants' sole expense.

81.    As a result of Defendant's breach of the Master Security Agreement and the Schedule, Plaintiff has suffered damages an amount to be proved at trial, but not less than $1,800,000 (One Million Eight Hundred Thousand Dollars).

82.    To enforce the Master Security Agreement and Schedule, Plaintiff has incurred, and will continue to incur, legal costs and fees which Plaintiff is entitled to recover.   The amounts of such legal fees and costs will be set forth at trial, according to proof.

83.    Upon information and belief, NY MEG was operated as EGLI's and 4D's alter ego.  Accordingly, Defendants are jointly and severally liable for the misconduct alleged herein.

## SECOND CAUSE OF ACTION

### (Breach of Promissory Note)

84.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 83, as though fully set forth herein.

85.    Except as excused by and/or because of Defendants, Plaintiff has performed all conditions, covenants, and promises required on its part to be performed under the Promissory Note and other agreements.

86.    NY MEG failed and refused to pay Plaintiff the money Plaintiff was owed under, and in accordance with, the terms of the Promissory Note.

87.    NY MEG's failure to timely make payments due under the Promissory Note constitutes a "default" and/or breach thereunder.

88.    Plaintiff has notified NY MEG of the defaults and breaches in writing and otherwise, and has demanded payment of all sums outstanding.

89.    NY MEG has failed and refused to cure its defaults and/or breaches.

90.    Pursuant to the Promissory Note, in the event of default or breach, at the election of Plaintiff all sums owed under the Promissory Note become immediately due and payable.

91.    Plaintiff has declared, and declares, all outstanding monies due to Plaintiff from NY MEG immediately due and payable in full.

92.    Plaintiff is entitled to immediate and full payment of all such sums, none of which have been paid.

93.    As a result of NY MEG's breach of the Promissory Note, Plaintiff has suffered damages in an amount to be proved at trial, but not less than $660,000 (Six Hundred Sixty Thousand Dollars).

94.    To enforce the Promissory Note, Plaintiff has incurred, and will continue to incur, legal costs and fees which Plaintiff is entitled to recover.  The amounts of such legal fees and costs will be set forth at trial, according to proof.

95.    Upon information and belief, NY MEG was operated as EGLI's and 4D's alter ego.  Accordingly, Defendants are jointly and severally liable for the misconduct alleged herein.

## THIRD CAUSE OF ACTION

### (Replevin, Declaratory Judgment and Injunctive Relief - Equipment)

96.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 95, as though fully set forth herein.

97.    Plaintiff has a perfected security interest in the Equipment.

98.    Pursuant to the terms of the agreements governing the parties' relationships, Plaintiff is entitled to possession of the Equipment upon default by NY MEG.

99.    NY MEG is in default of, and has breached, its obligations to Plaintiff, as a result of which Plaintiff is entitled to possession and recovery of the Equipment.

100.    Plaintiff demands possession of the Equipment.

101.    Upon information and belief, NY MEG remains in possession of the Equipment.

102.    There is an actual, existing, and concrete controversy between Plaintiff and Defendants respecting the ownership and possession of the Equipment.  The issuance of a declaratory judgment by the Court will assist the parties in the conduct of their affairs in that it will constitute an appropriate declaration of their rights, obligations, duties, and remedies with respect to the Equipment.  A declaratory judgment is an efficient and effective manner for the determination of the questions raised in this action.

103.    Plaintiff is entitled to appropriate relief for such breach in the form of: (i) a declaratory judgment declaring and adjudging that Plaintiff is the lawful owner of the

Equipment; and (ii) an injunction requiring that Defendants forthwith deliver and relinquish the Equipment, at Defendants sole expense, to Plaintiff or its representatives.

## FOURTH CAUSE OF ACTION

### (Declaratory Judgment and Injunctive Relief – Collateral)

104.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 103, as though fully set forth herein.

