UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————X

GENERAL ELECTRIC CAPITAL
CORPORATION,

            Plaintiff,

    -against-

NEW YORK MEG, L.L.C., 4-D
NEUROIMAGING, INC. and MARTIN EGLI,

            Defendants.

————————————————————————X

Case No. 07-9715 (RJH)

**AFFIDAVIT OF
D. SCOTT BUCHANAN**

STATE OF CALIFORNIA  )
                          : ss.:
COUNTY OF SAN DIEGO  )

       D. SCOTT BUCHANAN, being duly sworn, deposes and says:

       1.     I am the President of defendant 4-D Neuroimaging, Inc. ("4-D"), and as such, I am familiar with the facts set forth herein. I submit this affidavit in support of 4-D's motion to dismiss for lack of personal jurisdiction.

       2.     4-D is a California corporation with its principal place of business in California.

       3.     4-D manufactures and distributes a highly advanced brain mapping system using Magnetoencephalography ("MEG") technology, which operates by recording magnetic fields in the brain, analyzing the magnetic fields and superimposing the results on an MRI image of the brain. This technology is used, for example, in the treatment of epilepsy.

results on an MRI image of the brain. This technology is used, for example, in the treatment of epilepsy.

4. In 2003, 4-D sold a MEG system to U.S. Medical Management, an Indiana limited liability corporation. Ultimately, the equipment was delivered to the New York MEG Center in New York, New York operated by defendant New York MEG, L.L.C. ("NY MEG").

5. 4-D is not a party to any agreement between General Electric Capital Corporation ("GECC") and NY MEG concerning the financing of the MEG equipment. 4-D has no ownership interest in the equipment.

6. 4-D does not have any corporate affiliation with NY MEG. It does not share any officers, directors or management with NY MEG.

7. At no time has 4-D commingled funds with those of NY MEG.

8. 4-D does not have any ownership interest in NY MEG, nor does it have any control over NY MEG's operation of the New York MEG Center or any other aspect of NY MEG's business. NY MEG is not an alter ego of 4-D.

9. NY MEG has no ownership interest in, or control of, 4-D. 4-D is not an alter ego of NY MEG.

10. Upon information and belief, NY MEG is wholly owned by New York MEG Acquisition Company, an Indiana Corporation, which has no corporate affiliation with 4-D, its owners or investors.

11. To date, 4-D has not sold any equipment in New York, and derives no revenue from the State of New York. It does not maintain any offices, employees, or bank accounts in New York.

12. Martin Egli ("Egli"), one of the defendants in this action, is an investor in 4-D and serves as the Chairman of the Board of Directors. He is also a partner in an investment management company, Swisspartners Investment Network AG, which is headquartered in Zurich, Switzerland.

13. 4-D is not an alter ego of Egli. 4-D until recently was a publicly traded company, is properly incorporated, observes all appropriate corporate formalities, has a Board of Directors and Officers, numerous employees and a number of outside investors. It is an independent and vibrant medical equipment manufacturer and a pioneer in the MEG field.

14. If Egli has provided any funding or other assurance to NY MEG he has not done so in his capacity as the Chairman of 4-D or in any way on behalf of 4-D.

_____
D. SCOTT BUCHANAN

Sworn to before me on this
3rd day January 2008

_Ena Karimi Saleh_
Notary Public

SEE ATTACHED FORM FOR
NOTARY CERTIFICATE

# Jurat

State of California

County of __San Diego__

Subscribed and sworn to ~~(or affirmed)~~ before me on this __3rd__ day of __January__ 20__08__ by __D. Scott Buchanan__

proved to me on the basis of satisfactory evidence to be the person(~~s~~) who appeared before me.

__Ena Karimi Saleh, Notary Public__
Signature                                                    (Notary seal)



## OPTIONAL INFORMATION

DESCRIPTION OF THE ATTACHED DOCUMENT

__Affidavit Of D. Scott Buchanan__
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages __4__    Document Date __1-3-08__

_____
(Additional information)

### INSTRUCTIONS FOR COMPLETING THIS FORM

The wording of all Jurats completed in California after January 1, 2008 must be in the form as set forth within this Jurat. There are no exceptions. If a Jurat to be completed does not follow this form, the notary must correct the verbiage by using a jurat stamp containing the correct wording or attaching a separate jurat form such as this one which does contain proper wording. In addition, the notary must require an oath or affirmation from the document signer regarding the truthfulness of the contents of the document. The document must be signed AFTER the oath or affirmation. If the document was previously signed, it must be re-signed in front of the notary public during the jurat process.

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the jurat process is completed.
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Signature of the notary public must match the signature on file with the office of the county clerk.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different jurat form.
  - Additional information is not required but could help to ensure this jurat is not misused or attached to a different document.
  - Indicate title or type of attached document, number of pages and date.
- Securely attach this document to the signed document

2008 Version CAPA v1.9.07  800-873-9865 www.NotaryClasses.com