# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------ x

GENERAL ELECTRIC CAPITAL CORPORATION,    Index No. 603376/07

            Plaintiff,

         - against -

NEW YORK MEG L.L.C., 4D NEUROIMAGING, INC.
and MARTIN EGLI,

            Defendants.
------------------------------------------------ x

**SUMMONS**
FILED: 10/12/07
ASSIGNED JUSTICE: _____

TO THE ABOVE-NAMED DEFENDANTS:

    You are hereby summoned and required to serve upon plaintiff's attorneys an answer to the complaint in this action within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint. Venue is based on § 503(a) of the New York Civil Practice Law and Rules.

Dated:   New York, New York
         October 11, 2007

NEW YORK
COUNTY CLERK'S OFFICE

OCT 1 2 2007

NOT COMPARED
WITH COPY FILE

KATTEN MUCHIN ROSENMAN LLP

By: _____
     Jonathan J. Faust, Esq.
Attorneys for Plaintiff
575 Madison Avenue
New York, New York 10022
(212) 940-8800

To:

New York MEG L.L.C.
300 East 39th Street
New York, New York

4-D Neuroimaging, Inc.
c/o D. Scott Buchanan
9727 Pacific Heights Blvd.
San Diego California  92121-3719

Martin P. Egli
Swisspartners Investment Network AG
Am Schanzengraben 23
P.O. Box
CH-8022 Zürich

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------x

GENERAL ELECTRIC CAPITAL CORPORATION,       :

                Plaintiff,       : Index No. 603376/07

      - against -       : COMPLAINT

NEW YORK MEG L.L.C., 4D NEUROIMAGING, INC.,   :
and MARTIN EGLI,
                                         :

                Defendants.
                                         :
------------------------------------------------------------x

       Plaintiff GENERAL ELECTRIC CAPITAL CORPORATION, by its attorneys Katten Muchin Rosenman LLP, for its complaint against defendants NEW YORK MEG L.L.C. ("NY MEG"), 4D NEUROIMAGING, INC. ("4D") and MARTIN EGLI ("EGLI"), alleges as follows:

       1.      Pursuant to various agreements, Plaintiff agreed to finance NY MEG's purchase of the equipment from 4D worth over $2,000,000 (Two Million Dollars). NY MEG promised to repay Plaintiff in accordance with a written schedule, and granted Plaintiff a security interest in the equipment and specified collateral. NY MEG defaulted on and breached its contractual obligations to Plaintiff by failing and refusing to: (i) pay Plaintiff in excess of $2.4 million dollars in scheduled payments that are overdue; and (ii) maintain a required letter of credit in Plaintiff's favor. NY MEG's defaults and breaches entitle Plaintiff to monetary damages and immediate possession of the equipment and collateral.

       2.      Upon information and belief, defendant NY MEG is the alter ego of defendants 4D and EGLI. Accordingly, Defendants are jointly and severally liable for the misconduct alleged herein.

NEW YORK
COUNTY CLERK'S OFFICE

OCT 1 2 2007

NOT COMPARED
WITH COPY FILE

84244297.3

**Parties**

3.  Plaintiff is a Delaware corporation that does business in, among other places, New York County, New York. GE Healthcare Financial Services is a component of Plaintiff that is engaged in the business of, inter alia, providing financing for the purchase of medical equipment, including, but not limited to, magnetic resonance imaging (MRI) machines, computerized tomography (CT) machines, ultrasound and other machines used in the health and medical profession.

4.  Upon information and belief, Defendant NY MEG is an Indiana limited liability company, with its primary place of business at 300 East 39th Street, New York, New York.

5.  Upon information and belief, Defendant 4D is a California corporation, with its primary place of business at 9727 Pacific Heights Blvd., San Diego, California.

6.  Upon information and belief, Defendant EGLI is an individual who resides out-of-state, but who regularly travels to, and conducts business in and specifically directed at, New York.

