UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————X

GENERAL ELECTRIC CAPITAL
CORPORATION,                                                Case No. 07-9715 (RJH)

           Plaintiff,

   -against-

NEW YORK MEG, L.L.C., 4-D
NEUROIMAGING, INC. and MARTIN EGLI,

           Defendants.

———————————————————————X

**DEFENDANT 4-D NEUROIMAGING'S MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S ORDER TO SHOW CAUSE AND IN SUPPORT
OF ITS CROSS-MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................................ 1

**STATEMENT OF FACTS** ....................................................................................................... 4

    *The Order to Show Cause.* ............................................................................................ 6

**ARGUMENT** ............................................................................................................................ 7

    *There Is No General Jurisdiction* ................................................................................. 7

    *There is No Specific Jurisdiction* ................................................................................. 8

    *There is No Alter Ego Jurisdiction* .............................................................................. 9

**CONCLUSION** ....................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases:**                                                                                                                       *Page(s)*

*Beacon v. Menzies,*
   715 F.2d 757, 763 (2d Cir. 1983)..........................................................................7, 8

*Bensusan Restaurant Corp. v. King,*
   126 F.3d 25, 28-29 (2d Cir. 1997)..............................................................................12

*Brownstone Inv. Group, LLC. v. Levey,*
   468 F.Supp.2d 654, 658 (S.D.N.Y. 2007)...................................................................12

*See e.g. Dale v. Banque Alliance S.A.,*
   2004 WL 2389894 *5 (SDNY)......................................................................................9

*Gartner v. Snyder,*
   607 F.2d 582, 588 (2d Cir. 1979).................................................................................11

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,*
   763 F.2d 55, 58 (2d Cir. 1985).................................................................................7, 8

*Indemnity Ins. Co. of North America v. K-Line America, Inc.,*
   2007 WL 1732435 *10 (S.D.N.Y., 2007)....................................................................12

*See Jacobs v. Felix Bloch Erben Verlag Fur Buhne Film Und Funk KG,*
   160 F.Supp.2d 722, 739 (SDNY 2001).........................................................................8

*Lowendahl v. Baltimorer & Ohio R. Co.,*
   247 A.D. 144, 156-157, 287 N.Y.S.2d 62, 74-76 (1st Dep't 1936)............................11

*Maranga v. Vira,*
   F.Supp. 2d 299, 306 (SDNY 2005) (citations omitted)..............................................12

*See also, Quebecor World (USA), Inc. v. Harsha Associates, L.L.C.,*
   F.Supp.2d 236, 244 (W.D.N.Y. 2006)........................................................................10

*Richbell v. Jupiter Partners,*
   309 A.D.2d 288, 765 N.Y.S.2d 575 (1st Dep't 2003)................................................13

*Savin v. Ranier,*
   898 F.2d 304 (2d Cir. 1990)............................................................................................7

*Schenker V. Assicurazioni Generali,*
   2002 WL 1560788 at *2 (SDNY July 15, 2002)........................................................10

*See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corporation,*
    751 F.2d 117, 121 (2d Cir.1984)..................................................................9, 10-12

*See, e.g., Weinberg v. Club ABC Tours, Inc.,*
    1997 WL 37041 (S.D.N.Y. 1997)................................................................................13

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,*
    933 F.2d 131, 138 (2d Cir. 1991)................................................................................11

**Statutes:**

Fed. R. Civ. P. 9(b)........................................................................................................3, 12

Fed. R. Civ. P. 12(b) (2)........................................................................................................2

*McKinney's* N.Y. C.P.L.R. § 302(a)(1)..................................................................1, 8, 10

*McKinney's* N.Y. C.P.L.R. § 302(a)(2)..................................................................2, 9, 12-13

## **PRELIMINARY STATEMENT**

Defendant 4-D Neuroimaging ("4-D") submits this memorandum of law in opposition to plaintiff's Order To Show Cause and in support of its motion, pursuant to Fed. R. Civ. P. 12 (b) (2) to dismiss the complaint against 4-D for lack of personal jurisdiction.

