# EXHIBIT A

**GE Healthcare Financial Services**

# MASTER SECURITY AGREEMENT
# DATED AS OF 05/09/2003

THIS MASTER SECURITY AGREEMENT is between General Electric Capital Corporation (together with its successors and assigns, if any, "**Secured Party**") and the undersigned Debtor ("**Debtor**"). Secured Party has a mailing address at GE Healthcare Financial Services, P.O. Box 641419, Pittsburgh, PA 15264-1419. Debtor is a Limited Liability Company organized and existing under the laws of the State of Indiana. Debtor's mailing address and chief place of business is 3037 South Meridian Street, Indianapolis, IN 46217-3227. This Agreement contains the general terms that apply to the financing of Equipment (defined below). Additional terms that apply to the Equipment shall be contained on a schedule ("**Schedule**") and in the GE Equipment Addendum or the Non-GE Equipment Addendum, as the case may be.

1. **FINANCING, TERM AND TERMINATION:**

   (a) Secured Party agrees to finance Debtor's purchase of the equipment ("**Equipment**"). All units of Equipment and other property, and all accessories, upgrades, additions, substitutions, replacement parts and tools pertaining thereto are further described in any Schedule signed by both parties.

   (b) This Agreement shall be effective as of the date stated above and, unless sooner terminated by Secured Party as hereinafter provided, shall continue until all of Debtor's obligations hereunder or under any Schedule(s) are fulfilled. The term of each Schedule is as specified in the Schedule and commences upon the Term Commencement Date (defined in subparagraph (c) below). In the event of a conflict between provisions of this Agreement and a Schedule, the provisions of the Schedule shall control.

   (c) The "**Term Commencement Date**" shall begin on (A) in the case of GE Equipment, the earlier of (i) five days after the date the Debtor is notified the Equipment has been assembled and is operating in accordance with the manufacturer's published performance specifications or (ii) the date the Debtor first uses the Equipment or (B) in the case of Non-GE Equipment, the date when Debtor has accepted the Equipment. However, if the GE Equipment's installation and availability for first use is delayed for any reason for which the Secured Party is not responsible, the GE Equipment's availability for first use may, at Secured Party's discretion, be declared to be 30 days after the date the GE Equipment is delivered.

2. **CREATION OF SECURITY INTEREST:** Debtor grants to Secured Party, its successors and assigns, a first security interest in and against the Equipment and in and against all additions, attachments, accessories and accessions to such property, all substitutions, replacements or exchanges therefor, and all insurance and/or other proceeds thereof. This security interest is given to secure the payment and performance of all debts, obligations and liabilities of any kind whatsoever of Debtor to Secured Party and any renewals, extensions and modifications of such debts, obligations and liabilities.

3. **MONTHLY INSTALLMENTS/DOWN PAYMENT:** Debtor shall pay monthly installments to Secured Party at its address stated above, except as otherwise directed by Secured Party. Installments shall be in the amount set forth in the applicable Schedule and are due in advance beginning on the Term Commencement Date and on the same day of each consecutive month thereafter. If any down payment (as stated in the Schedule) is payable, it shall be due when the Debtor signs the Schedule. The down payment shall be applied in the manner set forth under such Schedule. Subject to set-off for payments made or expenses incurred by Secured Party, Secured Party will refund the down payment paid by Debtor with respect to a Schedule if the Schedule is terminated in writing, before any part of the Equipment is delivered to the Site, (i) by Secured Party or Debtor as a direct result of the other's material breach of a material term or condition of that Schedule or (ii) by mutual written agreement between the parties. If a monthly installment is not paid within ten days of its due date, Debtor agrees to pay a late charge of five cents ($.05) per dollar on, and in addition to, the amount of such installment but not exceeding the lawful maximum, if any. All other payments received by Secured Party shall first be applied to any accrued late charge(s) and other monies due Secured Party hereunder and then to any unpaid installments.

4. **TAXES:** If permitted by law, Debtor shall report and pay promptly all taxes, fees and assessments due, imposed, assessed or levied against any Equipment (or purchase, ownership, delivery, leasing, possession, use or operation thereof), this Agreement (or any receipts hereunder), any Schedule, Secured Party or Debtor by any governmental entity or taxing authority during or related to the term of this Agreement, including, without limitation, all license and registration fees, and all sales, use, personal property, excise, gross receipts, franchise, stamp or other taxes, imposts, duties and charges, together with any penalties, fines or interest thereon (collectively "**Taxes**"). Debtor shall have no liability for Taxes imposed by the United States of America or any state or political subdivision thereof which are on or measured by the net income of Secured Party. Debtor shall promptly reimburse Secured Party (on an after tax basis) for any Taxes charged to or assessed against Secured Party. Debtor shall send Secured Party a copy of each report or return and evidence of Debtor's payment of Taxes upon request by Secured Party. Debtor's obligations under this Section 4 shall survive any expiration or termination of this Agreement.

5. **REPORTS:**

   (a) If any tax charge or other lien shall attach to any Equipment, Debtor will notify Secured Party in writing, within ten days after Debtor becomes aware of the tax charge or lien. The notice shall include the full particulars of the tax charge or lien and the location of such Equipment on the date of the notice.

   (b) Debtor will deliver to Secured Party, Debtor's complete financial statements, certified by a recognized firm of certified public accountants within 90 days of the close of each fiscal year of Debtor. Debtor will deliver to Secured Party copies of Debtor's quarterly financial report certified by the chief financial officer of Debtor, within 90 days of the close of each fiscal quarter of Debtor. Debtor will deliver to Secured Party all Forms 10-K and 10-Q, if any, filed with the Securities and Exchange Commission within 30 days after the date on which they are filed.

   (c) Debtor will not change its state of incorporation or organization or its name as it appears in official filings in the state of its incorporation or organization without giving Secured Party at least 10 days' prior written notice.

