# EXHIBIT C

**GE Healthcare Financial Services**

## SECURITY AGREEMENT

### 1. SECURITY INTEREST

The undersigned ("Obligor", whether one or more) grants General Electric Capital Corporation ("Company") a security interest in property, wherever located, checked in Section 2 ("Collateral") to secure all debts, obligations and liabilities of Obligor to Company arising out of credit previously granted, credit contemporaneously granted and credit granted in the future by Company to Obligor or to another guaranteed or indorsed by Obligor ("Obligations").

### 2. DESCRIPTION OF COLLATERAL

One or more boxes must be checked.

(a)  X  **All Collateral.** If checked here, all now owned or hereafter acquired equipment, fixtures, inventory (including all goods held for sale, lease or demonstration or to be furnished under contracts of service, goods leased to others, trade-ins and repossessions, raw materials, work in process and materials or supplies used or consumed in Obligor's business), documents relating to inventory, general intangibles, accounts, contract rights, chattel paper and instruments, securities, investment property, deposit accounts, supporting obligations, letter of credit rights, commercial tort claims, and information contained in computer media (such as data bases, source and object codes and information therein), computer equipment, machinery, tools, furniture, together with all additions, attachments, and accessions now and hereafter affixed thereto and/or used in connection therewith, all replacements, thereof and substitutions therefore, and all cash and non-cash proceeds and products thereof.

(b)  ☐  **Scheduled Collateral.** If checked here, all inventory, accounts, contract rights, equipment, general intangibles, instruments, documents of title and chattel paper described in the attached schedule and any additional schedules delivered by Obligor to Company from time to time;

(c)  ☐  **All Inventory.** If checked here, all inventory and documents relating to inventory now owned or hereafter acquired by Obligor, including all goods held for sale, lease or demonstration or to be furnished under contracts of service, goods leased to others, trade-ins and repossessions, raw materials, work in process and materials or supplies used or consumed in Obligor's business;

(d)  ☐  **All Receivables.** If checked here, all accounts, contract rights, chattel paper and instruments now owned or hereafter acquired by Obligor;

(e)  ☐  **All Equipment.** If checked here, all equipment and fixtures now owned or hereafter acquired by Obligor;

(f)  ☐  **All General Intangibles.** If checked here, all general intangibles now owned or hereafter acquired by Obligor; and all additions and accessions to, all spare and repair parts, special tools, equipment and replacements for, all returned or re-possessed goods the sale of which gave rise to, and all proceeds and products of the foregoing.

(g)  ☐  **Specific Collateral.** If checked here, the following described property now owned or hereafter acquired by Obligor

_____

### 3. OBLIGOR'S WARRANTIES

Obligor warrants that while any of the Obligations are unpaid:

(a) **Ownership.** Obligor owns the Collateral free of all encumbrances and security interests (except Company's security interest). Chattel paper constituting Collateral evidences a perfected security interest in the goods covered by it, free from all other encumbrances and security interests, and no financing statement (other than Company's) is on file covering the Collateral or any of it. Obligor, acting alone, may grant a security interest in the Collateral.

(b) **Sale of Goods or Services Rendered.** Each account and chattel paper constituting Collateral as of this date arose from the performance of services by Obligor or from a bona fide sale or lease of goods, which have been delivered or shipped to the account debtor and for which Obligor has genuine invoices, shipping documents or receipts.

(c) **Enforceability.** Each account, contract right and chattel paper constituting Collateral as of this date is genuine and enforceable against the account debtor according to its terms. It and the transaction out of which it arose comply with all applicable laws and regulations. The amount represented by Obligor to Company as owing by each account debtor is the amount actually owing and is not subject to setoff, credit, allowance or adjustment, except discount for prompt payment, nor has any account debtor returned the goods or disputed his or its liability.

(d) **Due Date.** No payment on any account or chattel paper constituting Collateral is as of this date more than 15 days overdue, there has been no default according to the terms of any such Collateral and no step has been taken to foreclose the security interest it evidences or otherwise enforce its payment.

(e) **Financial Condition of Account Debtor.** As of this date Obligor has no notice or knowledge of anything which might impair the credit standing of any account debtor and Obligor will advise Company upon receipt of any such notice or knowledge affecting Collateral.

(f) **Valid Organization.** If a corporation, Obligor is a duly organized, validly existing and in good standing under the laws of the state of organization and if a foreign corporation is licensed to do business in the states in which this transaction takes place.

(g) **Other Agreements.** Obligor is not in default under any agreement for the payment of money.

(h) **Authority to Contract.** The execution and delivery of this Agreement and any instruments evidencing Obligations will not violate or constitute a breach of Obligor's Articles of Incorporation, By-Laws, partnership agreement, operating agreement or any agreement or restriction to which Obligor is a party or is subject.

(i) **Accuracy of Information.** All information, certificates or statements given to Company pursuant to this Agreement shall be true and complete when given. The Obligor's exact legal name is as set forth in the last page of this Agreement.

(j) **Addresses.** The address of Obligor's place of business, or if Obligor has more than one place of business, then the address of the Obligor's chief executive office, is shown opposite Obligor's signature. The address where the Collateral will be kept, if different from that appearing opposite Obligor's signature, is   300 East 39th Street, New York, New Yor  Such locations shall not be changed without prior written consent of Company, but the parties intend that the Collateral, wherever located, is covered by the Agreement.

(k) **Change of Name or Address.** Obligor shall immediately advise Company in writing of any change in name or address.

## 4. SALE AND COLLECTIONS

(a) **Sale of Inventory.** So long as no default exists under any of the obligations or this Agreement, Obligor may (a) sell inventory in the ordinary course of Obligor's business for cash or on terms customary in the trade, at the prices not less than any minimum sale price shown on instruments evidencing Obligations and describing inventory, or (b) lease inventory on terms customary in the trade.