105.    Plaintiff has a perfected security interest in NY MEG's Collateral.

106.    Pursuant to the terms of the agreements governing the parties' relationships, Plaintiff is entitled to possession of the Collateral upon default by NY MEG.

107.    NY MEG is in default of, and has breached, its obligations to Plaintiff, as a result of which, Plaintiff is entitled to possession and recovery of the Collateral.

108.    Plaintiff demands possession of the Collateral.

109.    Upon information and belief, NY MEG remains in possession of the Collateral.

110.    There is an actual, existing, and concrete controversy between Plaintiff and Defendants respecting the ownership and possession of the Collateral.   The issuance of a declaratory judgment by the Court will assist the parties in the conduct of their affairs in that it will constitute an appropriate declaration of their rights, obligations, duties, and remedies with respect to the Collateral.   A declaratory judgment is an efficient and effective manner for the determination of the questions raised in this action.

111.    Plaintiff is entitled to appropriate relief for such breach in the form of: (i) a declaratory judgment declaring and adjudging that Plaintiff is the lawful owner of the Collateral; and (ii) an injunction requiring that Defendants forthwith deliver and relinquish the Collateral, at Defendants sole expense, to Plaintiff or its representatives.

112.    Likewise, Plaintiff is entitled to: (i) a declaratory judgment declaring and adjudging that Plaintiff may contact NY MEG's customers and accounts to direct that payments of all receivables and debts owed to NY MEG be paid over to Plaintiff; and (ii) an injunction requiring that NY MEG immediately produce a list of its customers and accounts, and

prohibiting Defendants from interfering with Plaintiff's attempts to secure payments from said customers and accounts.

## FIFTH CAUSE OF ACTION

### (Fraud and Misrepresentation)

113.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 112, as though fully set forth herein.

114.    Defendants repeatedly assured and promised Plaintiff that NY MEG would post, and had posted, a Letter of Credit with an expiration date of August 31, 2007.

115.    The posting of a letter of credit with an expiration date no earlier than August 31, 2007, was a material aspect of Plaintiff's willingness to do business with NY MEG, and a determining factor in the terms of dealing acceptable to Plaintiff.

116.    Upon information and belief, EGLI intentionally (albeit secretly) posted a Letter of Credit that expired prior to August 31, 2007.

117.    Defendants repeatedly assured and promised Plaintiff that NY MEG would post, and had posted, a New Letter of Credit with an expiration date of September 2008.

118.    Upon information and belief, NY MEG's representations regarding the duration and term of the Letter of Credit, and the existence of the New Letter of Credit, were false when made, and knowingly so.

119.    Upon information and belief, EGLI posted a Letter of Credit that secretly expired prematurely in order to avoid the payment of lawful obligations due to Plaintiff, including the Balloon Payment and the Promissory Balloon Payment.

120.    Upon information and belief, Defendants represented that they had posted the New Letter of Credit to induce Plaintiff to forbear exercising Plaintiff's lawful rights and prerogatives.

121.    Plaintiff reasonably relied to its detriment on NY MEG's representations regarding the duration of the Letter of Credit, and the existence of the New Letter of Credit, in:

(i) structuring, and setting the terms of, the parties' business dealings; and (ii) not drawing down on the Letter of Credit on or before July 31, 2007, following NY MEG's payment defaults.

122.    Plaintiff has been injured by Defendants' misrepresentations in an amount to be proved at trial, but not less than $950,000 (Nine Hundred Fifty Thousand Dollars).

123.    Upon information and belief, NY MEG was operated as EGLI's and 4D's alter ego. Accordingly, Defendants are jointly and severally liable for the misconduct alleged herein.