7.  Upon information and belief, NY MEG is an alter ego of EGLI and 4D. Upon information and belief, EGLI and 4D intentionally use and operate NY MEG -- and its location in New York City -- as the flagship showcase for EGLI's and 4D's other commercial efforts. Upon further information and belief, EGLI, 4D and NY MEG have ignored NY MEG's separate corporate form and independence, substituted each's interests for the other, commingled funds or otherwise used each other's funds interchangeably, and generally have abused the protections afforded by their separate legal existence, while manipulating transactions involving the two to benefit each other while improperly avoiding lawful liabilities.

**Jurisdiction**

8.  The Court has jurisdiction over NY MEG by virtue of its presence in this state and its regular transaction of business in New York.

9.  The Court has jurisdiction over the defendants 4D and EGLI, pursuant to CPLR 302(a), because, inter alia, each regularly conducts and transacts business in, and purposefully

directed at, New York, including supplying goods and services in the state. In addition, numerous transactions and meetings occurred in New York in connection with the transactions underlying the instant dispute. Upon information and belief, each of EGLI and 4D regularly comes to New York to transact business. The foregoing subjects defendants to New York's "long-arm" jurisdiction.

**The Master Security Agreement**

10. On or about May 9, 2003, Plaintiff and NY MEG entered into a written contract, the "Master Security Agreement Dated As Of 05/09/2003" (the "Master Security Agreement") and corresponding schedule (the "Schedule") pursuant to which Plaintiff agreed to finance NY MEG's purchase of a 4D Neuro Imaging Brain Mapping System (the "Equipment"). Copies of the Master Security Agreement and Schedule, together with subsequent amendments and addendum thereto, are attached as Exhibits A and B, respectively.

11. Pursuant to the Master Security Agreement and Schedule, Plaintiff extended credit, financing and/or monies to NY MEG in excess of $2,100,000 to fund NY MEG's purchase of the Equipment.

12. Thereafter, NY MEG purchased the Equipment from 4D.

13. As relevant to this action, to repay Plaintiff for said credit, financing and/or monies, NY MEG was obligated to pay Plaintiff as follows: (i) 11 monthly installments payments (the "Installment Payments") of $40,000 (Forty Thousand Dollars) beginning August 25, 2006; and (ii) 1 payment of $1,762,782.30 (One Million Seven Hundred Sixty Two Thousand Seven Hundred Eighty Two Dollars and Thirty Cents; hereinafter the "Balloon Payment") on July 25, 2007. (Exhibit A ¶ 3; Exhibit B [see Second Amendment to the Schedule]).

14. Under the Master Security Agreement, Plaintiff is entitled to recover a late charge of 5% on all monies due but unpaid for more than ten days. Exhibit A ¶¶ 3, 9(b).

15. Further, non-payment of any sums due to Plaintiff under the Master Security Agreement and Schedule constituted a default in, or breach of, the same. Exhibit A ¶ 9(a).

16. Plaintiff's remedies for default or breach of the Master Security Agreement and Schedule include, but are not limited to: (i) acceleration, and the right to immediate payment, of all outstanding monies due to Plaintiff; and (ii) immediate possession of the Equipment by Plaintiff. Exhibit A ¶ 9(b).

17. All costs of returning the Equipment to Plaintiff (including removal costs) in the event of NY MEG's default or breach are to be borne exclusively by NY MEG. Exhibit A ¶ 8(a).

18. Plaintiff also is entitled to recover all of its costs (including its attorneys fees) incurred in enforcing and effecting compliance with the Master Security Agreement. Exhibit A ¶ 17(c).

19. To protect Plaintiff against NY MEG's default or breach, NY MEG granted Plaintiff a first security interest in the Equipment.

20. Plaintiff perfected its security interest in the Equipment by making appropriate public filings. (Exhibit E).

21. The term of the Master Security Agreement is "until all of [Defendant's] obligations hereunder or under any Schedule(s) are fulfilled." Exhibit A ¶ 1(b).