4-D is a California corporation with its principal place of business in California. It is a manufacturer of magnetoencephalography ("MEG") equipment and technology. Its only contact with the State of New York is a single sale of equipment in 2003 (to an Indiana limited liability company) that was ultimately delivered to New York MEG L.L.C. ("NY MEG"), the occasional servicing of that equipment, and ongoing marketing activities that have not resulted in any sales in or to New York to date. These limited contacts are clearly insufficient to confer general jurisdiction over 4-D under CPLR § 301. Moreover, because 4-D's sale of the equipment and related activities pursuant to its purchase agreement with NY MEG are not what gives rise to its alleged liability, such contacts do not confer specific jurisdiction over 4-D under CPLR § 302(a)(1).

Indeed, the claims filed by plaintiff General Electric Capital Corporation ("GECC") are based on NY MEG's alleged breach in 2007 of a Master Security Agreement and Promissory Note concerning the financing of its purchase of the MEG equipment. 4-D is not a party to the Master Security Agreement and Promissory Note, or any other agreement between GECC and NY MEG. Rather, GECC claims that 4-D should be held jointly and severally liable for NY MEG's alleged breaches based upon an alter ego theory. According to the Complaint, 4-D's alleged liability arises from attempts to renegotiate the financing of the equipment purchase in 2007 as an alter ego of NY MEG or defendant Martin Egli ("Egli"). The alleged liability does not arise from 4-D's sale of the equipment in 2003.

The question of whether jurisdiction over 4-D is proper under an alter ego theory hinges on whether either NY MEG's or Egli's contacts with New York can be imputed to 4-D. As demonstrated below and in the Affidavit of D. Scott Buchanan, sworn to on January 3, 2008 (hereinafter "Buchanan Aff."), GECC's conclusory allegations that 4-D ignored corporate formalities, commingled funds with NY MEG and controlled negotiations with GECC are blatantly false, and are insufficient as a matter of law to establish jurisdiction under an alter ego theory.

The alter ego theory fails because it is lacking an essential element – common ownership or control. 4-D does not have any ownership interest in NY MEG, nor does it have any control over NY MEG's operation of its New York MEG Center or any other aspect of NY MEG's business. It does not share any officers, directors or management with NY MEG. Upon information and belief, NY MEG is wholly-owned by New York MEG Acquisition Company, an Indiana corporation, which has no corporate affiliation with 4-D. The lack of common ownership is fatal to GECC's alter ego claims.

Plaintiff seeks to exploit the fact that Egli, individually or through an entity located in Switzerland, appears to have provided a Letter of Credit in connection with NY MEG's financing of the equipment. Egli is an investor in 4-D and also serves as the Chairman of the Board of Directors of 4-D. He is also a partner in an investment management company, Swisspartners Investment Network AG, which is headquartered in Zurich, Switzerland. Any dealings Egli allegedly had or currently has with respect to NY MEG are independent of his role as Chairman of the Board of 4-D. Indeed, the Complaint clearly alleges that Egli acted in his personal capacity.

To the extent that plaintiff attemps to create jurisdiction under CPLR § 302(a)(2), which permits the exercise of long-arm jurisdiction over a person who, in person or through an

agent "commits a tortious act within the state, " the allegations against 4-D (in addition to the alter ego failings) are insufficient to confer jurisdiction because the complaint fails to meet the specificity pleading requirements for a fraud claim under Fed. R. Civ. P. 9.  It is not even alleged that the purported misrepresentations that form the basis for plaintiff's fraud claim were made in New York.

The Complaint should be dismissed as to defendant 4-D for lack of personal jurisdiction.

## **STATEMENT OF FACTS**

4-D is a California corporation with its principal place of business in California. Buchanan Aff., ¶ 2. It manufactures a highly advanced brain mapping system using Magnetoencephalography (MEG) technology, which operates by recording magnetic fields in the brain, analyzing the magnetic fields and superimposing the results on an MRI image of the brain. Buchanan Aff., ¶ 3. This cutting edge technology developed by 4-D is used, for example, in the treatment of epilepsy.

In 2003, 4-D sold a MEG system to U.S. Medical Management, an Indiana limited liability corporation. Buchanan Aff., ¶ 4. That MEG system was ultimately delivered to the New York MEG Center, operated by defendant NY MEG. Buchanan Aff, ¶ 4. NY MEG financed the purchase of the equipment by entering into a Master Security Agreement and Promissory Note with GECC, pursuant to which NY MEG was obligated to provide a Letter of Credit. See Compl., ¶¶ 10, 23, and 27. 4-D is not a party to the Master Security Agreement and Promissory Note, or any other agreement between GECC and NY MEG.