6. **MAINTENANCE:**

   (a) Debtor will, at its sole expense, maintain each unit of Equipment in good operating order and repair, normal wear and tear excepted. The Debtor shall also maintain the Equipment in accordance with manufacturer's recommendations. Debtor shall make all alterations or modifications required to comply with any

applicable law, rule or regulation dui. the term of this Agreement. If Secured Party requests, Debtor shall affix plates, tags or other identifying labels showing ownership thereof by Debtor and Secured Party's security interest.

(b) Debtor will not attach or install anything on any Equipment that will impair the originally intended function or use of such Equipment without the prior written consent of Secured Party. All additions, parts, supplies, accessories, and equipment ("**Additions**") furnished or attached to any Equipment that are not readily removable shall become the property of Secured Party. All Additions shall be made only in compliance with applicable law.

7. INSURANCE: Debtor agrees at its own expense, to keep the Equipment insured with companies acceptable to Secured Party for such amounts and against such hazards as Secured Party may require, including, but not limited to, all risk physical damage insurance for the Equipment itself, with losses under the policies payable to Secured Party or its assigns, if any, and liability coverage for personal injuries, death and/or property damages on terms satisfactory to Secured Party. Secured Party and/or its officers, agents, employees and/or successors and/or assigns shall be named as an additional insured under all such insurance policies with loss payable clauses under said policies payable in Secured Party's favor, as Secured Party's interest may appear. Said Equipment shall be insured for not less than its stated replacement value or such other amount as Secured Party shall specify. Said liability insurance shall be in an amount of not less than two million dollars ($2,000,000.00) or such other amount as Secured Party shall specify. Debtor hereby appoints Secured Party as its attorney-in-fact to make proof of loss and claims for insurance and to make adjustments with insurers and to receive payment of and execute or endorse all documents, checks or drafts in connection with payments made with respect to such insurance policies. Debtor may not make adjustments with insurers except with Secured Party's prior written consent. The policies will provide that the insurance may not be altered or canceled by the insurer until after thirty days written notice to Secured Party. In the event of damage to or loss, secretion, destruction or theft of the Equipment, or any portion of the Equipment, whether in whole or in part, Debtor will pay to Secured Party the replacement value of all Equipment, or of the portion of the Equipment affected if the value and use of the remainder of the Equipment are not affected at the time of such occurrence (except the extent that Secured Party indefeasibly receives proceeds of insurance covering such Equipment). Secured Party may, at Secured Party's option, apply proceeds of insurance, in whole or in part, (i) to repair or comparably replace the Equipment or any portion of it, or (ii) to satisfy any of Debtor's obligations pursuant to this Agreement or a Schedule.

8. ACCESS AND REMOVAL:

(a) The cost of removal and turnover, including all transportation, of the Equipment in the event of Debtor's default of a Schedule will be at Debtor's expense. If Debtor makes modifications to the site after the Equipment has been installed which impede the removal of the Equipment, the cost of removing the impediments and restoring the site will be at Debtor's expense.

(b) If, following an event of default, Secured Party exercises its right to demand that Debtor turn over the Equipment to Secured Party, the Equipment will be turned over to Secured Party or assigns, in the same condition and appearance as when received by Debtor (reasonable wear and tear excepted) and in good working order and condition, operable in accordance with the manufacturers then prevailing performance specifications. All waste material and fluid must be removed from the Equipment and disposed of by Debtor in accordance with then current waste disposal laws. If the Equipment is not so turned over, Secured Party, at Debtor's sole expense, may have the Equipment restored to such a condition. If Secured Party so requires, the units shall be de-installed and crated by an authorized manufacturer's representative or such other service person as is reasonably satisfactory to Secured Party.

9. DEFAULT AND REMEDIES:

(a) Secured Party may declare this Agreement in default if: (i) Debtor breaches its obligation to pay monthly installments or any other sum owing to Secured Party (under this Agreement or otherwise) when due and fails to cure the breach within ten days; (ii) Debtor breaches any of its insurance obligations under Section 7 above; (iii) Debtor breaches any of its other obligations and fails to cure that breach within 30 days after written notice from Secured Party; (iv) any representation or warranty made by Debtor in connection with this Agreement shall be incorrect, false or misleading in any material respect; (v) Debtor or any guarantor or other obligor for the Debtor's obligations hereunder ("Guarantor") becomes insolvent or ceases to do business as a going concern; (vi) Debtor assigns any of its interests in this Agreement or in the Equipment without Secured Party's prior consent; (vii) if Debtor or any Guarantor is a natural person, any death or incompetency of Debtor or such Guarantor; (viii) a petition is filed by or against Debtor or any Guarantor under any bankruptcy or insolvency laws (in which event, it would be an immediate event of default) and in the event of an involuntary petition, the petition is not dismissed within 45 days of the filing date; (ix) any material adverse change occurs in Debtor's financial condition or business operations (or of any Guarantor) or any material change occurs in the ownership of Debtor (or of any Guarantor), or (x) Debtor improperly files an amendment or termination statement relating to a filed financing statement describing the Equipment. Debtor's default under a Schedule or a default by Debtor or any entity managed or controlled by Debtor or by any principal of Debtor under any other agreement or contract with Secured Party, will at Secured Parties sole option, constitute a default of this Agreement and all Schedules entered into pursuant to this Agreement.

(b) Upon the occurrence of an event of default hereunder, Secured Party shall have the non-exclusive option to: (i) declare all sums due and to become due for the full term of any or all of the Schedules immediately due and payable; (ii) declare all other amount(s) due Secured Party hereunder immediately due and payable; (iii) collect from Debtor, on all monies due but unpaid for more than ten days, a late charge of five cents per dollar on, and in addition to, the amount of all such monies, but not exceeding the lawful maximum; (iv) take possession of the Equipment and remove same from its existing location(s) without notice to or consent of Debtor; and store and/or dispose (by public sale or otherwise) of the Equipment at its then existing location(s) at no charge to Secured Party; (v) sell or lease any or all items of Equipment at public or private sale or lease at such time or times as Secured Party may determine and if notice thereof is required by law, any notice in writing of any such sale or lease by Secured Party to Debtor not less than ten days prior to the date thereof shall constitute reasonable notice thereof to Debtor; (vi) otherwise dispose of, hold, use, operate, or keep idle such Equipment, all as Secured Party, in its sole discretion, may determine; and (vii) assert any other remedies available to Secured Party at law or in equity (including, without limitation, under the Uniform Commercial Code).