(b) **Verification and Notification.** Upon default Company may at any time and Obligor shall, upon request of Company, notify the account debtors to make payment directly to Company and Company may enforce collection of, settle, compromise, extend or renew the indebtedness of such account debtors. Until account debtors are so notified, Obligor as agent of Company, shall make collections on the Collateral. Company may at any time notify the bailee of any Collateral of Company's security interest.

(c) **Deposit with Company.** At any time Company may require that all proceeds of Collateral received by Obligor shall be held by Obligor upon an express trust for Company, shall not be commingled with any other funds or property of Obligor and shall be turned over to Company in precisely the form received (but endorsed by Obligor if necessary for collection) not later than the business day following the day of their receipt. All proceeds of Collateral received by Company directly or from Obligor shall be applied against the Obligations in such order and at such times as Company shall determine.

## 5. OBLIGOR'S COVENANTS

**Obligor agrees:**

(a) **Maintenance of Collateral.** Obligor shall: maintain the Collateral in good condition and repair and not permit its value to be   impaired; keep it free from all liens, encumbrances and security interests (other than Company's security interest;) defend it against all claims and legal proceedings by persons other than Company; pay and discharge when due all taxes, license fees, levies and other charges upon it; not sell, lease or otherwise dispose of it or permit it to become a fixture or an accession to other goods, except for sales or leases of inventory as provided in this Agreement, not permit it to be used in violation of any applicable law, regulation or policy of insurance; and, as to Collateral consisting of instruments and chattel paper, preserve rights in it against prior parties. Loss of or damage to the Collateral shall not release Obligor from any of the obligations.

(b) **Insurance.** Obligor shall keep the Collateral and Company's interest in it under policies with such provisions, for such amounts and by such insurers as shall be satisfactory to Company from time to time, and shall furnish evidence of such insurance satisfactory to Company. Subject to Company's satisfaction, Obligor is free to select the insurance agent or insurer through which insurance is obtained. Obligor assigns (and directs any insurer to pay) to Company the proceeds of all such insurance and any premium refund, and authorizes Company to endorse in the name of Obligor any instrument for such proceeds or refunds and, at the option of Company, to apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to restoration of the Collateral, returning any excess to Obligor. Company is authorized, in the name of Obligor or otherwise, to make, adjust and/or settle claims under any credit insurance financed by Company or any insurance on the Collateral, or cancel the same after the occurrence of an event of default.

(c) **Maintenance of Security Interest.** Obligor shall pay all expenses and, upon request, take any action reasonably deemed advisable by Company to preserve the Collateral or to establish, determine priority of, perfect, continue perfected, terminate and/or enforce Company's interest in it or rights under this Agreement.

(d) **Taxes and other charges.** Obligor shall pay and discharge all lawful taxes, assessments and government charges upon Obligor or against its properties prior to the date on which penalties attach, unless and the extent only that such taxes, assessments and charges are contested in good faith and by appropriate proceedings by Obligor.

(e) **Records and statements.** Obligor shall keep accurate and complete records respecting the Collateral in such form as Company may approve. At such times as Company may require, Obligor shall furnish to Company a statement certified by Obligor and in such form and containing such information as may be prescribed by Company, showing the current status and value of the Collateral.

(f) **Inspection of Collateral.** At reasonable times Company may examine the Collateral and Obligor's records pertaining to it, wherever located, and make copies of records. Obligor shall assist Company in so doing.

(g) **Chattel Paper.** Company may require that chattel paper constituting Collateral shall be on forms approved by Company, Obligor shall promptly make all such chattel paper, and all copies, to indicate conspicuously the Company's interest and, upon request, deliver them to Company.

## 6. RIGHTS OF COMPANY

(a) **Authority to Perform for Obligor.** Upon the occurrence of an event of default or if Obligor fails to perform any of Obligor's duties set forth in this Agreement or in any evidence of or document relating to the Obligations, Company is authorized, in Obligor's name or otherwise, to take any such action including without limitation signing Obligor's name or paying any amount so required, and the cost shall be one of the Obligations secured by this Agreement and shall be payable by Obligor upon demand with interest from the date of payment by Company at the highest rate stated in any evidence of any Obligation but not in excess of the maximum rate permitted by law.

Security Agreement                                                                                       (Rev. 4/28/03)

(b) **Power of attorney.** Obligor irrevocably appoints any officer of Company as Obligor's attorney, with power after an event of default to receive, open and dispose of all mail addressed as to Obligor; and to notify the Post Office authorities to change the address for delivery of all mail address to Obligor to such address as Company may designate.

## 7. DEFAULT

(a) The following events shall constitute an event of default hereunder:

(i) **Nonperformance.** Obligor fails to pay when due any of the Obligations or to perform, or rectify breach of, any warranty or other undertaking by Obligor in this Agreement or in any evidence of or document relating to the Obligations;

(ii) **Inability to Perform.** Obligor ceases to exist, becomes insolvent or the subject of bankruptcy or insolvency proceedings;

(iii) **Misrepresentation.** Any representation made to induce Company to extend credit to Obligor, under this Agreement or otherwise, is false in any material respect when made; or

(iv) **Insecurity.** Any other event which causes Company in good faith to deem itself insecure.

(b) Upon an event of default, all of the Obligations shall, at the option of Company and without any notice or demand, become immediately payable, and Company shall have the following remedies as well as all other rights and remedies for default provided by the Wisconsin Uniform Commercial Code, and any other applicable law and any document relating to the Obligations:

(i) **Repossession.** Company may take possession of Collateral without notice or hearing, which Obligor waives.