WHEREFORE, Plaintiff prays for judgment awarding Plaintiff:

a.    compensatory damages in an amount not less than $2,500,000 (Two Million Five Hundred Thousand Dollars);

b.    appropriate declaratory relief, including a judgment declaring that Plaintiff is the owner, and entitled to immediate possession, of the Equipment and Collateral, which are to be delivered to Plaintiff forthwith, at Defendants' sole cost;

c.    appropriate preliminary and permanent injunctive relief, and an order of replevin directing Defendants forthwith to deliver and relinquish the Equipment and Collateral to Plaintiff or Plaintiff's representatives, and requiring that NY MEG immediately produce a list of its customers and accounts, and prohibiting Defendants from interfering with Plaintiff's attempts to directly collect accounts and debts due to NY MEG from said customers and accounts;

d.    the costs of this suit, including attorneys' fees as incurred herein; and

e.    such other and further relief as is just and proper.

Dated:    New York, New York
          October 11, 2007

                              KATTEN MUCHIN ROSENMAN LLP

                              By: _____
                                          Jonathan J. Faust
                              Attorneys for Plaintiff
                              575 Madison Avenue
                              New York, New York 10022
                              (212) 940-8800

# EXHIBIT H

**From:** Donna Hebb [mailto:donnahebb@sbcglobal.net]
**Sent:** Friday, August 10, 2007 2:01 PM
**To:** Beckman, Alan T (GE Comm Fin)
**Subject:** Extension Letter

Mr. Beckman,

Jim Cerutti is traveling today and asked me to contact you regarding the extension letter for the New York MEG.  Please send this document at soon as possible as Martin Egli has the letter of credit but is holding it until he sees the terms of the extension letter.

Thank you,
Donna Hebb

**From:** Jim Cerutti [mailto:usmm@sbcglobal.net]
**Sent:** Tuesday, August 07, 2007 2:24 PM
**To:** Beckman, Alan T (GE Comm Fin)
**Cc:** John Hakes
**Subject:** RE: NY Meg

Alan:

Please get document to me as soon as possible.  I will pursue LC in like manner.

Jim

*"Beckman, Alan T (GE Comm Fin)" <alan.beckman@ge.com>* wrote:

> The extension is contingent on the replacement LC.  Let me know when you have it.
>
> _____
>
> **From:** Jim Cerutti [mailto:usmm@sbcglobal.net]
> **Sent:** Monday, August 06, 2007 4:00 PM
> **To:** Beckman, Alan T (GE Comm Fin)
> **Subject:** RE: NY Meg
>
> Alan:
>
> Martin Egli confirms LC en-route via Scott Buchanan (4-D San Diego).  Martin requested an extension document per your e-mail.
>
> Please advise as to same.
>
> Thanks,
> Jim
>
> *"Beckman, Alan T (GE Comm Fin)" <alan.beckman@ge.com>* wrote:
>
>> Jim,
>> Please advise status of the LC.  Thanks
>> Alan
>> _____
>> **From:** Beckman, Alan T (GE Comm Fin)
>> **Sent:** Thursday, August 02, 2007 1:34 PM
>> **To:** usmm@sbcglobal.net

10/5/2007

**Subject:**    NY Meg

Jim,

Per our discussion today, attached are the invoices for August 25. We will prepare the necessary documents related to the 12 month refi of the final balloons. Also, we expect to receive the replacement LC by close of business on Monday. The LC will have a term of 13 months.

Thanks

<< File: Scan001.PDF >>  << File: Scan001.PDF >>

*Alan T. Beckman*

**Workout Specialist**

**GE Healthcare Financial Services**

20225 Watertower Blvd., Suite 400

Brookfield, WI 53045

P: (262) 798-4600

F: (513) 204-3612

D: *388-4600

E: alan.beckman@ge.com

www.gehealthcarefinance.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
The information transmitted in this e-mail message and any attachments
is intended only for the person or entity to which it is addressed and
may contain confidential and/or privileged material.  Any review,
retransmission, dissemination or other use of, or taking of any action
in reliance upon this information by persons or entities other than the
intended recipient is prohibited.  All personal messages express solely
my own views, which are not to be attributed to General Electric
Corporation or any of its affiliates/subsidiaries. If you receive this
in error, please contact the sender and permanently delete the material
from any computer.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

10/5/2007