22. The laws of the State of New York govern the parties dealing under the Master Security Agreement and any dispute in connection therewith. Exhibit A ¶ 17(e).

**Letter of Credit**

23. To protect Plaintiff against any default in, or breach of, NY MEG's payment obligations, the Master Security Agreement obligated NY MEG to post a letter of credit in favor of Plaintiff in the amount of $950,000 (Nine Hundred Fifty Thousand Dollars; hereinafter the "Letter of Credit"), with an expiration date of no earlier than August 31, 2007.

24. Any expiration or unenforceability of the Letter of Credit, prior to August 31, 2007, constituted a breach and default under the Master Security Agreement. Exhibit A (see Second Amendment to Master Security Agreement, dated August 25, 2006).

25. Defendants repeatedly and specifically assured Plaintiff that NY MEG would post, and had posted, a satisfactory Letter of Credit that complied with the terms of the Master Security Agreement.

**Promissory Note**

26. NY MEG required and requested additional financing in connection with its purchase of the Equipment, which Plaintiff agreed to provide.

27. To that end, NY MEG executed and delivered to Plaintiff a promissory note, as amended October 27, 2005 and August 25, 2006 (the "Promissory Note"), pursuant to which Plaintiff extended further credit, financing and/or monies to NY MEG in the principal sum of $775,000 (Seven Hundred Seventy Five Thousand Dollars). (Exhibit C)

28. To repay Plaintiff for said additional credit, financing and/or monies, NY MEG was obligated to pay Plaintiff: (i) 11 consecutive monthly payments of $15,000 (Fifteen Thousand Dollars) beginning August 25, 2006; (ii) 1 payment of $650,004.28 (Six Hundred Fifty Thousand Four Dollars and Twenty Eight Cents; hereinafter the "Promissory Balloon Payment") on July 25, 2007; and (iii) a further, final payment of all remaining principal and interest. (See Exhibit C [Second Amendment]).

29. Combined, under the Master Security Agreement, Schedule and Promissory Note, NY MEG's was obligated to pay to Plaintiff: (i) 11 monthly payments of $55,000 to Plaintiff during the period August 25, 2006 through June 25, 2007; and (ii) $2,412,786.58 in balloon payments on July 25, 2007.

**Supplemental Security Agreement**

30. On or about May 14, 2003, NY MEG and Plaintiff executed a separate security agreement (the "Supplemental Security Agreement") pursuant to which NY MEG granted to Plaintiff a security interest in a wide range of collateral, including but not limited to all of NY MEG's equipment, inventory, intangibles and accounts (the "Collateral"). Exhibit D ¶¶ 1-2.

31. The purpose of this Supplemental Security Agreement was to secure NY MEG's performance and payment of all of it debts and obligations to Plaintiff. Exhibit D ¶¶ 1-2.

32. Plaintiff perfected its security interest in the Collateral under the Supplemental Security Agreement by making all appropriate filings. (Exhibit E).

33. NY MEG's breach of, or default in, the parties' various agreements entitles Plaintiff to execute on and enforce its security interest in the Collateral. Exhibit D ¶ 7.

34. Plaintiff is entitled to recover all of its costs and expenses (including attorney's fees) incurred in enforcing or executing upon its security interests. Exhibit D ¶ 6-8.

35. Upon information and belief, the Equipment and Collateral is located at NY MEG's place of business at 300 East 39th Street, New York, New York, or another premises controlled by NY MEG.

**Defendants' Default**

36. NY MEG has failed and refused to make the required Balloon Payment when due on July 25, 2007.

37. NY MEG has failed and refused to make the required Promissory Balloon Payment when due on July 25, 2007.

38. NY MEG has failed and refused to make other payments required under the parties' agreements.

39. NY MEG's failure to make each of the required payments is and was a material default under, and breach of, the parties' agreements.