4-D does not have any ownership interest in NY MEG, nor does it have any control over NY MEG's operation of the New York MEG Center or any other aspect of NY MEG's business. Buchanan Aff., ¶ 8. It does not share any officers, directors or management with NY MEG. Buchanan Aff., ¶ 6. Upon information and belief, NY MEG is wholly-owned by New York MEG Acquisition Company, an Indiana corporation, which has no corporate affiliation with 4-D or any of its owners or investors. Buchanan Aff., ¶ 10. At no time has 4-D commingled any of its funds with those of NY MEG. Buchanan Aff., ¶ 7.

Martin Egli is an investor in 4-D and serves as the Chairman of the Board of Directors of 4-D. Buchanan Aff., ¶ 12. He is also a partner in an investment management

4

company, Swisspartners Investment Network AG, which is headquartered in Zurich, Switzerland. Buchanan Aff., ¶ 12. According to the Complaint, Egli "personally and directly posted the Letter of Credit for NY MEG's benefit using his own funds and credit." Compl., ¶ 64. Additionally, plaintiff alleges that Egli acted as NY MEG "in connection with all discussions and negotiations regarding payments due and to be made and the issuance and terms of a new letter of credit and extension terms." Compl., ¶ 65.

Plaintiff's allegations make it clear that any dealings Egli allegedly had or currently has with respect to NY MEG are independent of his role as an investor and Chairman of the Board of 4-D. Compl., ¶¶ 61-67; Buchanan Aff., ¶ 14. Plaintiff has not identified anyone at 4-D other than Egli who was allegedly involved in discussions with GECC and has not alleged that Egli was acting as an agent of or in any way on behalf of 4-D. To the contrary, the complaint alleges that Egli acted "to advance his and NY MEG's interests." Compl., ¶ 67. The mere fact that Egli serves on the board of 4-D does not make 4-D an alter ego of Egli, and it most certainly does not support the notion that NY MEG is an alter ego of 4-D.

4-D is not an alter ego of Egli. 4-D until recently was a publicly traded company, is properly incorporated, observes all appropriate corporate formalities, has a Board of Directors and Officers, numerous employees and a number of outside investors. It is an independent and vibrant medical equipment manufacturer and a pioneer in the MEG field. Buchanan Aff., ¶ 13.

**The Order to Show Cause**

On or about October 12, 2007, GECC obtained an *ex parte* Order to Show Cause in the New York State Supreme Court seeking, as "a matter of great urgency", the immediate possession NY MEG's MEG equipment. The Order To Show Cause required all defendants to appear and show cause why an order should not be entered, (a) determining and declaring the rights of the respective parties to certain 4-D Neuroimaging Brain Mapping System and collateral that is the subject of the Plaintiff's agreements with MEG; (b) directing that the Equipment and collateral immediately be delivered to Plaintiff at MEG's sole cost; (c) directing payment of Plaintiff's costs, expenses, legal fees and disbursements in this action; and (d) for such other and further relief as may be just and proper.

The case was then removed to the United States District Court for the Southern District of New York on November 2, 2007. *See* Affidavit of S. Alyssa Young, Esq., sworn to on January 4, 2007 hereinafter ("Young Aff."), Exhibit B.

In an effort to negotiate a resolution to the dispute, the parties stipulated to a 45-day standstill for all Court proceedings on November 7, 2007; if no resolution could be reached, Defendants response papers were to be served by January 4, 2008. The stipulation was "So Ordered" by the Court on November 16, 2007. Young Aff. Exh. C. The parties have not been able to resolve the dispute since the stipulation. Instead, GECC once again seeks, as "a matter of great urgency", an order requiring NY MEG's to immediately deliver the MEG equipment to GECC.