(c) After deducting all expenses of retaking, repairing, holding, transporting, selling and/or reletting the Equipment, the net proceeds (if any) from such sale or reletting by Secured Party shall be applied against Debtor's obligation hereunder. The proceeds of any sale, re-lease, or other disposition (if any) shall be applied in the following priorities: (i) first, to pay all Secured Party's costs, charges and expenses in taking, removing, holding, repairing, selling, re-leasing and disposing of the Equipment; (ii) second, to the extent not previously paid by Debtor (or by a Guarantor of Debtor's obligations hereunder) to pay Secured Party all amounts due from Debtor hereunder; and (iii) lastly, any surplus shall be delivered to Debtor. Secured Party shall have the right to seek a deficiency from Debtor notwithstanding Secured Party's repossession or abandonment of the Equipment, or Secured Party's sale or reletting the Equipment to a third party.

(d) The foregoing remedies are cumulative, and nonexclusive of any other rights and remedies that Debtor may have under any other agreement or at law or in equity and may be exercised individually or concurrently, any or all thereof may be

exercised instead of or in addition to each other or any remedies at law, in equity, or under statute. Debtor waives notice of sale or other disposition (and the time and place thereof), and the manner and place of any advertising. Debtor shall pay Secured Party's actual attorney's fees incurred in connection with the enforcement, assertion, defense or preservation of Secured Party's rights and remedies under this Agreement, or if prohibited by law, such lesser sum as may be permitted. Waiver of any default shall not be a waiver of any other or subsequent default.

**10. ASSIGNMENT:** DEBTOR SHALL NOT SELL, TRANSFER, ASSIGN, ENCUMBER OR SUBLET ANY EQUIPMENT OR THE INTEREST OF DEBTOR IN THE EQUIPMENT OR THE RIGHTS OR OBLIGATIONS OF DEBTOR UNDER THIS AGREEMENT WITHOUT THE PRIOR WRITTEN CONSENT OF SECURED PARTY. Secured Party may, without the consent of Debtor, assign this Agreement, any Schedule or the right to enter into a Schedule provided that any such assignment shall not relieve Secured Party of its obligations hereunder. Debtor agrees that if Debtor receives written notice of an assignment from Secured Party, Debtor will pay all monthly installments and all other amounts payable under any assigned Schedule to such assignee or as instructed by Secured Party. Debtor also agrees to confirm in writing receipt of the notice of assignment as may be reasonably requested by Secured Party or assignee. Debtor hereby waives and agrees not to assert against any such assignee any defense, set-off, recoupment claim or counterclaim which Debtor has or may at any time have against Secured Party for any reason whatsoever.

**11. NO THIRD PARTY BENEFICIARIES:** This Agreement is for the benefit of Debtor and Secured Party and no person or legal entity is, or shall be, considered an intended third party beneficiary thereof, and no person other than Debtor and Secured Party shall have an enforceable right to any benefits under this Agreement.

**12. REPRESENTATIONS, WARRANTIES AND COVENANTS OF DEBTOR:** Debtor makes each of the following representations, warranties, and covenants to Secured Party on the date hereof and on the date of execution of each Schedule.

(a) Debtor has full power and capacity to enter into, and perform under, this Agreement, the Schedules and all related documents (together, the "Documents"). Debtor is duly qualified to do business wherever necessary to carry on its present business and operations, including the jurisdiction(s) where the Equipment is or is to be located.

(b) The Documents have been duly authorized, executed and delivered by Debtor and constitute valid, legal and binding agreements, enforceable in accordance with their terms, except to the extent that the enforcement of remedies may be limited under applicable bankruptcy and insolvency laws.

(c) No approval, consent or withholding of objections is required from any governmental authority or any person or entity with respect to the entry into or performance by Debtor of the Documents except such as have already been obtained.

(d) The entry into and performance by Debtor of the Documents will not: (i) violate any judgment, order, law or regulation applicable to Debtor or any provision of Debtor's organizational documents; or (ii) result in any breach of, constitute a default under or result in the creation of any lien, charge, security interest or other encumbrance upon any Equipment pursuant to any indenture, mortgage, deed of trust, bank loan or credit agreement or other instrument (other than this Agreement) to which Debtor is a party.

(e) There are no suits or proceedings pending or threatened in court or before any commission, board or other administrative agency against or affecting Debtor, which if decided against Debtor will have a material adverse effect on its business or operations or its ability to fulfill its obligations under this Agreement.

(f) The Equipment is and will remain tangible personal property.

(g) Each financial statement delivered to Secured Party has been prepared in accordance with generally accepted accounting principles consistently applied. Since the date of the most recent financial statement, there has been no material adverse change in the financial condition of the Debtor.

(h) Debtor's exact legal name is as set forth in the last page of this Agreement and Debtor is and will be at all times validly existing and in good standing under the laws of the state of its formation (specified in the first sentence of this Agreement).

(i) The Equipment will at all times be used for commercial or business purposes.

(j) Debtors agrees that the Equipment will be used by Debtor solely in the conduct of its business and in a manner complying with all applicable laws, regulations and insurance policies.

(k) Debtor will not move any Equipment from the location specified on the Schedule, without the prior written consent of Secured Party.

(l) Debtor will keep the Equipment free and clear of all liens and encumbrances other than those which result from acts of Secured Party.