(ii) **Assembling Collateral.** Company may require Obligor to assemble the Collateral and to make it available to Company at any convenient place designated by Company.

(iii) **Expenses and Application of Proceeds.** Obligor shall reimburse Company for any expense incurred by Company in protecting or enforcing its rights under this Agreement before and after judgment, including, without limitation, reasonable attorney's fees and legal expenses and all expenses of taking possession, holding, preparing for disposition and disposing of the Collateral. After deduction of such expenses, Company may apply the proceeds of disposition to the Obligations in such order and amounts as it elects.

(c) **Notice of Disposition.** Written notice, when required by law, sent to any address of Obligor in this Agreement at least ten (10) calendar days (counting the day of sending) before the date of proposed disposition of the Collateral is reasonable notice.

(d) **Waiver.** Company may permit Obligor to remedy any default without waiving the default so remedied, and Company may waive any default without waiving any other subsequent or prior default by Obligor.

## 8. MISCELLANEOUS

(a) Obligor agrees to promptly reimburse the Company for actual out-of-pocket expenses, including without limitation, reasonable counsel fees, incurred by the Company in connection with the administration and enforcement of this Agreement.

(b) THIS AGREEMENT SHALL BE BINDING UPON OBLIGOR AND ITS SUCCESSORS AND ASSIGNS (INCLUDING A DEBTOR-IN-POSSESSION ON BEHALF OF OBLIGOR), AND SHALL INURE TO THE THE BENEFIT OF, AND BE ENFORECEABLE BY, THE COMPANY AND ITS SUCCESSORS AND ASSIGNS, AND SHALL BE GOVERNED BY, AND CONSTURED AND ENFORECED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF WISCONSIN APPLICABLE TO THE CONTRACTS MADE AND PERFORMED IN THAT STATE, AND NONE OF THE TERMS OR PROVISIONS OF THIS AGREEMENT MAY BE WAIVED, ALTERED MODIFIED OR AMENDED EXCEPT IN WRITING DULY SIGNED FOR AND ON BEHALF OF THE COMPANY AND OBLIGOR.

(c) If for any reason any provision or provisions hereof are determined to be invalid and contrary to any existing or future law, such invalidity shall not impair the operation of or effect those portions of this Agreement which are valid.

(d) Except as otherwise provided herein, whenever it is provided herein that any notice, demand, request, consent, approval, declaration or other communication shall or may be given by Company to Obligor, each such notice, demand, request, consent, approval, declaration or other communication shall be in writing and shall be given to Obligor at the address below.

(e) This Agreement may be executed in any number of separate counterparts by one or more of the parties hereto and all of said counterparts taken together shall constitute one and the same instrument.

The obligations hereunder, if involving more than one Obligor, shall be joint and several.

Signed this 14 day of May ,2003.

Obligor:

New York Meg, L.L.C.

By: _____
Authorized Signature

( _____ Principal _____ )
Title

_____

_____

Security Agreement

(Rev. 4/28/03)

Page 3 of 4

Case 1:07-cv-09715-RJH     Document 13-3     Filed 01/04/2008     Page 5 of 19

Address

# EXHIBIT D

 **GE Healthcare Financial Services**

**Internal Contract Ref. # 8527100**
**Internal Order Ref. # 861-404086**

# EQUIPMENT SCHEDULE
## DATED AS OF 05/09/2003
## TO MASTER SECURITY AGREEMENT
## DATED AS OF 05/09/2003

This Schedule is executed pursuant to, and incorporates by reference the terms and conditions of the Master Security Agreement identified above ("Agreement"). Except as provided herein, capitalized terms not defined herein shall have the meanings assigned to them in the Agreement.

**1.    EQUIPMENT:** Subject to the terms and conditions of the Agreement, Secured Party agrees in the case of GE Equipment to sell to Debtor, and in the case of non-GE Equipment to finance Debtor's purchase of, the Equipment described below (the "Equipment").

| Number of Units | Site | Supplier/ Manufacturer | Financed Equipment Cost | Model, VIN #, Unit # and/or Type Of Equipment |
|---|---|---|---|---|
| 1 | New York MEG Center, LLC 300 East 39th Street New York, NY 10016-2140 | 4-D Neuroimaging 9727 Pacific Heights Blvd San Diego, CA 92121 | $2,491,000.00 | 4D Neuro Imaging Brain Mapping System |

**2.    TERMS AND INSTALLMENTS:**

**A.    Term of Schedule:** 39 months.  The term of this Schedule will commence on the Term Commencement Date specified in the "Financing, Term and Termination" section of the Agreement and continue for the term specified immediately above, subject to and in accordance with the terms and conditions of this Schedule.

**B.    Down Payment:** $0.00. Debtor's payment of the down payment to Secured Party will be made on or before execution and return of this Schedule.  Secured Party's retention of the down payment is subject to the "Monthly Installments/Down Payments" section of the Agreement.

**C.    Monthly Installment:** 3 Months @ $0.00; 12 Months @ $45,490.00; 24 Months @ $97,528.78, plus all applicable taxes. All payments will be in arrears.  In states assessing sales and use tax, your Monthly Installments will be adjusted to include the applicable sales and use tax at the same rate that was used to calculate your Monthly Installments under this Agreement. Debtor's payment of Monthly Installments to Secured Party will be in accordance with the "Monthly Installments/Down Payments" section of the Agreement. The interest rate with respect to this Schedule will be established on the Term Commencement Date. The interest rate will be equal to 7.45% per annum plus or minus, as applicable, the number of points that the yield on 3 Year Interest Rate Swaps on the Term Commencement Date is above or below 2.36%, which was established based on the 3 Year Interest Rate Swaps as of the week ending 4/4/2003. The interest rate shall be calculated on the basis of a 365-day year and will be charged for each calendar day on which any principal of the financed Equipment cost is outstanding.