40. Following NY MEG's payment defaults and breaches, Plaintiff did not promptly draw down on the Letter of Credit or otherwise seek to protect Plaintiff's rights, interests and prerogatives prior to July 31, 2007, because Defendants had led Plaintiff into believing that the Letter of Credit had an August 31, 2007 expiration date -- leaving ample time to negotiate a resolution to NY MEG's default.

41. Unbeknownst to Plaintiff, and in violation of the Master Security Agreement and Schedule, the Letter of Credit (i.e., Letter of Credit #3849) had an expiration date of, and expired on, July 31, 2007.

42. The posting of a Letter of Credit with a term that expired prior to August 31, 2007 was a material breach of the Master Security Agreement and Schedule.

43. Plaintiff has provided Defendants with appropriate notice of the defaults and breaches, and demanded that they be cured. (See e.g., Exhibit F)

44. NY MEG has not cured any of the defaults or breaches, and none of the overdue and outstanding amounts has been paid.

45. By virtue of the foregoing defaults and breach of agreements, and in accordance with the terms of the parties' agreements, Plaintiff has demanded, demands, and is entitled to: (i) payment of all outstanding amounts due to Plaintiff, including applicable late charges; and (ii) possession of the Equipment and Collateral.

**Failed Efforts To Resolve The Parties' Dispute**

46. In the spirit of good faith and believing that it was still partially protected by a Letter of Credit with a term extending through August 31, 2007 (as contractually promised), Plaintiff undertook to negotiate an amicable resolution to NY MEG's defaults and breaches.

47. EGLI and 4D, although ostensibly not parties to Plaintiff's contracts with NY MEG, nevertheless attended and controlled negotiations.

48. Upon information and belief, there is no legitimate reason for EGLI and 4D to have participated in (much less dominated) said discussions if NY MEG was legitimately operated as a legal entity separate and distinct from EGLI and 4D.

49. Defendants requested a restructuring of NY MEG's obligations to Plaintiff, with payment terms extending through Summer 2008.

50. Thereafter, as part of these discussions, Defendants promised Plaintiff that EGLI and 4D had procured a further Letter of Credit (the "New Letter of Credit") that extended through September 2008.

51. On and after August 6 and 10, 2007, Defendants promised Plaintiff that the New Letter of Credit shortly would be delivered to Plaintiff.

52. Defendants temporized, stalled and delayed in negotiations with Plaintiff.

53. In early August 2007, as part of the discussions on restructuring NY MEG's obligations, Defendants informed Plaintiff that the prior Letter of Credit had expired.

54. Defendants never delivered the promised new Letter of Credit to Plaintiff, and now refuse to so do.

55. Because Defendants insisted on unreasonable terms, the parties failed to reach agreement on any restructuring of NY MEG's outstanding debt.

56. Defendants have recently advised Plaintiff that NY MEG's continuing viability as a business concern is unlikely, and that its ability to pay Plaintiff anything towards amounts due, would require a dramatic and unlikely increase in business.

57. NY MEG's defaults and precarious condition make delivery of the Equipment to Plaintiff a matter of great urgency. NY MEG is not entitled to further use or possession of the Equipment, and is neither authorized, capable nor incentivized to be an appropriate custodian or steward therefore.

58. Plaintiff has fully and completely performed all of its obligations to NY MEG.

59. At no time has any Defendant ever provided any notice that Plaintiff in any way breached its obligations under the terms of any of the parties' agreements.

**EGLI**

60. Upon information and belief, 4D and NY MEG are merely fronts through which EGLI acts.

61. Upon information and belief, EGLI personally and directly advanced and paid, out of his personal accounts, the funds used to pay virtually all Installment Payments and monthly payments due from NY MEG under the Promissory Note.