4-D's only interest in opposing plaintiff's current application is to the extent the it seeks to impose any obligations on 4-D, as an alleged alter ego or otherwise. Although plaintiff claims that its alter ego theory against 4-D and Egli "is not essential to the determination

6

of this order to show cause" (Affidavit of John Storck, sworn to October 10, 2007, ¶ 53), the order is nonetheless directed to all defendants. Accordingly, 4-D appears for the purpose of contesting jurisdiction and – to the extent necessary – opposing the order to show cause.

## ARGUMENT

A court is obligated to dismiss an action against a defendant over which it lacks personal jurisdiction. In diversity cases, Federal Courts apply the law of the forum state to determine whether jurisdiction exists over a non-resident defendant, subject to the constitutional limits of due process. *Savin v. Ranier,* 898 F.2d 304 (2d Cir. 1990). The plaintiff has the burden of proof in establishing personal jurisdiction and must demonstrate it by a preponderance of the evidence. *See Beacon v. Menzies,* 715 F.2d 757, 761 (2d Cir. 1983).

**There Is No General Jurisdiction**

4-D is not "doing business" in the State of New York for purposes of CPLR § 301, New York's general jurisdiction statute. A corporation is subject to personal jurisdiction with respect to any cause of action, related or unrelated to its New York contacts, if it does business in the state "not occasionally or casually, but with a fair measure of permanence and continuity" such that it is "present" in New York. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985); *Beacon,* 715 F.2d at 762. 4-D's minimal activities in New York do not constitute "doing business" in New York.

Courts traditionally look at four factors to determine whether a foreign corporation is doing business in New York: the presence of bank accounts or property in New York, the existence of an office in New York, the presence of employees in New York and the solicitation of business in New York. *Hoffritz,* 763 F.2d at 58. 4-D does not have bank accounts or property in New York, nor does it have an office or employees that are present in the state,

7

and its solicitation of business in New York is not substantial enough to sustain personal jurisdiction here.

Mere solicitation of business in New York is not sufficient to subject a foreign defendant to jurisdiction here. Rather, New York Courts require substantial solicitation carried out with a considerable measure of continuity and from a permanent locale within the state. *Beacon*, 715 F.2d at 763 (occasional mail order sales deemed insufficient). Here, 4-D's occasional marketing activities and use of the NY MEG center for product demonstration (which have not resulted in any sales) does not render it subject to general jurisdiction under CPLR § 301, particularly where none of the other factors identified in *Hoffritz* are present.

**There Is No Specific Jurisdiction**

New York's long arm statute provides for jurisdiction over a non-resident defendant where the cause of action arises from the defendant's transaction of business or sale of goods in New York. CPLR § 302 (a)(1). Plaintiff is required to show that defendant transacted business or sold goods in New York and that the cause of action arose from that transaction or sale. The relationship between the claim and the in-state transaction must be direct. *See Jacobs v. Felix Bloch Erben Verlag Fur Buhne Film Und Funk KG*, 160 F.Supp.2d 722, 739 (SDNY 2001); *Beacon v. Menzies*, 715 F.2d at 764 (jurisdiction denied in declaratory judgment action where plaintiff did not allege that shipment of goods were in any way injurious to it).

Here, the "transaction" that gives rise to the complaint is the financing provided to NY MEG by GECC, as amended in 2006. While 4-D's sale of the equipment to NY MEG in 2003 is obviously a link in the chain of events, the sale itself (which may not have occurred in New York, in any event) does not give rise to any of the claims against 4-D. The existence of a contract with ties to New York cannot confer jurisdiction where the cause of action is not based

8

on that contract. *See e.g. Dale v. Banque Alliance S.A.*, 2004 WL 2389894, *5 (SDNY) (Plaintiffs' allegation that New York bank accounts were used in money laundering scheme held not sufficiently related to New York correspondent bank account agreement).

The claims against 4-D are based on allegations that 4-D participated in negotiations concerning NY MEG's financing in 2006 and 2007. Even if 4-D engaged in discussions with GECC concerning NY MEG's financing, which it expressly denies, there is no indication that any such discussions occurred in New York. New York Courts have consistently refused to sustain jurisdiction under CPLR § 302(a)(1) solely on the basis of defendant's communications from another locale with a party in New York. *Maranga v. Vira*, F. Supp.2d 299, 306 (S.D.N.Y. 2005)(*citations omitted*). Jurisdiction under CPLR § 302(a)(1) is therefore improper.