**13. USURY SAVINGS:** It is the intention of the parties hereto to comply with any applicable usury laws to the extent that any Schedule is determined to be subject to such laws. Accordingly, it is agreed that, notwithstanding any provision to the contrary in any Schedule or this Agreement, in no event shall any Schedule require the payment or permit the collection of interest in excess of the maximum amount permitted by applicable law. If any such excess interest is contracted for, charged or received under any Schedule or this Agreement, or in the event that all of the principal balance shall be prepaid, so that under any of such circumstances the amount of interest contracted for, charged or received under any Schedule or this Agreement shall exceed the maximum amount of interest permitted by applicable law, then in such event (i) the provisions of this paragraph shall govern and control, (ii) neither Debtor nor any other person or entity now or hereafter liable for the payment hereof shall be obligated to pay the amount of such interest to the extent that it is in excess of the maximum amount of interest permitted by applicable law, (iii) any such excess which may have been collected shall be either applied as a credit against the then unpaid principal balance or refunded to Debtor, at the option of the Secured Party, and (iv) the effective rate of interest shall be automatically reduced to the maximum lawful contract rate allowed under applicable law as now or hereafter construed by the courts having jurisdiction thereof.

**14. LIMITATION OF REMEDIES AND DAMAGES:** THE TOTAL LIABILITY OF SECURED PARTY AND ITS REPRESENTATIVES TO DEBTOR AND DEBTOR'S EXCLUSIVE REMEDY RELATING TO A SCHEDULE IS LIMITED TO THE MONTHLY INSTALLMENT WHICH IS THE BASIS FOR THE CLAIM. Debtor agrees that Secured Party and its representatives have no liability to Debtor for (i) any penal, punitive, special, incidental, or consequential damages such as lost profit or revenue, (ii) any assistance not required under the Schedule, or (iii) anything occurring after the end of a Schedule. Debtor will be barred from any remedy unless Debtor gives Secured Party prompt written notice of the problem. This is a commercial transaction. Any claim related to this contract will be covered solely by commercial legal principles. SECURED PARTY, ITS REPRESENTATIVES AND ASSIGNS WILL NOT HAVE ANY NEGLIGENCE OR OTHER TORT LIABILITY TO DEBTOR OR ANY PERSON OR ENTITY, ARISING FROM THIS AGREEMENT AND ANY OTHER DOCUMENT OR ANY USE OF ANY EQUIPMENT.

**15. COMPLIANCE WITH REPORTING RESPONSIBILITIES:** Debtor agrees to fully and accurately account for, and report in any

applicable cost reports, all items and ... ces received from Secured Party under this Agreement, in a way which complies with all applicable laws and regulations, including the Federal Social Security Act and implementing regulations relating to Medicare, Medicaid and the Federal Health Care Programs.

**16. FILING:** Debtor will sign and return to Secured Party when requested such instrument(s) as applicable law requires or permits to give public notice of Secured Party's interest in the Equipment. In addition, Debtor hereby authorizes Secured Party to file a financing statement and amendments thereto describing the Equipment described in any and all Schedules now and hereafter executed pursuant hereto and adding any collateral described therein and containing any other information required by the applicable Uniform Commercial Code. Debtor hereby irrevocably appoints Secured Party or its designee as Debtor's agent and attorney-in-fact to sign such instrument(s) on Debtor's behalf and to file them.

**17. MISCELLANEOUS:**

(a) DEBTOR AND SECURED PARTY UNCONDITIONALLY WAIVE THEIR RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, ANY OF THE DOCUMENTS, ANY DEALINGS BETWEEN DEBTOR AND SECURED PARTY RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN DEBTOR AND SECURED PARTY. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT. THIS WAIVER IS IRREVOCABLE. THIS WAIVER MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING. THE WAIVER ALSO SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, ADDENDA OR MODIFICATIONS TO THIS AGREEMENT, ANY RELATED DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

(b) Time is of the essence of this Agreement. Secured Party's failure at any time to require strict performance by Debtor of any of the provisions hereof shall not waive or diminish Secured Party's right at any other time to demand strict compliance with this Agreement. If more than one Debtor is named in this Agreement, the liability of each shall be joint and several. All notices required to be given hereunder shall be deemed adequately given if sent by registered or certified mail to the addressee at its address stated herein, or at such other place as such addressee may have specified in writing by notice as prescribed in this Agreement. This Agreement and any addendum, schedule and annexes hereto constitute the entire agreement of the parties with respect to the subject matter hereof. No prior proposals, statements, course of dealing, or usage of trade will be a part of this Agreement. NO VARIATION OR MOD... ATION OF THIS AGREEMENT OR ANY WAIVER OF ANY OF ITS PROVISIONS OR CONDITIONS SHALL BE VALID UNLESS IN WRITING AND SIGNED BY AN AUTHORIZED REPRESENTATIVE OF THE PARTIES HERETO.

(c) If Debtor does not comply with any provision of this Agreement, Secured Party shall have the right, but shall not be obligated, to effect such compliance, in whole or in part. All reasonable amounts spent and obligations incurred or assumed by Secured Party in effecting such compliance shall constitute an additional installment due to Secured Party. Debtor shall pay the additional installment within five days after the date Secured Party sends notice to Debtor requesting payment. Secured Party's effecting such compliance shall not be a waiver of Debtor's default.

(d) Any provisions in this Agreement, any Schedule, addendum or amendment hereto that are in conflict with any statute, law or applicable rule shall be deemed omitted, modified or altered to conform thereto, but the remaining provisions shall remain enforceable as written.

(e) THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES OF SUCH STATE), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, REGARDLESS OF THE LOCATION OF THE EQUIPMENT.

(f) Debtor agrees that neither it nor its affiliates will in the future issue any press release or other public disclosure using the name of General Electric Capital Corporation or its affiliates or referring to this Agreement without at least two (2) business days' prior notice to Secured Party and without the prior written consent of Secured Party unless (and only to the extent that) Debtor or its affiliate is required to do so under law and then, in any event, such Debtor or affiliate will consult with Secured Party before issuing such press release or other public disclosure. Debtor consents to the publication by Secured Party of a tombstone or similar advertising material relating to the financing transactions contemplated by this Agreement.

(g) There is no restriction either express or implied on any disclosure or dissemination of the structure or tax aspects of the transactions contemplated by this Agreement. Further, the Secured Party acknowledges that it has no proprietary rights to any tax matter or tax idea or to any element of the transaction structure.