**3.    PREPAYMENT PENALTY.** The Debtor may prepay in full, but not in part, its entire indebtedness hereunder upon payment of an additional sum as a premium equal to the following percentages of the original financed Equipment cost for the indicated period:

Prior to the first annual anniversary date of this Schedule: no prepayment permitted

Month thirteen (13) through and including month twenty-four (24) of this Schedule:  four percent (4%)

Month twenty-five (25) through and including month thirty-six (36) of this Schedule:  three percent (3%)

Month thirty-seven (37) through and including month forty-eight (48) of this Schedule:  two percent (2%)

And one percent (1%) thereafter, plus all other sums due hereunder.

**4.    AUTODRAFTING:**

**A.    Debtor** hereby authorizes Secured Party to initiate debit entries for Debtor's payment of the charges which are due periodically under this Schedule and any service contracts relating to the Equipment and the financial institution indicated below to debit with the amounts thereof the account listed below.

Financial Institution Name: **First Bank**
Financial Institution    PO Box 390
Address:    996 S. State Rd. 135

City: **Greenwood**    State: **IN** Zip: **46143**

B.    The following information can be provided from Debtor's check so please attach a copy of a voided check:

Account Name: **New York MEG, L.L.C.**

Nine-digit Financial Institution ID Number: **074908471**

Your Financial Institution Account Number: **408916**

C.    Debtor further authorizes Secured Party to adjust the dollar amount transferred from Debtor's account to correspond to periodic changes in the payment due, if any, under the terms of this Schedule.

D.    Debtor hereby authorizes Secured Party to automatically debit all current or past due property taxes (if applicable).

E.    Rules and Regulations

(i)    Debtor understands that due to the difference in timing between the Term Commencement Date and the booking of this Schedule, the initial debit may be for more then one periodic charge but will not be more than the actual total monthly amounts due at that time.

(ii)    Failure to have adequate funds in Debtor's account shall constitute an event of default under this Schedule.

(iii)    Debtor understands that it will continue to receive an invoice each month as notification of the amount to be debited from its account.

(iv)    Debtor must provide Secured Party with written notice at least 30 days in advance of Debtor's intent to revoke, terminate of modify this authorization of the information contained herein. In the event Debtor revokes or terminates this authorization, Debtor must remit its periodic charges directly to Secured Party at the address specified in the Agreement. Failure to pay the periodic charges on or before the due date shall constitute an event of default under this Schedule.

(v)    If a deduction is made in error, Debtor has the right to be immediately refunded by Secured Party for the amount of the erroneous deduction provided that Debtor provides written notification of the erroneous deduction within 15 days after its account statement is issued or 45 days after the monies are paid to Secured Party.

5.    Debtor does further certify that as of the date hereof (i) Debtor is not in default under the Agreement; (ii) the representations and warranties made by Debtor pursuant to or under the Agreement are true and correct on the date hereof and (iii) Debtor has reviewed and approves of the purchase documents for the Equipment, if any.

6.    Any modified or additional terms and conditions of this Schedule are set forth in the following attachments to this Schedule: _____.

7.    Except as expressly modified hereby, all terms and provisions of the Agreement shall remain in full force and effect.

SECURED PARTY:

**General Electric Capital Corporation**

By: _Thomas J. Bruce_
Name: _Thomas J. Bruce_
Title:    Duly Authorized Signatory

DEBTOR:

**New York MEG, L.L.C.**

By: _____
Name: _Jim Cerutti_
Title: _Principal_

 **GE Healthcare Financial Services**

### ADDENDUM TO SCHEDULE DATED AS OF 05/09/2003
### TO MASTER LOAN AGREEMENT DATED AS OF 05/09/2003
### INTERNAL CONTRACT REFERENCE NUMBER 8527100
### INTERNAL ORDER REFERENCE NUMBER 861-404086

### DISTRIBUTIONS RESTRICTIONS

This Addendum dated 05/07/2003, between General Electric Capital Corporation (hereinafter "Lessor") and New York Meg, L.L.C. (hereinafter "Lessee") is attached to and made a part of Schedule to the Master Agreement referenced above by and between Lessor and Lessee (hereinafter "Agreement"). Unless otherwise noted, all terms used herein have the same meaning they are accorded in the Agreement. The Schedule is hereby amended and supplemented as follows:

WHEREAS, Lessor, as an inducement to enter into the Agreement, desires Lessee to subordinate payment of shareholder salaries, bonuses, commission, fees and/or dividends to the payment of any Monthly Rental payments that may be then due and payable to Lessor by Lessee under the Agreement.

NOW THEREFORE, in consideration of the foregoing, it is hereby mutually agreed between Lessor and Lessee as follows:

1. During the term of this Schedule, no salary, bonus, commission, management and billing fees and/or dividend will be paid to any shareholder or partners of Lessee unless and until any and all Monthly Rental payments that are then currently due and payable to Lessor under the Agreement have been paid in full.

2. For purposes of this Agreement, the term "shareholder" includes any and all shareholders who become such subsequent to the date of this Agreement.

**Lessor:**

**General Electric Capital Corporation**

By:  _Thomas A. Bonner_

Title:  _Duly Authorized Signatory_

**Lessee:**

**New York Meg, L.L.C.**

By:  _(signature)_

Title:  _Principal_

Distribution Restrictions – short version

Page 1 of 1

Rev. 7/15/02

**GE Healthcare Financial Services**

## AMENDMENT TO SCHEDULE DATED AS OF 05/09/2003
## TO MASTER SECURITY AGREEMENT DATED AS OF 05/09/2003
## INTERNAL CONTRACT REFERENCE NUMBER 8527100

This is an Amendment dated as of 10/27/2005 to the Schedule and Master Security Agreement referenced above between General Electric Capital Corporation ("Secured Party") and New York Meg, L.L.C. ("Debtor").