62. EGLI has represented to Plaintiff that:

    (a) "I [EGLI] write the checks" to pay Plaintiff;

    (b) "I [EGLI] will shut down" NY MEG if the parties fail to resolve the instant dispute on terms more favorable to NY MEG;

63. Upon information and belief, payments made by EGLI to Plaintiff for NY MEG were not run through NY MEG's accounts or otherwise treated or accounted for as NY MEG expenses separate and discrete from EGLI's personal responsibilities and obligations.

64. Upon information and belief, EGLI personally and directly posted the Letter of Credit for NY MEG's benefit using his own funds and credit.

65. Throughout the negotiations beginning in July 2007 regarding NY MEG's defaults and breaches, NY MEG referred Plaintiff to EGLI (and EGLI acted as NY MEG) in connection with all discussions and negotiations regarding payments due and to be made and the issuance and terms of a new Letter of Credit and extension terms.

66. EGLI made multiple representations to Plaintiff that he, personally, would satisfy NY MEG's obligations to Plaintiff, if revised terms more favorable to NY MEG were established.

67. In discussions with Plaintiff, EGLI has negotiated to advance his and NY MEG's interests, while taunting Plaintiff with arguments that he is personally insulated from liability by virtue of how he structured the parties' business dealings.

68. Upon information and belief, 4D is owned and run by EGLI.

69. Upon information and belief, EGLI and 4D use NY MEG and the Equipment as their flagship operation and showplace to advertise and demonstrate imaging devices for sale to potential third party purchasers.

70. Upon information and belief, EGLI and 4D run, operates and/or controls NY MEG, which they use for their personal advantage, without observing corporate formalities and without regard for NY MEG's separate corporate existence.

## FIRST CAUSE OF ACTION

(For Breach Of The Master Security Agreement And Schedule Thereto)

71. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 70, as though fully set forth herein.

84244297.3                                9

72.     Except as excused by and/or because of Defendants, Plaintiff has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Master Security Agreement, Schedule and other agreements.

73.     NY MEG breached the Master Security Agreement and the Schedule by, among other things, failing and refusing to pay Plaintiff amounts due thereunder.

74.     NY MEG also has breached the Master Security Agreement and the Schedule by, among other things, posting a Letter of Credit that expired or otherwise was unenforceable prior to August 31, 2007.

75.     On September 10, 2007, and on multiple prior and subsequent dates, counsel for Plaintiff sent NY MEG written notice of default and breach, notifying Defendants of, and identifying, NY MEG's above-described defalcations (see e.g. Exhibit F), none of which have been cured.

76.     Defendants above-described misconduct constitutes defaults under, and breaches of, the Master Security Agreement and Schedule.

77.     Under the Master Security Agreement and the Schedule, Plaintiff has the "non-exclusive option" to: (i) accelerate and declare due all outstanding payments; and/or (ii) return of the Equipment.

78.     Plaintiff has declared, and declares, all outstanding monies due to Plaintiff from NY MEG immediately due and payable in full.

79.     Plaintiff is entitled to immediate and full payment of all such sums, none of which have been paid.

80.     Plaintiff also is entitled to immediate return of the Equipment, at Defendants' sole expense.

81.     As a result of Defendant's breach of the Master Security Agreement and the Schedule, Plaintiff has suffered damages an amount to be proved at trial, but not less than $1,800,000 (One Million Eight Hundred Thousand Dollars).

82. To enforce the Master Security Agreement and Schedule, Plaintiff has incurred, and will continue to incur, legal costs and fees which Plaintiff is entitled to recover. The amounts of such legal fees and costs will be set forth at trial, according to proof.

83. Upon information and belief, NY MEG was operated as EGLI's and 4D's alter ego. Accordingly, Defendants are jointly and severally liable for the misconduct alleged herein.

## SECOND CAUSE OF ACTION

### (Breach of Promissory Note)

84. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 83, as though fully set forth herein.