**There Is No Alter Ego Jurisdiction**

Where a defendant's alleged liability is based upon an alter ego theory, the Court must decide whether the allegations in the Complaint are sufficient to establish that the defendant's alleged control over its affiliate or subsidiary fairly subjects it to jurisdiction in the state. *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corporation*, 751 F.2d 117, 120 (2d Cir. 1984). With the exception of its fraud claim, which implicates CPLR § 302(a)(2) jurisdiction, all of plaintiff's claims against 4-D (for breaches of contracts to which it was not a party) are based upon an alter ego theory.

9

Generally, the separate corporate personalities of related corporations are recognized as long as corporate formalities are observed. *See Id.*, at 121. A court may pierce the corporate veil and exercise jurisdiction over an entity based on the conduct of another where the two companies have so disregarded the formal indicia of corporate separation such that one of them is a mere department of the other. *See Id.*, at 120.; *See also, Quebecor World (USA), Inc. v. Harsha Associates*, L.L.C., 455 F. Supp.2d 236, 244 (W.D.N.Y. 2006) (Dismissing complaint on jurisdictional grounds where conduct alleged failed to establish that L.L.C. was a mere shell).

The Second Circuit, in *Volkswagenwerk*, enunciated a four-part test to be used in determining whether jurisdiction may be obtained over an alter ego. The four factors to be considered are: 1) Common ownership, 2) financial dependency, 3) the degree to which the parent interferes with the selection and assignment of the subsidiary's personnel and fails to observe corporate formalities, and 4) the degree of control exercised over marketing and operational procedures. *Volkswagenwerk,* 751 F.2d at 120.

Plaintiff's alter ego claims are insufficient as a matter of law to confer jurisdiction over 4-D because 4-D has no ownership interest in NY MEG. As stated by the Second Circuit in *Volkswagenwerk*:

> New York Courts regard one factor as essential to the assertion of jurisdiction over a foreign related corporation and three others as important. The essential factor is <u>common ownership</u> (*citations omitted*). While jurisdiction has been found in cases other than the classic parent-subsidiary relationship, nearly identical ownership interests must exist before one corporation can be considered a department of another corporation for jurisdictional purposes. 751 F.2d at 120. (*emphasis added*).

Plaintiff cannot rely on its conclusory allegations that "4-D is owned and run by Egli" and "Egli and 4-D run, operate and control NY MEG." Compl., ¶¶ 68-69. Legal conclusions cannot substitute for facts. *Schenker v. Assicurazioni Generali*, 2002 WL 1560788

10

at *2 (S.D.N.Y. July 15, 2002)("Legal conclusions couched as factual allegations are not facts and cannot substitute for them"). NY MEG is wholly owned by New York MEG Acquisition Corp., and neither of these companies has any corporate affiliation with 4-D. Therefore, 4-D cannot be subject to jurisdiction under *Volkswagenwerk*.

Moreover, even assuming that Martin Egli has an ownership interest in NY MEG and 4-D, the conclusory allegation that NY MEG and 4-D "are merely fronts through which Egli acts" does not justify piercing the corporate veil under a "single enterprise theory." Piercing the corporate veil to reach the assets of a company that has a common owner requires a showing that the two entities were so controlled by the owner such that that they operated as a single entity or "corporate combine," which is certainly not the case here. *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 138 (2d Cir. 1991); *Gartner v. Snyder*, 607 F.2d 582, 588 (2d Cir. 1979).

Indeed, this type of corporate veil-piercing is used where "two corporations have become so inextricably confused that it is impossible or impracticable to identify the corporation that participated in the transaction." *Lowendahl v. Baltimore & Ohio R.Co.*, 247 A.D. 144, 156-157, 287 N.Y.S.2d 62, 74-76 (1st Dep't 1936). There is no allegation or inference to be made that 4-D and NY MEG were used interchangeably, or that it was impossible to distinguish one from the other. GECC was not misled into believing that 4-D and NY MEG were one and the same, and no way it could have reasonably believed it had contracted with 4-D in addition to or instead of NY MEG.

To the contrary, the complaint demonstrates that GECC voluntarily and knowingly entered into a contract with NY MEG and accepted the consequences of limited liability associated with the business form. Egli's participation in negotiations on behalf of NY MEG in 2007 doesn't change that fact.