(h) This Agreement and any related documents may be authenticated by manual signature, facsimile or, if approved in writing by Secured Party, electronic means, all of which shall be equally valid.

IN WITNESS WHEREOF, Debtor and Secured Party have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

SECURED PARTY:

**General Electric Capital Corporation**

By: _[signature]_
Name: _Thomas J. Bruce_
Title: Duly Authorized Signatory

DEBTOR:

**New York MEG, L.L.C.**

By: _[signature]_
Name: _Jim Cerutti_
Title: _Principal_


GE Healthcare Financial Services

# NON-GE EQUIPMENT ADDENDUM
## DATED AS OF 05/09/2003
## TO MASTER SECURITY AGREEMENT
## DATED AS OF 05/09/2003

THIS ADDENDUM ("Addendum") is attached and made a part of the above referenced Master Security Agreement (the "Agreement") between General Electric Capital Corporation ("Secured Party") and the undersigned Debtor ("Debtor") and is incorporated by reference into the Agreement. This Addendum modifies and supplements the Agreement and sets forth additional terms and conditions that apply to Equipment that has not been manufactured by the General Electric Company or its affiliates. Any conflict between this Addendum and the Agreement shall be resolved so as to give effect to the provisions of this Addendum. Capitalized terms not otherwise defined herein shall have the meaning set forth in the Agreement.

1. **TRANSPORTATION AND RISK OF LOSS:**

   (a) The Equipment will be shipped to the site identified in a Schedule by the Supplier of the Equipment. Debtor will inform Secured Party of the date the Equipment is delivered within 5 days of such delivery. Any necessary assembly or installation will be described in the Schedule. The Debtor agrees to accept shipment of the Equipment and to cooperate with any assembler to permit the assembler to complete its task without delay.

   (b) The Debtor or the Supplier will bear responsibility for transportation and risk of loss of the Equipment at all times. At no time will Secured Party bear the risk of loss. The use of the term "risk of loss" herein shall include, without limitation, the entire risk of any loss, theft, damage to, or destruction of any unit of Equipment from any cause whatsoever.

2. **INDEMNIFICATION:** Debtor hereby agrees to indemnify Secured Party, its agents, employees, successors and assigns (on an after tax basis) from and against any and all losses, damages, penalties, injuries, claims, actions and suits, including legal expenses, of whatsoever kind and nature arising out of or relating to the Equipment or this Agreement, except to the extent the losses, damages, penalties, injuries, claims, actions, suits or expenses result from Secured Party's gross negligence or willful misconduct ("Claims"). This indemnity shall include, but is not limited to, Secured Party's strict liability in tort and Claims, arising out of (i) the selection, manufacture, purchase, acceptance or rejection of Equipment, the ownership of Equipment during the term of this Agreement, and the delivery, lease, possession, maintenance, uses, condition, return or operation of Equipment (including, without limitation, latent and other defects, whether or not discoverable by Secured Party or Debtor and any claim for patent, trademark or copyright infringement or environmental damage) or (ii) the condition of Equipment sold or disposed of after use by Debtor or employees of Debtor. Debtor shall, upon request, defend any actions based on, or arising out of, any of the foregoing. All of Secured Party's rights, privileges and indemnities contained in this Section 2 shall survive the expiration or other termination of this Agreement. The rights, privileges and indemnities contained herein are expressly made for the benefit of, and shall be enforceable by Secured Party, its successors and assigns.

3. **DISCLAIMER:** DEBTOR ACKNOWLEDGES THAT IT HAS SELECTED THE EQUIPMENT WITHOUT ANY ASSISTANCE FROM SECURED PARTY, ITS AGENTS OR EMPLOYEES. SECURED PARTY DOES NOT MAKE, HAS NOT MADE, NOR SHALL BE DEEMED TO MAKE OR HAVE MADE, ANY WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, WITH RESPECT TO THE EQUIPMENT LEASED UNDER THIS AGREEMENT OR ANY COMPONENT THEREOF, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY AS TO DESIGN, COMPLIANCE WITH SPECIFICATIONS, QUALITY OF MATERIALS OR WORKMANSHIP, MERCHANTABILITY, FITNESS FOR ANY PURPOSE, USE OR OPERATION, SAFETY, PATENT, TRADEMARK OR COPYRIGHT INFRINGEMENT, OR TITLE. All such risks, as between Secured Party and Debtor, are to be borne by Debtor.

IN WITNESS WHEREOF, Debtor and Secured Party have caused this Addendum to be executed by their duly authorized representatives as of the date first above written.

| SECURED PARTY: | DEBTOR: |
|---|---|
| General Electric Capital Corporation | New York MEG, L.L.C. |
| By: _____ | By: _____ |
| Name: Thomas J. Bruce | Name: Jim Cerutti |
| Title: Duly Authorized Signatory | Title: Principal |

 **GE Healthcare Financial Services**

## ACCEPTANCE CERTIFICATE
### RELATING TO SCHEDULE DATED AS OF 05/09/2003
### TO MASTER SECURITY AGREEMENT DATED AS OF 05/09/2003
### INTERNAL CONTRACT REFERENCE NUMBER 8527100
### INTERNAL ORDER REFERENCE NUMBER 861-404086
### EQUIPMENT DESCRIPTION: 4D Neuro Imaging Brain Mapping System

To: General Electric Capital Corporation

Pursuant to the provisions of the above referenced Schedule and Master Security Agreement, the undersigned, on behalf of, and as authorized and instructed by Debtor hereby certifies that the Equipment described in the above-referenced Schedule has been delivered and received; that the Equipment has been fully assembled as required; that installation or other work necessary prior to the use of the Equipment has been fully completed as required; that the Equipment has been examined and/or tested and is in good order and operating condition and is in all respects satisfactory; and that Debtor has accepted the Equipment unconditionally.

The equipment was first delivered to Debtor on 12/26/03 and copies of the bill(s) of lading or other documentation acceptable to Debtor which show the date of delivery are attached hereto.