### Original

| Number of Units | Site | Supplier/ Manufacturer | Financed Equipment Cost | Model, VIN #, Unit # and/or Type Of Equipment |
|---|---|---|---|---|
| 1 | New York MEG Center, LLC 300 East 39th Street New York, NY 10016-2140 | 4-D Neuroimaging 9727 Pacific Heights Blvd San Diego, CA 92121 | $2,491,000.00 | 4D Neuro Imaging Brain Mapping System |

### Amended

| Number of Units | Site | Supplier/ Manufacturer | Financed Equipment Cost | Model, VIN #, Unit # and/or Type Of Equipment |
|---|---|---|---|---|
| 1 | New York MEG Center, LLC 300 East 39th Street New York, NY 10016-2140 | 4-D Neuroimaging 9727 Pacific Heights Blvd San Diego, CA 92121 | $2,167,556.76 | 4D Neuro Imaging Brain Mapping System |

### Original

**TERMS AND INSTALLMENTS:**

Term of Schedule: 39 months. The term of this Schedule will commence on the Term Commencement Date specified in the "Financing, Term and Termination" section of the Agreement and continue for the term specified immediately above, subject to and in accordance with the terms and conditions of this Schedule.

### Amended

**TERMS AND INSTALLMENTS:**

Term of Schedule 12 months. The Term of this Schedule will commence on 10/25/2005 (the "Term Commencement Date") and continue for the term specified immediately above, subject to and in accordance with the terms and conditions of this Schedule.

Amendment                                                                          Rev. 10/28/03

The Monthly Installment Section(s) is/(are) hereby amended as follows:

**Original** - Monthly Installment: 3 Months @ $0.00; 12 Months @ $45,490.00; 24 Months @ $97,528.78, plus all applicable taxes. All payments will be in arrears. In states assessing sales and use tax, your Monthly Installments will be adjusted to include the applicable sales and use tax at the same rate that was used to calculate your Monthly Installments under this Agreement. Debtor's payment of Monthly Installments to Secured Party will be in accordance with the "Monthly Installments/Down Payments" section of the Agreement.

**Amended** - Monthly Installment: 11 Months @ $43,784.45, 1 Months @ $1,842,808.48,plus all applicable taxes. All payments will be in arrears. In states assessing sales and use tax, your Monthly Installments will be adjusted to include the applicable sales and use tax at the same rate that was used to calculate your Monthly Installments under this Agreement. Debtor's payment of Monthly Installments to Secured Party will be in accordance with the "Monthly Installments/Down Payments" section of the Agreement.

EXCEPT AS PROVIDED IN THIS AMENDMENT, ALL OTHER TERMS AND CONDITIONS OF THE ABOVE REFERENCED SCHEDULE REMAIN IN FULL FORCE AND EFFECT AS ORIGINALLY WRITTEN.

Secured Party:                                    Debtor:

General Electric Capital Corporation              New York Meg, L.L.C.

By: _____                     By: _____

Print Name: _Jon D. Storck_                       Print Name: __Jim Cerutti__
            Vice President

Title: Duly Authorized Signatory                  Title: __Vice President__



 **GE Healthcare Financial Services**

## SECOND AMENDMENT TO SCHEDULE DATED AS OF 05/09/2003
## TO MASTER SECURITY AGREEMENT DATED AS OF 05/09/2003
## INTERNAL CONTRACT REFERENCE NUMBER 8527100

This is an Amendment dated as of August 25, 2006 to the Schedule referenced above between General Electric Capital Corporation ("Secured Party") and New York Meg, L.L.C. ("Debtor'), as previously amended by that certain Amendment to Schedule Dated as of 5/09/2003.

### Original

| Number of Units | Site | Supplier/ Manufacturer | Financed Equipment Cost | Model, VIN #, Unit # and/or Type Of Equipment |
|---|---|---|---|---|
| 1 | New York MEG Center, LLC 300 East 39th Street New York, NY 10016-2140 | 4-D Neuroimaging 9727 Pacific Heights Blvd San Diego, CA 92121 | $2,167,556.76 | 4D Neuro Imaging Brain Mapping System |

### Amended

| Number of Units | Site | Supplier/ Manufacturer | Financed Equipment Cost | Model, VIN #, Unit # and/or Type Of Equipment |
|---|---|---|---|---|
| 1 | New York MEG Center, LLC 300 East 39th Street New York, NY 10016-2140 | 4-D Neuroimaging 9727 Pacific Heights Blvd San Diego, CA 92121 | $2,061,730.73 | 4D Neuro Imaging Brain Mapping System |

### Original

**TERMS AND INSTALLMENTS:**

Term of Schedule: 12 months. The term of this Schedule will commence on 10/25/2005 (the "Term Commencement Date") and continue for the term specified immediately above, subject to and in accordance with the terms and conditions of this Schedule.

### Amended

**TERMS AND INSTALLMENTS:**

Term of Schedule 12 months. The Term of this Schedule will commence on 8/25/2006 (the "Term Commencement Date") and continue for the term specified immediately above, subject to and in accordance with the terms and conditions of this Schedule.

Amendment

Rev. 10/28/03

The Monthly Installment Section is hereby amended as follows:

**Original** - Monthly Installment: 11 Months @ $43,784.45, 1 Month @ $1,842,808.48, plus all applicable taxes. All payments will be in arrears. In states assessing sales and use tax, your Monthly Installment will be adjusted to include the applicable sales and use tax at the same rate that was used to calculate your Monthly Installments under this Agreement. Debtor's payment of Monthly Installments to Secured Party will be in accordance with the "Monthly Installments/Down Payments" section of the Agreement.