85. Except as excused by and/or because of Defendants, Plaintiff has performed all conditions, covenants, and promises required on its part to be performed under the Promissory Note and other agreements.

86. NY MEG failed and refused to pay Plaintiff the money Plaintiff was owed under, and in accordance with, the terms of the Promissory Note.

87. NY MEG's failure to timely make payments due under the Promissory Note constitutes a "default" and/or breach thereunder.

88. Plaintiff has notified NY MEG of the defaults and breaches in writing and otherwise, and has demanded payment of all sums outstanding.

89. NY MEG has failed and refused to cure its defaults and/or breaches.

90. Pursuant to the Promissory Note, in the event of default or breach, at the election of Plaintiff all sums owed under the Promissory Note become immediately due and payable.

91. Plaintiff has declared, and declares, all outstanding monies due to Plaintiff from NY MEG immediately due and payable in full.

92. Plaintiff is entitled to immediate and full payment of all such sums, none of which have been paid.

93. As a result of NY MEG's breach of the Promissory Note, Plaintiff has suffered damages in an amount to be proved at trial, but not less than $660,000 (Six Hundred Sixty Thousand Dollars).

94. To enforce the Promissory Note, Plaintiff has incurred, and will continue to incur, legal costs and fees which Plaintiff is entitled to recover. The amounts of such legal fees and costs will be set forth at trial, according to proof.

95. Upon information and belief, NY MEG was operated as EGLI's and 4D's alter ego. Accordingly, Defendants are jointly and severally liable for the misconduct alleged herein.

### THIRD CAUSE OF ACTION

(Replevin, Declaratory Judgment and Injunctive Relief - Equipment)

96. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 95, as though fully set forth herein.

97. Plaintiff has a perfected security interest in the Equipment.

98. Pursuant to the terms of the agreements governing the parties' relationships, Plaintiff is entitled to possession of the Equipment upon default by NY MEG.

99. NY MEG is in default of, and has breached, its obligations to Plaintiff, as a result of which Plaintiff is entitled to possession and recovery of the Equipment.

100. Plaintiff demands possession of the Equipment.

101. Upon information and belief, NY MEG remains in possession of the Equipment.

102. There is an actual, existing, and concrete controversy between Plaintiff and Defendants respecting the ownership and possession of the Equipment. The issuance of a declaratory judgment by the Court will assist the parties in the conduct of their affairs in that it will constitute an appropriate declaration of their rights, obligations, duties, and remedies with respect to the Equipment. A declaratory judgment is an efficient and effective manner for the determination of the questions raised in this action.

103. Plaintiff is entitled to appropriate relief for such breach in the form of: (i) a declaratory judgment declaring and adjudging that Plaintiff is the lawful owner of the

Equipment; and (ii) an injunction requiring that Defendants forthwith deliver and relinquish the Equipment, at Defendants sole expense, to Plaintiff or its representatives.

## FOURTH CAUSE OF ACTION

### (Declaratory Judgment and Injunctive Relief – Collateral)

104. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 103, as though fully set forth herein.

105. Plaintiff has a perfected security interest in NY MEG's Collateral.

106. Pursuant to the terms of the agreements governing the parties' relationships, Plaintiff is entitled to possession of the Collateral upon default by NY MEG.

107. NY MEG is in default of, and has breached, its obligations to Plaintiff, as a result of which, Plaintiff is entitled to possession and recovery of the Collateral.

108. Plaintiff demands possession of the Collateral.

109. Upon information and belief, NY MEG remains in possession of the Collateral.

110. There is an actual, existing, and concrete controversy between Plaintiff and Defendants respecting the ownership and possession of the Collateral. The issuance of a declaratory judgment by the Court will assist the parties in the conduct of their affairs in that it will constitute an appropriate declaration of their rights, obligations, duties, and remedies with respect to the Collateral. A declaratory judgment is an efficient and effective manner for the determination of the questions raised in this action.