11

The failure to establish common ownership ends the inquiry. *Indemnity Ins. Co. of North America v. K-Line America, Inc.*, 2007 WL 1732435, *10 (S.D.N.Y. 2007). Thus, the Court need not reach the other prongs of the *Volkswagenwerk* test.[1]

The only claim of defendant that is arguably not dependent upon an alter ego theory of liability is plaintiff's fifth cause of action, for fraud and misrepresentation. Section 302 (a)(2) of the CPLR permits the exercise of long-arm jurisdiction over a person who, in person or through an agent "commits a tortious act within the state." Jurisdiction under CPLR § 302 (a)(2) requires that the defendant or his agent by physically present in the State of New York. *Maranga v. Vira*, 386 F.Supp.2d 299 (S.D.N.Y. 2005), citing *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 28-29 (2d Cir. 1997) (CPLR §302(a)(2) reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act). Here, there is no indication that the purported tort actually occurred in New York.

Moreover, the allegations that form the basis for plaintiff's fraud and misrepresentation claim are insufficient to confer jurisdiction over 4-D under CPLR § 302 (a)(2) because plaintiff has not alleged fraud with sufficient particularity under Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Brownstone Inv. Group, LLC. v. Levey*, 468 F.Supp.2d 654, 658 (S.D.N.Y. 2007). GECC does not allege the identity of the speaker and

---

[1] Although, technically, under New York choice of law principles, the law of the state of incorporation determines when the corporate form will be disregarded, the result would be the same under California law, where 4-D is incorporated. *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)("the law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders.") To apply the alter ego doctrine under California law, the court must determine "that there is such unity of interest and ownership that the separate personalities of the corporation and the individuals no longer exist." *Flores v. DDJ, Inc.*, 2007 WL 4269259 (E.D.Cal.2007)

where and when the alleged statements were made. Thus, the complaint does not allege that 4-D committed a tortious act in New York.

Assuming, *arguendo*, that the statements identified in the Complaint are fraudulent, Egli's alleged involvement in negotiations with GECC on behalf of NY MEG cannot possibly be imputed to 4-D in any event. Although Egli is arguably an agent of 4-D (and of Swisspartners Investment Network AG) for certain business purposes, the presence of an agent does not confer jurisdiction over the principal when the agent is not conducting the business of the principal. *Richbell v. Jupiter Partners, L.P.*, 309 A.D.2d 288, 765 N.Y.S.2d 575 (1st Dep't 2003). Egli's dealings with GECC were clearly either on his own behalf in connection with the Letter of Credit he provided, or on behalf of NY MEG. Accordingly, Egli's conduct should not be imputed to 4-D.

There is no jurisdiction over 4-D under § 302(a)(2). Because there is no jurisdiction under the applicable sections of New York law, there is no need for the Court to make a due process analysis. *See, e.g., Weinberg v. Club ABC Tours, Inc.*, 1997 WL 37041 (S.D.N.Y. 1997) (having concluded that no personal jurisdiction was established under CPLR § 301 or CPLR § 302, the court did not make a due process inquiry).

13

## CONCLUSION

4-D is a California corporation with its principal place of business in California. Its only relevant contact with the State of New York is a single sale of equipment in 2003 that was eventually delivered to NY MEG. 4-D's alleged liability arises out of a separate transaction with a different contract, different parties and in a different time and place. 4-D is not an alter ego of NY MEG, which is in privity with GECC, or of Egli, who played some role in the financing that is the subject of this dispute. Accordingly, there is no jurisdiction over 4-D under an alter ego theory, or under New York's law of general or specific jurisdiction. The Complaint should be dismissed as to 4-D.

Dated: New York, New York
       January 4, 2008

LEADER & BERKON LLP

By: _____
GLEN SILVERSTEIN (GS 9174)
S. ALYSSA YOUNG (SY 6105)
MICHAEL J. TIFFANY (MT 9367)
630 Third Avenue, 17th Floor
New York, NY 10017
(212) 486-2400
(212) 486-3099 (Fax)
*Attorneys for Defendant*
*New York MEG, L.L.C. and*
*4-D Neuroimaging*

14