Debtor has read and reviewed the above-referenced Master Security Agreement and Schedule, and hereby reaffirms and acknowledges its terms and conditions. Debtor further represents and warrants that all representations and warranties made by Debtor in such Master Security Agreement were true and accurate when originally made and are true and accurate as of the date set forth below.

The undersigned hereby certifies and represents that the undersigned is duly authorized to execute and deliver this ACCEPTANCE NOTICE on behalf of the Debtor.

Debtor:
New York MEG, L.L.C.

_____
Authorized Signature

Principal
Title

December 26, 2003
Date

Acceptance Certificate                Page 1 of 1                Rev. 2/24/03


GE Healthcare Financial Services

## AMENDMENT TO
## MASTER SECURITY AGREEMENT DATED AS OF 05/09/2003

This is an Amendment dated as of 10/27/2005 to the Schedule and Master Security Agreement referenced above between General Electric Capital Corporation ("Secured Party") and New York Meg, L.L.C. ("Debtor").

The 8. Access and Removal Section(s) is/(are) hereby amended as follows:

Original - or (x) Debtor improperly files an amendment or termination statement relating to a filed financing statement describing the Equipment;

Amended - or (x) Debtor improperly files an amendment or termination statement relating to a filed financing statement describing the Equipment; or (xi) the letter of credit in the amount of nine hundred fifty thousand dollars ($950,000) pledged in connection with this Agreement for the benefit of Secured Party expires of is unenforceable for any reason.

EXCEPT AS PROVIDED IN THIS AMENDMENT, ALL OTHER TERMS AND CONDITIONS OF THE ABOVE REFERENCED SCHEDULE REMAIN IN FULL FORCE AND EFFECT AS ORIGINALLY WRITTEN.

Secured Party:                                  Debtor:

General Electric Capital Corporation            New York Meg, L.L.C.

By: _____                     By: _____
         Jon D. Storck                                   Jim Cerutti
Print Name: __Vice President__                  Print Name: __Jim Cerutti__

Title: Duly Authorized Signatory                Title: __Vice President__

Amendment                                                          Rev. 10/28/03

(Page 2 of 2) Case 1:07-cv-09715-RJH  Document 13-2  Filed 01/04/2008  Page 9 of 18


**GE Healthcare Financial Services**

## SECOND AMENDMENT TO
## MASTER SECURITY AGREEMENT DATED AS OF 05/09/2003

This is an Amendment dated as of August 25, 2006 to the Master Security Agreement referenced above (as heretofore amended, the "Agreement") between General Electric Capital Corporation ("Secured Party") and New York Meg, L.L.C. ("Debtor").

Section 8(a) of the Agreement, entitled "Default and Remedies" is hereby amended as follows:

The "or" immediately preceding the reference to "(x)" is deleted, and there is added immediately following clause (x) the following text:

"; or (xi) the letter of credit in the amount of nine hundred fifty thousand dollars ($950,000) issued for the account of Debtor to and in favor of Secured Party expires, is terminated or is unenforceable for any reason (except that Debtor shall be permitted to replace such letter of credit with a replacement letter of credit in the same amount, having an expiration date no earlier than August 31, 2007, issued by a financial institution satisfactory to Secured Party, and otherwise in form and substance satisfactory to Secured Party".

EXCEPT AS PROVIDED IN THIS AMENDMENT, ALL OTHER TERMS AND CONDITIONS OF THE AGREEMENT REMAIN IN FULL FORCE AND EFFECT AS ORIGINALLY WRITTEN.

Secured Party:

General Electric Capital Corporation

By: _____

Print Name: _____

Title: Duly Authorized Signatory

Debtor:

New York Meg, L.L.C.

By: _____

Print Name: __Jim Cerutti__

Title: __Vice President__

Amendment                                                                 Rev. 8/24/2006

# EXHIBIT B


**GE Healthcare Financial Services**

## PROMISSORY NOTE
### INTERNAL CONTRACT REFERENCE NUMBER 8527143
### INTERNAL ORDER REFERENCE NUMBER 861-404087

Dated as of _____

FOR VALUE RECEIVED, New York MEG, L.L.C. ("Maker"), located at 3037 South Meridian Street, Indianapolis, IN 46217-3227, promises, jointly and severally if more than one, to pay to the order of General Electric Capital Corporation or any subsequent holder hereof (each, a "Payee") at its mailing address at P.O. Box 641419, Mail Code W-490, Pittsburgh, PA 15264-1419 or at such other place as Payee may designate, the principal sum of $775,000.00, or, if less, the aggregate unpaid principal amount of all advances made by Payee to Maker, as shown on Exhibit A attached hereto, with interest on the unpaid principal balance from time to time outstanding, from and including the date hereof.

Advances under this Promissory Note shall be made from time to time by Payee either to Maker or directly to vendors on Maker's behalf, upon Payee's receipt of Maker's written request on Exhibit B to advance such principal amount (said request to be delivered at least ten (10) days prior to the date the advance is to be made). Each advance shall be noted by Payee on Exhibit A attached hereto. Advances will continue until the "Principal Payment Commencement Date", defined as the earlier of a) six months from the date of this Promissory Note stated above or b) total advances have been made equaling the principal sum disclosed in the first paragraph. No further advances will be made under this Promissory Note after the Principal Payment Commencement Date.

The interest rate with respect to this Promissory Note will be established for each individual advance on Exhibit A, based on the following formula: 8.17% per annum plus or minus, as applicable, the number of points that the yield on 3 Year Treasury Constant Maturities on the date of the advance, is above or below 2.05%, which was established based on the 3 Year Treasury Constant Maturities as of the week ending April 11, 2003, to be paid in lawful money of the United States, in 39 consecutive monthly installments of principal and interest of 3 Months @ $0.00, 12 Months @ $16,000.00, 23 Months @ $29,841.28 (all payments in arrears) and a final installment which shall be in the amount of the total outstanding principal and interest ("Payment Schedule"). The Payment Schedule may be adjusted by Payee for advances less than the principal amount stated above, accrued interest due, or a change in the interest rate. The final Payment Schedule will be detailed on Exhibit A.