**Amended** - Monthly Installment: 11 Months @ $40,000.00, 1 Months @ $1,762,782.30, plus all applicable taxes. All payments will be in advance. In states assessing sales and use tax, your Monthly Installments will be adjusted to include the applicable sales and use tax at the same rate that was used to calculate your Monthly Installments under this Agreement. Debtor's payment of Monthly Installments to Secured Party will be in accordance with the "Monthly Installments/Down Payments" section of the Agreement.

EXCEPT AS PROVIDED IN THIS AMENDMENT, ALL OTHER TERMS AND CONDITIONS OF THE ABOVE REFERENCED SCHEDULE SHALL REMAIN IN FULL FORCE AND EFFECT AS ORIGINALLY WRITTEN.

Secured Party:                           Debtor:

General Electric Capital Corporation      New York Meg, L.L.C.

By: _____            By: _____

Print Name: __Jon Searcy_____           Print Name: __Jim Cerutti_____

Title: Duly Authorized Signatory          Title: __Vice President_____

# EXHIBIT E

P-ZAHL-O/019169

```
From: PRODUCTION
  To: P-ZAHL-O
--------------------------------------------------------------------------
  RFK: KRED/000158              Printed On: 2003-06-13 12:43:01      Page No:   1
  TRN: GA 3849
--------------------------------------------------------------------------
* Outgoing *
     MT: 799 Free Format Message
 Sender: PRODUCTION
         AIG, 8021 ZUERICH
         Zuerich
Receiver: BKTRUS33XXX
         DEUTSCHE BANK TRUST COMPANY AMERICA
         NEW YORK
         FIN    /FIN-L   /BKTRUS33XXX/3814/619329/03-06-13 12:43:01
  Owner: KREDITABTEILUNG                  Internal Priority: Normal
  Stage: Post-Xmt                           Next Activity: Micro-F
  Input: TERMINAL/        /0000  /000158/2003-06-13 11:40:07
```

--------------------------------------------------------------------------

:20: Transaction Reference Number:   GA 3849
:21: Related Reference:              UNKNOWN
:79: Narrative:

DEAR SIRS
PLEASE FORWARD THE FOLLOWING STAND-BY LETTER
OF CREDIT NO. 3849 TO
GENERAL ELECTRIC CAPITAL CORPORATION
C/O GE HEALTHCARE FINANCIAL SERVICES
20225 WATERTOWER BLVD.
SUITE 400
BROOKFIELD, WI 53045
ATTN. MR TOM BRUCE
UNDER OUR FULL RESPONSIBILITY

QUOTE
PAGE NO. 1
BENEFICIARY
GENERAL ELECTRIC CAPITAL CORPORATION
C/O GE HEALTHCARE FINANCIAL SERVICES
20225 WATERTOWER BLVD.
SUITE 400
BROOKFIELD, WI 53045
ATTN. MR TOM BRUCE

RE: IRREVOCABLE STAND-BY LETTER OF CREDIT
NO. 3849 FOR USD 950'000.---.

GENTLEMEN:
WE HEREBY ISSUE OUR  IRREVOCABLE STAND-BY LETTER
OF CREDIT NO. 3849 IN FAVOUR OF GENERAL ELECTRIC
CAPITAL CORPORATION, A NEW YORK CORPORATION
(''GE CAPITAL''), FOR THE ACCOUNT OF ONE OF OUR
CUSTOMERS.

WE UNDERTAKE TO HONOR FROM TIME TO TIME YOUR
DRAFT OF DRAFTS AT SIGHT DRAWN ON US NOT EXCEEDING
IN THE AGGREGATE THE AMOUNT OF USD 950'000.--
--------------------------------------------------------------------------

```
From: PRODUCTION                                         P-ZAHL-O/019170
  To: P-ZAHL-O
--------------------------------------------------------------------------
 RFK: KRED/000159           Printed On: 2003-06-13 12:43:08      Page No:   1
 TRN: GA 3849
--------------------------------------------------------------------------
* Outgoing *
      MT: 799 Free Format Message
  Sender: PRODUCTION
          AIG, 8021 ZUERICH
          Zuerich
Receiver: BKTRUS33XXX
          DEUTSCHE BANK TRUST COMPANY AMERICA
          NEW YORK
          FIN    /FIN-L   /BKTRUS33XXX/3814/619330/03-06-13 12:43:08
   Owner: KREDITABTEILUNG                Internal Priority: Normal
   Stage: Post-Xmt                         Next Activity: Micro-F
   Input: TERMINAL/       /0000  /000159/2003-06-13 12:01:06
```
--------------------------------------------------------------------------
```
:20: Transaction Reference Number:   GA 3849
:21: Related Reference:              UNKNOWN
:79: Narrative:
(OUR STAND-BY LETTER OF CREDIT NO. 3849,
PAGE NO. 2)

(U.S. DOLLARS NINE HUNDRED AND FIFTY THOUSAND)
UPON PRESENTATION OF THE DOCUMENT LISTED BELOW.
ALL DRAFTS HEREUNDER MUST BE MARKED ''DRAWN
UNDER IRREVOCABLE STAND-BY LETTER OF CREDIT
NO. 3849, DATED JUNE 13, 2003''.

REQUIRED DOCUMENT:

NOTIFICATION OF DEFICIENCY INDICATING A DEFICIENCY
BY NEW YORK MEG, L.L.C. (''NY MEG'') OF CERTAIN
PROVISIONS ON THE LOAN FACILITY PROVIDED BY GE
CAPITAL TO NY MEG, SUCH NOTIFICATION TO BE SIGNED
BY RESPONSIBLE PERSON FROM GE CAPITAL.

PRESENTATION OF DRAFTS - UNDER THIS STAND-BY
LETTER OF CREDIT MAY BE MADE AT ANY TIME ON OR
BEFORE THE EXPIRY DATE HEREOF AT OUR OFFICES
LOCATED AT AIG PRIVATE BANK LTD., PELIKANSTRASSE
37, 8001 ZUERICH, SWITZERLAND. PRESENTATION ON OR
BEFORE NOON OF ANY OTHER THAN A SATURDAY, SUNDAY
OR OTHER DAY ON WHICH ALL COMMERCIAL BANKS IN
ZUERICH, SWITZERLAND ARE AUTHORIZED OR REQUIRED
TO BE CLOSED (''BANKING DAY'') SHALL RESULT IN
PAYMENT TO GE CAPITAL ON THE SAME DATE. DRAFTS
PRESENTED AFTER NOON OR ON ANY DAY OTHER THAN A
BANKING DAY, SHALL RESULT IN PAYMENT TO GE CAPITAL
ON THE NEXT BANKING DAY. WE HEREBY WAIVE ANY
RIGHT THAT WE MAY OTHERWISE HAVE TO DELAY PAYMENT
TO A LATER DATE.

PARTIAL DRAWINGS ARE PERMITTED, AND THIS STAND-BY
LETTER OF CREDIT SHALL, EXCEPT TO THE EXTENT
```
--------------------------------------------------------------------------