111. Plaintiff is entitled to appropriate relief for such breach in the form of: (i) a declaratory judgment declaring and adjudging that Plaintiff is the lawful owner of the Collateral; and (ii) an injunction requiring that Defendants forthwith deliver and relinquish the Collateral, at Defendants sole expense, to Plaintiff or its representatives.

112. Likewise, Plaintiff is entitled to: (i) a declaratory judgment declaring and adjudging that Plaintiff may contact NY MEG's customers and accounts to direct that payments of all receivables and debts owed to NY MEG be paid over to Plaintiff; and (ii) an injunction requiring that NY MEG immediately produce a list of its customers and accounts, and

prohibiting Defendants from interfering with Plaintiff's attempts to secure payments from said customers and accounts.

## FIFTH CAUSE OF ACTION

### (Fraud and Misrepresentation)

113.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 112, as though fully set forth herein.

114.    Defendants repeatedly assured and promised Plaintiff that NY MEG would post, and had posted, a Letter of Credit with an expiration date of August 31, 2007.

115.    The posting of a letter of credit with an expiration date no earlier than August 31, 2007, was a material aspect of Plaintiff's willingness to do business with NY MEG, and a determining factor in the terms of dealing acceptable to Plaintiff.

116.    Upon information and belief, EGLI intentionally (albeit secretly) posted a Letter of Credit that expired prior to August 31, 2007.

117.    Defendants repeatedly assured and promised Plaintiff that NY MEG would post, and had posted, a New Letter of Credit with an expiration date of September 2008.

118.    Upon information and belief, NY MEG's representations regarding the duration and term of the Letter of Credit, and the existence of the New Letter of Credit, were false when made, and knowingly so.

119.    Upon information and belief, EGLI posted a Letter of Credit that secretly expired prematurely in order to avoid the payment of lawful obligations due to Plaintiff, including the Balloon Payment and the Promissory Balloon Payment.

120.    Upon information and belief, Defendants represented that they had posted the New Letter of Credit to induce Plaintiff to forbear exercising Plaintiff's lawful rights and prerogatives.

121.    Plaintiff reasonably relied to its detriment on NY MEG's representations regarding the duration of the Letter of Credit, and the existence of the New Letter of Credit, in:

(i) structuring, and setting the terms of, the parties' business dealings; and (ii) not drawing down on the Letter of Credit on or before July 31, 2007, following NY MEG's payment defaults.

122. Plaintiff has been injured by Defendants' misrepresentations in an amount to be proved at trial, but not less than $950,000 (Nine Hundred Fifty Thousand Dollars).

123. Upon information and belief, NY MEG was operated as EGLI's and 4D's alter ego. Accordingly, Defendants are jointly and severally liable for the misconduct alleged herein.

**WHEREFORE**, Plaintiff prays for judgment awarding Plaintiff:

a. compensatory damages in an amount not less than $2,500,000 (Two Million Five Hundred Thousand Dollars);

b. appropriate declaratory relief, including a judgment declaring that Plaintiff is the owner, and entitled to immediate possession, of the Equipment and Collateral, which are to be delivered to Plaintiff forthwith, at Defendants' sole cost;

c. appropriate preliminary and permanent injunctive relief, and an order of replevin directing Defendants forthwith to deliver and relinquish the Equipment and Collateral to Plaintiff or Plaintiff's representatives, and requiring that NY MEG immediately produce a list of its customers and accounts, and prohibiting Defendants from interfering with Plaintiff's attempts to directly collect accounts and debts due to NY MEG from said customers and accounts;

d. the costs of this suit, including attorneys' fees as incurred herein; and

e. such other and further relief as is just and proper.

Dated: New York, New York
October 11, 2007

KATTEN MUCHIN ROSENMAN LLP

By: _____
Jonathan J. Faust
Attorneys for Plaintiff
575 Madison Avenue
New York, New York 10022
(212) 940-8800

84244297.3

15