At the Principal Payment Commencement Date, Maker will begin paying principal and interest on the advances outstanding, based on the interest rate applicable on the Principal Payment Commencement Date. The first principal and interest installment shall be due and payable _____ and the following installments shall be due and payable on the same day of each succeeding month (each, a "Payment Date"). Maker authorizes Payee to complete the first Payment Date upon the Principal Payment Commencement Date.

Interest will accrue on each advance noted on Exhibit A at the interest rate disclosed in the first paragraph of this Promissory Note, commencing on the date of each individual advance by Payee until the Principal Payment Commencement Date. All accrued interest will be financed and included in the Payment Schedule, based on the interest rate in effect on the Principal Payment Commencement Date.

# PROMISSORY NOTE

All payments shall be applied first to interest and then to principal. The acceptance by Payee of any payment which is less than payment in full of all amounts due and owing at such time shall not constitute a waiver of Payee's right to receive payment in full at such time or at any prior or subsequent time. Interest shall be calculated on the basis of a 360 day year and will be charged for each calendar day on which any principal is outstanding.

Time is of the essence hereof. If any installment of principal and interest or any other sum due under this Promissory Note is not received within ten (10) days after the applicable Payment Date, the Maker agrees to pay in addition to the amount of each such installment a late payment charge of five percent (5%) of said installment, but not exceeding any lawful maximum. In the event that (i) Maker fails to make payment of any amount due hereunder within ten (10) days after the same becomes due and payable; or (ii) Maker defaults or fails to perform under any term or condition contained in any other agreement with Payee, then the entire principal sum remaining unpaid, together with all interest thereon and any other sum payable under this Promissory Note, at the election of Payee, shall immediately become due and payable, with interest thereon at 20% per annum from the date of such accelerated maturity until paid.

The Maker may prepay in full, but not in part, its entire indebtedness hereunder upon payment of an additional sum as a premium equal to the following percentages of the original principal balance for the indicated period:

    Prior to the first annual anniversary date of this Promissory Note: no prepayment permitted;
    Month 13 through and including month 24 of this Promissory Note: four percent (4%);
    Month 25 through and including month 36 of this Promissory Note: three percent (3%);
    Month 37 through and including month 39 of this Promissory Note: two percent (2%); plus all other sums due hereunder.

A default by Maker or any entity managed or controlled by Maker or by any principal of Makers under any other agreement or contract with Payee, regardless of when the agreement or contract was entered into, will, at Payee's sole option, if the default is not cured within ten days after written notice of default, constitute a default under this Promissory Note and all other agreements and contracts between Maker and/or such a principal or entity and Payee.

It is the intention of the parties hereto to comply with the applicable usury laws; accordingly, it is agreed that, notwithstanding any provision to the contrary in this Promissory Note, in no event shall this Promissory Note require the payment or permit the collection of interest in excess of the maximum amount permitted by applicable law. If any such excess interest is contracted for, charged or received under this Promissory Note, or in the event that all of the principal balance shall be prepaid, so that under any of such circumstances the amount of interest contracted for, charged or received under this Promissory Note on the principal balance shall exceed the maximum amount of interest permitted by applicable law, then in such event (a) the provisions of this paragraph shall govern and control, (b) neither Maker nor any other person or entity now or hereafter liable for the payment hereof shall be obligated to pay the amount of such interest to the extent that it is in excess of the maximum amount of interest permitted by applicable law, (c) any such excess which may have been collected shall be either applied as a credit against the then unpaid principal balance or refunded to Maker, at the option of the Payee, and (d) the effective rate of interest shall be automatically reduced to the maximum lawful contract rate allowed under applicable law as now or hereafter construed by the courts having jurisdiction thereof.

It is further agreed that without limitation of the foregoing, all calculations of the rate of interest contracted for, charged or received under this Promissory Note which are made for the purpose of determining whether such rate exceeds the maximum lawful contract rate, shall be made, to the extent permitted by applicable law, by amortizing, prorating, allocating and spreading in equal parts during the period of the full stated term of the indebtedness evidenced hereby, all interest at any time contracted for, charged or received from Maker or otherwise by Payee in connection with such indebtedness; provided, however, that if any applicable state law is amended or the law of the United States of America preempts any applicable state law, so that it becomes lawful for the Payee to receive a greater simple interest per annum rate than is presently allowed, the Maker agrees that, on the effective date of such amendment or preemption, as the case may be, the lawful maximum hereunder shall be increased to the maximum simple interest per annum rate allowed by the higher of the amended state law or the law of the United States of America.

## PROMISSORY NOTE

The Maker and all sureties, endorsers, guarantors or any others (each such person, other than the Maker, an "Obligor") who may at any time become liable for the payment hereof jointly and severally consent hereby to any and all extensions of time, renewals, waivers or modifications of, and all substitutions or releases of any party primarily or secondarily liable on this Promissory Note or any term and provision hereof, which may be made, granted or consented to by Payee, and agree that suit may be brought and maintained against any one or more of them, at the election of Payee without joinder of any other as a party thereto. The Maker and each Obligor hereby waives presentment, demand for payment, notice of nonpayment, protest, notice of protest, notice of dishonor, and all other notices in connection herewith, as well as filing of suit (if permitted by law) and diligence in collecting this Promissory Note, and agrees to pay (if permitted by law) all expenses incurred in collection, including Payee's actual attorneys' fees. Maker and each Obligor hereby waives all benefits of valuation, appraisement and exemption laws.

The Maker and each Obligor hereby waive unconditionally all rights to a jury trial of any claim or cause of action related to, based upon or arising out of this Promissory Note, any related documents, and any dealings between the Maker or any Obligor and the Payee thereto. The scope of this waiver is intended to be all encompassing of any and all disputes that may be filed in any court. This waiver is irrevocable, and may not be modified either orally or in writing. This waiver shall also apply to any subsequent amendments, renewals, supplements or modifications to this Promissory Note and to any other documents or agreements relating to this Promissory Note or any related transaction. In the event of litigation, this Promissory Note may be filed as a written consent to trial by the court.