From: PRODUCTION                                         P-ZAHL-O/019171
   To: P-ZAHL-O
------------------------------------------------------------------------
 RFK: KRED/000160            Printed On: 2003-06-13 12:43:10    Page No:   1
 TRN: GA 3849
------------------------------------------------------------------------
* Outgoing *
      MT: 799 Free Format Message
   Sender: PRODUCTION
           AIG, 8021 ZUERICH
           Zuerich
 Receiver: BKTRUS33XXX
           DEUTSCHE BANK TRUST COMPANY AMERICA
           NEW YORK
           FIN    /FIN-L   /BKTRUS33XXX/3814/619331/03-06-13 12:43:10
   Owner: KREDITABTEILUNG             Internal Priority: Normal
   Stage: Post-Xmt                    Next Activity: Micro-F
   Input: TERMINAL/      /0000  /000160/2003-06-13 12:19:02

------------------------------------------------------------------------
 :20: Transaction Reference Number:   GA 3849
 :21: Related Reference:              UNKNOWN
 :79: Narrative:

OUR STAND-BY LETTER OF CREDIT NO. 3849,
PAGE NO. 3)

REDUCED THEREBY, SURVIVE ANY PARTIAL DRAWINGS.

THIS STAND-BY LETTER OF CREDIT IS VALID THROUGH
AND INCLUDING APRIL 29, 2005. THIS STAND-BY LETTER
OF CREDIT MAY BE EXTENDED BY NOT MORE THAN SIX
MONTHS BY NOTIFICATION BY GE CAPITAL THAT CERTAIN
PROVISIONS HAVE NOT BEEN MET BY NY MEG. SUCH
NOTIFICATION MUST BE RECEIVED NOT LATER THAN
15 DAYS BEFORE THE EXPIRY DATE.

ANY NOTICE TO GE CAPITAL IN CONNECTION WITH THIS
STAND-BY LETTER OF CREDIT SHALL BE IN WRITING AND
SHALL BE DELIVERED IN HAND WITH RECEIPT
ACKNOWLEDGED, OR BY CERTIFIED MAIL (RETURN RECEIPT
REQUESTED) OR OTHER COURIER SERVICE, TO GE
HEALTHCARE FINANCIAL SERVICES, AT 20225 WATERTOWER
BLVD., SUITE 400, BROOKFIELD, WI 53045,
ATTENTION: MR TOM BRUCE (OR AT SUCH  OTHER ADDRESS
FOR ANY SUCH NOTICE WHICH GE CAPITAL MAY HEREAFTER
SPECIFY IN A WRITTEN NOTICE DELIVERED TO THE
UNDERSIGNED).

WE AGREE THAT WE SHALL HAVE NOT DUTY OR RIGHT TO
INQUIRE AS TO THE BASIS UPON WHICH GE CAPITAL HAS
DETERMINED TO PRESENT TO US ANY DRAFT UNDER THIS
STAND-BY LETTER OF CREDIT. WE HEREBY WAIVE ANY
DEFENSE BASED UPON ANY ALLEGATIONS OF FRAUD.

THIS STAND-BY LETTER OF CREDIT IS TRANSFERABLE IN
ITS ENTIRETY AND NOT IN PART TO ANY TRANSFEREE.
UPON ANY SUCH TRANSFER, ALL REFERENCES HEREIN TO
------------------------------------------------------------------------

```
From: PRODUCTION                                              P-ZAHL-O/019172
  To: P-ZAHL-O
-----------------------------------------------------------------------------
 RFK: KRED/000161              Printed On: 2003-06-13 12:43:13    Page No:   1
 TRN: GA 3849
-----------------------------------------------------------------------------
* Outgoing *
     MT: 799 Free Format Message
  Sender: PRODUCTION
          AIG, 8021 ZUERICH
          Zuerich
Receiver: BKTRUS33XXX
          DEUTSCHE BANK TRUST COMPANY AMERICA
          NEW YORK
          FIN    /FIN-L  /BKTRUS33XXX/3814/619332/03-06-13 12:43:13
  Owner: KREDITABTEILUNG                    Internal Priority: Normal
  Stage: Post-Xmt                            Next Activity: Micro-F
  Input: TERMINAL/      /0000  /000161/2003-06-13 12:32:09
```

-----------------------------------------------------------------------------

:20: Transaction Reference Number:   GA 3849
:21: Related Reference:              UNKNOWN
:79: Narrative:

(OUR STAND-BY LETTER OF CREDIT NO. 3849,
 PAGE NO. 4)

THE BENEFICIARY SHALL BE AUTOMATICALLY CHANGED TO
SUCH TRANSFEREE, AND THE DRAFT(S) MAY BE ISSUED
BY SUCH TRANSFEREE RATHER THAN THE BENEFICIARY.