Maker: New York MEG, L.L.C.

By: _____ (Seal)
Signature

_____Jim Cerutti/Principal_____
Print name (and title, if applicable)

## EXHIBIT A

AMOUNTS ADVANCED UNDER PROMISSORY NOTE
DATED AS OF _____
INTERNAL CONTRACT REFERENCE # 8527143
IN THE PRINCIPAL AMOUNT OF
$775,000.00

| DATE | AMOUNT OF ADVANCE | INTEREST RATE | PAYMENT SCHEDULE | AGGREGATE AMOUNT ADVANCED TO DATE |
|---|---|---|---|---|
|  |  |  |  |  |

**EXHIBIT B**

ADVANCE REQUEST UNDER PROMISSORY NOTE
DATED AS OF _____
INTERNAL CONTRACT REFERENCE # 8527143

Maker, New York MEG, L.L.C., hereby requests an advance under the Promissory Note referenced above in the amount of

$_____.

payable to _____ for the purpose of _____. The amount of this advance request will be recorded on Exhibit A.

_____
Witness

Maker: New York MEG, L.L.C.
By: _[signature]_ (Seal)
Signature
Jim Cerutti/Principal
Print name (and title, if applicable)



**GE Healthcare Financial Services**

Date: February 05, 2004

Attention: New York MEG, L.L.C.
Accounts Payable

Reference: GE Healthcare Financial Services Financing Transaction

    **Equipment:** Tenant Improvements
    **Contract #:** 8527143-001
    **Order #:** 861-404087

Thank you for allowing GE Healthcare Financial Services to help you with your financing needs.

The monthly payment for your financing transaction has been revised due to a change in the 3 Year Treasury Constant Maturities from 2.05% to 2.32% at the time of the financing commencement date. Therefore, your monthly payment has been recalculated and is now: 3 months@ $0.00, 12 months@ $16,575.99, and 24 months@ $30,915.54, plus all applicable taxes. The revised interest rate with respect to this financing agreement is 8.44% per annum. The interest rate shall be calculated on the basis of a 360-day year and will be charged for each calendar day on which any pricipal of the finance Equipment cost is outstanding.

Please contact GE Healthcare Financial Services at (800) 225-7480, if you have any questions regarding the above information. A copy of your fully executed contract and monthly invoices will follow.

                                                             GE Healthcare Financial Services

**GE Healthcare Financial Services**

---

### AMENDMENT TO THE PROMISSORY NOTE DATED AS OF 10/27/2005
### INTERNAL CONTRACT REFERENCE NUMBER 8527143
### INTERNAL ORDER REFERENCE NUMBER 861-404087

This is an Amendment dated as of to the Promissory Note referenced above between General Electric Capital Corporation ("Lender") and New York Meg, L.L.C. ("Debtor").

The Monthly Installments is/(are) hereby amended and restated as follows:

**Original** – To be paid in lawful money of the United States, in 39 consecutive monthly installments of principal and interest of 3 Months @ $0.00, 12 Months @ $16,000.00, 23 Months @ $29,841.28 (all payments in arrears) and a final installment which shall be in the amount of the total outstanding principal and interest ("Payment Schedule").

**Amended** – To be paid in lawful money of the United States, in 12 consecutive monthly installments of principal and interest of 11 Months @ $16,365.04, 1 Months @ $681,070.28 (all payments in arrears) and a final installment which shall be in the amount of the total outstanding principal and interest ("Payment Schedule").

EXCEPT AS PROVIDED IN THIS AMENDMENT, ALL OTHER TERMS AND CONDITIONS OF THE ABOVE REFERENCED SCHEDULE REMAIN IN FULL FORCE AND EFFECT AS ORIGINALLY WRITTEN.

| Lender: | Debtor: |
|---|---|
| General Electric Capital Corporation | New York Meg, L.L.C. |
| By: _[signature]_ | By: _[signature]_ |
| Print Name: Jon D. Storck ~~Vice President~~ | Print Name: Jim Cerutti |
| Title: Duly Authorized Signatory | Title: Vice President |

Amendment (Prom Note)                                                                 Rev. 10/28/03



## SECOND AMENDMENT TO THE PROMISSORY NOTE DATED AS OF 10/27/2005
## INTERNAL CONTRACT REFERENCE NUMBER 8527143
## INTERNAL ORDER REFERENCE NUMBER 861-404087

This is an Amendment dated as of August 25, 2006, to the Promissory Note referenced above, executed and delivered by New York Meg, L.L.C. ("Debtor") to and in favor of General Electric Capital Corporation ("Lender"), as previously amended by that certain Amendment to the Promissory Note Dated as of 10/27/2005 (the "Note").

The following language in the third paragraph of the Note:

"To be paid in lawful money of the United States, in 12 consecutive monthly installments of principal and interest of 11 Months @ $16,365.04, 1 Months @ $681,070.28 (all payments in arrears) and a final installment which shall be in the amount of the total outstanding principal and interest ("Payment Schedule")."

Is hereby amended and restated in its entirety to read as follows:

" To be paid in lawful money of the United States, in 12 consecutive monthly installments of principal and interest of 11 Months @ $15,000.00, 1 Months @ $650,004.28 (all payments in advance) and a final installment which shall be in the amount of the total outstanding principal and interest ("Payment Schedule")."

EXCEPT AS PROVIDED IN THIS AMENDMENT, ALL OTHER TERMS AND CONDITIONS OF THE ABOVE REFERENCED NOTE SHALL REMAIN IN FULL FORCE AND EFFECT AS ORIGINALLY WRITTEN.

Lender:                                    Debtor:

General Electric Capital Corporation       New York Meg, L.L.C.

By: _____                     By: _____

Print Name: Jow Storck                    Print Name: __Jim Cerutti__

Title: Duly Authorized Signatory          Title: __Vice President__

Amendment (Prom Note)                                        Rev. 10/28/03