THIS IRREVOCABLE STAND-BY LETTER OF CREDIT IS
SUBJECT TO THE UNIFORM CUSTOMS AND PRACTICE FOR
DOCUMENTARY CREDITS (1993 REVISION ICC NO. 500)
AND, TO THE EXTENT NOT INCONSISTENT THEREWITH,
THE UNIFORM COMMERCIAL CODE OF THE STATE OF
CALIFORNIA (''IN ALABAMA, MICHIGAN AND NEW YORK
ADD: ''(WITH THE EXPRESS EXCEPTION OF SECTION
5-102(4) THEREOF)'').

ALL OF THE TERMS AND CONDITIONS OF THIS STAND-BY
LETTER OF CREDIT ARE CONTAINED HEREIN AND SHALL
NOT BE ALTERED EXCEPT BY REDUCTION IN THE
AMOUNT DUE TO CORRESPONDING PAYMENTS IN THE
AMOUNT IN COMPLIANCE WITH THE AFOREMENTIONED
TERMS. EXCEPT AS OTHERWISE EXPRESSLY SET FOURTH
HEREIN, THERE ARE NO CONDITIONS TO THIS STAND-BY
LETTER OF CREDIT.

VERY TRULY YOURS
AIG PRIVATE BANK LTD.
UNQUOTE

THANK YOU VERY MUCH FOR YOUR FORWARDING
AIG PRIVATE BANK LTD.
-----------------------------------------------------------------------------
Message History:
                     Action  User                          Stage    Next Act
Date      Time       Xmt Rslt Net Prio Recipient    DelServ ComServ Com Seq#
```

P-ZAHL-O/036882

```
From: PRODUCTION
   To: P-ZAHL-O
--------------------------------------------------------------------------------
  RFK: ZAHL/041100              Printed On: 2006-10-30 17:55:28    Page No:   1
  TRN: KRED/DASA
--------------------------------------------------------------------------------
* Outgoing *
        MT: 799 Free Format Message
   Sender: PRODUCTION
           AIG PRIVATE BANK LTD.
           ZURICH
 Receiver: DEUTUS33XXX
           DEUTSCHE BANK AG
           NEW YORK
           FIN    /FIN-L   /DEUTUS33XXX/4946/020265/06-10-30 17:55:00
    Owner: ZAHLUNGSVERKEHR                      Internal Priority: Normal
    Stage: Post-Xmt                               Next Activity: Micro-F
    Input: TERMINAL/       /0000  /041100/2006-10-30 17:47:15
```

```
--------------------------------------------------------------------------------
:20: Transaction Reference Number:   KRED/DASA
:79: Narrative:
PLEASE FORWARD THE FOLLOWING AMENDMENT
OF OUR STAND-BY LETTER OF CREDIT 3849 TO:
GENERAL ELECTRIC CAPITAL CORPORATION
C/O GE HEALTHCARE FINANCIAL SERVICES
20225 WATERTOWER BLVD.
SUITE 400
BROOKFIELD, WI 53045
UNDER OUR FULL RESPONSIBILITY
QUOTE
WE REFER TO OUR IRREVOCABLE STAND-BY LETTER OF
CREDIT NO. 3849, IN THE AMOUNT OF USD 950'000,
IN FAVOUR OF GENERAL ELECTRIC CAPITAL CORPORATION,
A NEW YORK CORPORATION (GE CAPITAL), VALID UNTIL
OCTOBER 31, 2006, FOR THE ACCOUNT OF ONE OF OUR
CUSTOMERS.
WE HEREBY CONFIRM, THAT OUR ABOVE MENTIONED
STAND-BY LETTER OF CREDIT IS AMENDED AS FOLLOWS:
THE VALIDITY DATE IS EXTENDED UNTIL JULY 31, 2007.
THIS NEW DATE IS THE FINAL MATURITY. THAT MEANS
THAT NO FURTHER RENEWAL OF THE STAND-BY LETTER
OF CREDIT WILL BE MADE AFTER THAT DATE.
ALL OTHER THERMS REMAIN UNCHANGED.
SINCERELY YOURS
AIG PRIVATE BANK LTD.
```

```
--------------------------------------------------------------------------------
Message History:
                                                             Stage     Next Act
                    Action  User                             ComServ   Com Seq#
  Date      Time    Xmt Relt Net Prio Recipient      DelServ ======    ========
  ========  ======= ======== ======== =============  ======  Pre-Xmt   Release1
  06-10-30 17:47:15 New      HEFR                             P-ZAHL-I  172793
  06-10-30 17:47:25 OK                ZAHLUNGSVERKEHR PRINTMAN Pre-Xmt  Change
  06-10-30 17:54:20 Update   DOSI                             Pre-Xmt   Release1
  06-10-30 17:55:00 Change   HEFR                             In-Xmt    Xmt
  06-10-30 17:55:23 Release1 DOSI     DEUTUS33XXX     FIN     FIN-L     020265
  06-10-30 17:55:28 OK       N        Message= Post-Xmt Micro-F
------------------------------ E N D  M E S S A G E ----------------------------
```