UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GENERAL ELECTRIC CAPITAL CORPORATION,     :

               Plaintiff,     :   Case No. 07 Civ 9715 (RJH)

        - against -     :

NEW YORK MEG L.L.C., 4D NEUROIMAGING, INC.,   :
and MARTIN EGLI,

                               :

               Defendants.     :

                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO 4D
NEUROIMAGING, INC.'S MOTION TO DISMISS FOR LACK OF
<u>PERSONAL JURISDICTION</u>**

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................ 2

A.    General Jurisdictional Standards ................................................................................ 2

    1.    General Jurisdiction ........................................................................................ 2

    2.    Specific Jurisdiction ........................................................................................ 2

    3.    Alter Ego Jurisdiction ..................................................................................... 4

B.    4D's Motion Fails Based on GECC's Pleading ......................................................... 4

C.    GECC Is Entitled To Discovery Before 4D's Motion Can Be Decided .................... 6

D.    4D's Admissions Show That the Court Has General Jurisdiction Over 4D ............... 9

E.    4D's Admissions Show That the Court Has Specific Jurisdiction Over 4D ............ 10

F.    Alter Ego Liability .................................................................................................... 10

CONCLUSION ....................................................................................................................... 13

Plaintiff, GENERAL ELECTRIC CAPITAL CORPORATION ("GECC"), submits this memorandum of law in opposition to defendant 4D Neuroimaging, Inc.'s ("4D") motion to dismiss for lack of personal jurisdiction.

## PRELIMINARY STATEMENT

As the Court is aware from the contemporaneous Order to Show Cause proceeding, this action concerns GECC's right to relief arising out of defendant, NEW YORK MEG L.L.C.'s ("NY MEG") undisputed failure to make payments -- including a $2,412,786.58 payment due on July 25, 2007 (the "Balloon Payment") -- required under a secured loan between GECC and NY MEG. By the loan, GECC financed NY MEG's purchase of a multi-million dollar imaging system (the "Equipment") from 4D. To secure NY MEG's repayment obligations, GECC holds a security interest in the Equipment and other collateral (collectively, the "Collateral"). NY MEG defaulted on and breached its obligations to GECC by inter alia failing to: (i) pay the Balloon Payment; and (ii) maintain a required letter of credit in Plaintiff's favor. NY MEG has neither paid GECC nor delivered the Collateral to GECC despite due demand.

4D contests jurisdiction and argues that it is a stranger to the dispute. However, GECC claims that NY MEG (a company located in New York) is 4D's alter ego, and that 4D otherwise conducts business in New York. Further, 4D admits that it: (i) solicits business and conducts marketing in New York; (ii) provides services in New York; (iii) uses NY MEG's New York office; and (iv) uses the Equipment for product demonstrations. 4D also admits that its investor and Chairman of the Board participated in NY MEG's financial dealings with GECC. These pre-discovery allegations, and the facts conceded by 4D, establish jurisdiction. Alternatively, GECC is entitled to discovery on these issues before the motion to dismiss can be decided.

84267390.1

## ARGUMENT

### A.    General Jurisdictional Standards

#### 1.    General Jurisdiction

A district court may exercise personal jurisdiction over any defendant "who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located", provided that the exercise of jurisdiction comports with the Fifth Amendment's Due Process Clause. Fed.R.Civ.P. 4(k)(1)(a); see Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L., 264 F.3d 32, 36 (2d Cir.2001). New York subjects a foreign corporation to general jurisdiction if it is "doing business" in the state. See CPLR 301; Aerotel Ltd. v. Sprint Corp., 100 F.Supp.2d 189, 191 (S.D.N.Y. 2000) (interpreting CPLR § 301).

Even temporary visits by employees based out of state may suffice to confer juridiction. Big Apple Pyrotechnics, 2007 WL 747807 at * 2; Thompson Med. Co. v. Nat'l Ctr. of Nutrition, Inc., 718 F.Supp. 252, 254 (S.D.N.Y.1989) (noting, as here, a medical industry defendant's likely focus on the New York market given the sophistication of the medical community here).

#### 2.    Specific Jurisdiction

Alternatively, a court may exercise jurisdiction over a foreign defendant pursuant to New York's long-arm statute, when the plaintiff's claim relates to or arises out of the defendant's New York contacts, however limited those contacts are. CPLR 302(a); See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868 (1984).[1]

_____

[1]    CPLR 302(a) states:

84267390.1

2

The long-arm test does not require regular and systematic activities in the state. Instead, only "some purposeful activity within the state giving rise to at least some minimum contacts between the forum and the party over whom it is asserting jurisdiction" is needed. <u>Alpi USA, Inc. v. D & F Fashion Intern. Gemelli</u>, 2007 WL 942096 (S.D.N.Y., March 29, 2007) (Holwell, J; citing <u>Chemco International Leasing, Inc. v. Meridian Engineering, Inc.</u>, 590 F.Supp. 539, 541 (S.D.N.Y.1984) and <u>Klein v. E.W. Reynolds Co., Inc.</u>, 355 F.Supp. 886 (S.D.N.Y.1973)).

Basically, courts look for "some act by which the defendant purposefully avails itself of the privilege of conducting activities within [New York]." <u>McKee Elec. Co. v. Rauland-Borg, Corp.</u>, 20 N.Y.2d 377, 382 (1967) (quoting <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958)). When a defendant engages in purposeful activity here, personal jurisdiction is proper because it has "invoked the benefits and protections of our laws." <u>Reiner & Co., Inc. v. Schwartz</u>, 41 N.Y.2d 648, 652 (1977) (citations omitted); <u>accord</u> <u>Matter of Sayeh R.</u>, 91 N.Y.2d 306, 319 (1997) ("[R]espondent deliberately and affirmatively sought the protection of this State's laws,

---

a court may exercise personal jurisdiction over any non-domiciliary ...
who in person or through an agent:

(1) transacts any business within the state or contracts anywhere to
supply goods or services in the state; or

(2) commits a tortious act within the state ...; or

(3) commits a tortious act without the state causing injury to person or
property within the state ..., if he [or she] (i) regularly does or solicits
business, or engages in any other persistent course of conduct, or derives
substantial revenue from goods used or consumed or services rendered, in
the state, or (ii) expects or should reasonably expect the act to have
consequences in the state and derives substantial revenue from interstate
or international commerce; or

(4) owns, uses or possesses any real property situated within the state.

and thereby [was] rendered amenable to our general long-arm jurisdiction") and thus "should reasonably expect to defend its actions [ ] here"); Deutsche Bank Sec., Inc. v. Montana Bd. Of Invs., 7 N.Y.3d 65, 71 (S.D.N.Y. 2006).

      3.      Alter Ego Jurisdiction

Where a court has jurisdiction over an individual or corporation, jurisdiction also exists over the individual's or corporation's alter ego. Impulse Marketing Group, Inc. v. National Small Business Alliance, Inc., 2007 WL 1701813 *9 n9 (S.D.N.Y., June 12, 2007); see Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131 (2d Cir. 1991).

**B.      4D's Motion Fails Based on GECC's Pleading**

As this Court has held, "[b]efore discovery, a plaintiff may defeat a motion to dismiss for lack of personal jurisdiction by pleading a prima facie showing of personal jurisdiction over defendants." Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic, 479 F.Supp.2d 376, 379 (S.D.N.Y. 2007) (Holwell, J.; citing Jazini v. Nissan Motor Co., 148 F.3d 181, 184 (2d Cir. 1998) and Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990)); Prince of Peace Enterprises, Inc. v. Top Quality Food Market, LLC, 2007 WL 704171 (S.D.N.Y., March 7, 2007) (Holwell, J.); Unique Industries, Inc. v. Sui & Sons Intern. Trading Corp., 2007 WL 3378256 (S.D.N.Y. 2007) (plaintiff entitled to discovery on jurisdictional issues if "its position is not frivolous").

When assessing a defendant's motion to dismiss for lack of jurisdiction, all pleadings and affidavits are construed in plaintiff's favor. Frontera, 479 F.Supp.2d at 379 (citing PDK Labs v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997) and CutCo Indus., Inc. v. Naughton, 806 F.2d

361, 365 (2d Cir. 1986)); <u>Time Products v. J. Tiras Classic Handbags, Inc.</u>, 1994 WL 363930 (S.D.N.Y. July 13, 1994).

Here, GECC alleges that 4D supplies goods and services in New York, regularly comes to New York to transact business and uses NY MEG's New York facilities as its own. (Affidavit of A. Alyssa Young Exh A ¶ 7, 69 [GECC's Complaint]). 4D confirms GECC's allegations by admitting that 4D services the Equipment in New York, uses NY MEG's offices, conducts product demonstrations in New York using the Equipment and otherwise solicits business and engages in marketing activities in New York. (4D Memo pp. 1, 8). Such conduct and allegations provide the requisite prima facie showing to defeat 4D's motion, under the above legal standards.

In addition, GECC alleges that 4D and NY MEG -- a company whose offices are in New York -- are alter egos. (Young Exh A ¶¶ 2, 7, 48, 60). To that end, GECC alleges that 4D uses and operates NY MEG's New York facility for its own commercial purposes, has disregarded its separate corporate form and commingled funds (<u>Id.</u> at ¶ 7, 69-70), and assumed control over NY MEG's negotiations with GECC over the subject of the instant dispute. (<u>Id.</u> ¶ 46-56, 68-70) GECC also avers that 4D representatives traveled to New York to make financial commitments and set financing terms on behalf of NY MEG. (<u>Id.</u> ¶ 49-51).[2] These allegations are bolstered by

---

[2]    "[A] situation in which a defendant travels to New York to negotiate and execute a contract out of which a dispute later arises is the 'clearest sort of case in which our courts would have 302 jurisdiction'." <u>Big Apple Pyrotechnics</u>, 2007 WL 747807 *5 (quoting <u>George Reiner & Co. v. Schwartz</u>, 363 N.E.2d 551, 554 (N.Y.1977)). Courts hold that conducting contract negotiations in New York can satisfy jurisdictional requirements even if no contract is ultimately executed within New York. <u>Id.</u> (citing extensive authorities). Here, GECC alleges that 4D participated in negotiations with GECC in New York. These allegations suffice to meet the "transacting business" standard.

4D's admission that it uses NY MEG's New York facility for "product demonstrations." (4D Memo p. 8, 69-70).

GECC further alleges that 4D (and NY MEG) are controlled by, and are the alter egos of, defendant Egli (Id. ¶ 60, 68-70), who has persistently appeared and acted in New York for NY MEG regarding matters at issue here. Significantly, 4D concedes that "Egli is an investor in 4-D and also serves as the Chairman of the Board of Directors of 4-D", who "appears to have provided a Letter of Credit in connection with NY MEG's financing of the [E]quipment. (4D Memo p. 2, 4) These alter ego allegations provide a separate, prima facie showing of jurisdiction. Impulse Marketing , 2007 WL 1701813 at *9 n9; Wm. Passalacqua, 933 F.2d at 142-43.

In all, the foregoing allegations regarding 4D's actual activities and alter ego presence in New York set forth facts that support general and specific jurisdiction over 4D. Accordingly, 4D's motion must be denied.

**C.    GECC Is Entitled To Discovery Before 4D's Motion Can Be Decided**

To the extent that the Court finds any jurisdictional deficiency in GECC's pleadings, the Court cannot decide 4D's motion until GECC has had an opportunity for discovery to flesh out the jurisdictional issues. Frontera, 479 F.Supp.2d at  379 (citing Turbana Corp. v. M/V "Summer Meadows",  2003 WL 22852742, at *1 (S.D.N.Y. Dec. 2, 2003)). Put another way, GECC is permitted jurisdictional discovery because its allegations "at the very least ... made a sufficient start" toward establishing the Court's jurisdiction over 4D. BHP Trading (UK) Ltd. v. Deep Sea Int'l Shipping Co., No. 90-CV-2231, 1991 WL 198747, at *5 (S.D.N.Y. Sept. 23,

1991); see also Alloget PLC v. Vantgage Assocs., 2005 WL 612848, at *7 (S.D.N.Y. Mar. 15, 2005).

Here, GECC alleges that 4D has extensive New York contacts – either in its own right, or through its New York MEG alter ego. (e.g., Young Exh A ¶¶ 2, 7, 48, 60, 69). Moreover, 4D admits that it does at least some business in New York -- using NY MEG's New York office for its business purposes (4D Memo p. 8), soliciting business and conducting marketing here (4D Memo pp. 1, 8) and servicing the Equipment and performing product demonstrations here. (4D Memo p. 1) Likewise, GECC's allegations that 4D and NY MEG are alter egos of each other (and of Egli) are bolstered by 4D's admission that Egli is an investor in, and chairman of the board of, 4D who provided a Letter of Credit in connection with NY MEG's financing of the Equipment. (4D Memo p. 2, 4)

4D's motion papers try to minimize and characterize these facts – arguing that its contact with New York is limited and insubstantial, and that Egli's conduct was "either on his own behalf ... or on behalf of NY MEG." (4D Memo pp. 1, 8, 13) However, as 4D concedes some New York activities, and as jurisdiction (both general and specific) are a matter of degree of contact with the forum state, GECC is entitled to discovery on these jurisdictional issues, which are within defendants exclusive knowledge.

For example, 4D admits to soliciting business in New York. Under the so-called "solicitation plus" test for jurisdiction, the Court first determines whether defendant's solicitation in New York is substantial and continuous, and if it is, then the defendant is properly subject to general personal jurisdiction if the defendant also engages in any other activities in the state. Overseas Media, Inc. v. Skvortsov, 407 F.Supp.2d 563, 569 (S.D.N.Y. 2006) (citing Landoil

Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990)). "Once solicitation is found in any substantial degree very little more is necessary to a conclusion of 'doing business'." Aquascutum of London, Inc. v. S.S. Am. Champion, 426 F.2d 205, 211 (2d Cir. 1970); Big Apple Pyrotechnics Inc. v. Sparktacular Inc., 2007 WL 747807 (S.D.N.Y. March 9, 2007). This analysis is "a fact-sensitive determination requiring a balancing of all relevant factual circumstances" including the number, frequency and duration of sales trips to New York made by defendant's representatives and the percentage of a company's revenue attributable to New York business. Landoil, 918 F.2d at 1044–45; Overseas Media, 407 F.Supp.2d at 569.

Most obviously, here, discovery is needed as to: (i) the types and frequency of 4D's New York solicitation and marketing activities; (ii) how often 4D services the Equipment in New York, and the nature of such work; (iii) whether such service is pursuant to a contract between 4D and NY MEG; (iv) how 4D's marketing and service efforts compare to its activities in other forums (i.e., is New York the focus); (v) how often 4D performs product demonstrations in New York; (vi) whether, and how often, 4D uses NY MEG's New York offices for other purposes; and (vii) the precise interrelationship of 4D, Egli and NY MEG, and whether any of Egli's trips to New York on behalf of NY MEG were paid for by 4D.[3]

Accordingly, at this stage -- when GECC has not yet had an opportunity for discovery -- 4D's motion can only be denied or held in abeyance pending discovery.

---

[3]    The foregoing questions are illustrative and not exhaustive.

84267390.1

8

**D.**     **4D's Admissions Show That the Court Has General Jurisdiction Over 4D**

Setting aside the procedural imperatives that require that 4D's motion be denied or held in abeyance pending discovery, 4D admits to facts that establish this Court's general jurisdiction.

Here, 4D admits that it does business in New York. To wit, 4D admits that it uses NY MEG's New York office for its business purposes. (4D Memo p. 8)  4D also admits that it solicits business and engages in "marketing activities" in New York (4D Memo pp. 1, 8). More generally, 4D admits that it services the Equipment in New York, and conducts product demonstrations here. (4D Memo p. 1). Each of these various activities are sufficient to confer jurisdiction. See e.g., Aquascutum, 426 F.2d at 211 (solicitation plus any other minimal contact confers jurisdiction); Big Apple Pyrotechnics, 2007 WL 747807 at * 5 (same); Micro-Assist, Inc. v. Cherry Communications, Inc., 961 F.Supp. 462, 464-65 (E.D.N.Y. 1997) (noting Texas manufacturer's continuing obligation to work on equipment located in New York).

In all, 4D admits to conduct by which it purposely avails itself of the privilege of acting in New York. This is sufficient to confer general personal jurisdiction.[4]

---

[4]     Separately, 4D appears to have waived any claim of lack of personal jurisdiction by weaving into its motion to dismiss: (i) 4D's opposition to GECC's Order to Show Cause application; and (ii) substantive challenges to the sufficiency of GECC's fraud claims. (4D Memo p. 6-7, 12 ["4D appears for the purpose of contesting jurisdiction and – to the extent necessary opposing the order to show cause"]) See e.g., 527 Madison Ave. Co. v. De Loy Executive Service, Inc., 36 A.D. 502, 321 N.Y.S.2d 811, 813 (1971) (holding defendant waived jurisdictional defense by filing simultaneous motion to consolidate), cert. denied, 405 U.S. 989, 92 S.Ct. 1253 (1972).

84267390.1

### E.    Specific Jurisdiction Exists Over 4D

Courts hold that a claim "aris[es] from" a particular transaction when there is "some articulable nexus between the business transacted and the cause of action sued upon." McGowan v. Smith, 52 N.Y.2d 268, 272-73, 437 N.Y.S.2d 643 (1981).

Here, again, 4D admits to facts conferring jurisdiction.  4D admits a nexus to the dispute in that 4D sold the Equipment to NY MEG in the transaction that underlies this dispute.  (4D Memo p. 8 [their role was a "link in the chain"]).  4D also admits that it uses the offices of NY MEG and the Equipment that GECC seeks to repossess.  CPLR 302(a)(4) [use of real property in the state sufficient to confer jurisdiction]).  As noted above, 4D also admits that Egli -- 4D's investor and chairman -- played a central role in financing discussions and the letter of credit dispute that are at the heart of this action.

### F.    Alter Ego Liability

As noted above, when a court finds that jurisdiction exists over an individual or corporation, jurisdiction also exists over the individual's or corporation's alter ego.  Impulse Marketing., 2007 WL 1701813 *9 n9; Wm. Passalacqua, 933 F.2d at 142-43.

GECC's contends that 4D and NY MEG are alter egos of each other (and Egli). (Young Exh A ¶¶ 2, 7, 60, 68-70)  4D admits that Egli is an investor in, and chairman of the board of, 4D. (4D Memo p. 2, 4).  4D does not dispute GECC's claims that Egli acted as NY MEG (4D Memo p. 4), or that Egli assumed control of NY MEG's negotiations with GECC and threatened to "shut down" NY MEG.  (Young Exh A ¶¶ 47-70)

Under New York law "'alter ego' has a clearly defined meaning in law; namely, where one entity exercises complete domination and control over the day-to-day operations of another entity." See, Matter of Morris v. New York State Dept. Of Taxation & Fin., 82 N.Y.2d 135, 141 (1993); Almonte v. Western Beef, Inc., 21 AD3d 514 (2d Dep't 2005); Parklex Associates ex rel. Holtkamp v. Parklex Associates, 15 Misc.3d 1125(A), 841 N.Y.S.2d 220 (Sup. Ct. Bronx Co. 2007); Greenpoint Mortg. Funding Inc. v. Stewart Title Ins. Co., 12 Misc.3d 1194(A), 824 N.Y.S.2d 768 (Sup. Ct. Nassau Co. 2006). GECC's allegations regarding 4D's and Egli's control and misuse of NY MEG for their own purposes (bolstered by 4D's admissions) suffice.

Moreover, the case law recognizes that alter ego type claims are fact intensive and "not well suited for resolution on a motion to dismiss." Parklex Associates, 15 Misc.3d at 1125, 841 N.Y.S.2d at 220. Before dismissal can be granted, a plaintiff is entitled to obtain necessary discovery to ascertain whether there are grounds for the claim. Id. Inasmuch as all of the relevant information concerning defendants' interrelationships and activities together necessarily is in defendants' exclusive knowledge and possession, GECC requires discovery in order to establish its alter ego claims for purposes of establishing jurisdiction and otherwise.

4D incorrectly argues that GECC's "alter ego claims are insufficient as a matter of law to confer jurisdiction over 4-D because 4-D has no ownership interest in NY MEG." (4D Memo p 10, 12 [arguing that "common ownership" is essential]). To make this false argument, 4D misapplies the holdings in Volkswagenwerk Aktiengesellschaft v. Beech Aircrapft Corp., 751 F2d 117, 120 (2d Cir. 1984) and Indemnity Ins. Co. v. k-Line of Norath America, 2007 WL 1732435 (S.D.N.Y. June 14, 2007). *Neither Volkswagenwerk nor Indemnity Ins. Co involve alter ego claims, and the term "alter ego" does not appear anywhere in either decision.* To the contrary, both those cases concern the "mere department" theory of liability and jurisdiction (i.e.,

whether "one corporation can be considered a department of another"), with the focus on parent-subsidiary considerations.  Volkswagenwerk, 751 F2d at 120.

Likewise mistaken is 4D's reliance on Lowendahl v. Baltimore & Ohio RR, 247 A.D.144, 154-57, 287 N.Y.S.2d 62 (1st Dep't 1936) for the proposition that 2 companies must be so "inextricably confused that it is impossible or impractical to identify" which participated in a transaction. (4D Memo p. 11)   This argument by 4D relies on selective and misleading excerpting of a factually distinguishable decision.  The Lowendahl court held that:

> The 'instrumentality' rule may be formulated as follows: Where a parent corporation, at the time of the transaction complained of, (1) *exercises control over its subsidiary not in a manner normal and usual* with stockholders, but to such extent and in such manner, in disregard of the subsidiary's corporate paraphernalia, directors and officers, *that the subsidiary has become a mere instrumentality or department of the parent's own business* and the parent, under the unreal form of the subsidiary, is the real actor in the transaction; *or where the business and officers of the two corporations have become so inextricably confused* that it is impossible or impracticable to identify the corporation that participated in the transaction ...

Id. (emphasis added).  In short, Lowendahl, too, concerned a parent-subsidiary situation. Moreover, the Court specifically recognized an "instrumentality" theory based on "control" different from the "inextricably confused" standard presented by 4D.

4D's reliance on Wm. Passalacqua, 933 F.2d at 138 (4D Memo p. 11) for the for the proposition that an alter ego claim requires the subject entities to be operated as a "corporate combine" is similarly erroneous.  Wm. Passalacqua, like all cases involving alter ego claims, holds that the "critical question" is whether the one company has become a mere instrumentality of the other. Id., 933 F.2d at 138.

84267390.1

12

In fact, 4D's own authorities support GECC's position (and not 4D's claim of an erstwhile "common ownership" requirement). To that end, <u>Wm. Passalacqua</u>, 933 F.2d at 138-39 and <u>Lowendahl</u>, 247 A.D. at 154-57, both cited at 4D Memo p. 11, discuss domination and control of a corporation by another – they do not require "common ownership". Indeed, <u>Wm. Passalacqua</u> cites "overlap in ownership" as one of at least ten factors to consider (<u>Id.</u>, 933 F.2d at 139) and <u>Lowendahl</u> discounts the significance of ownership (<u>Id.</u>, 247 A.D.at 154, 287 N.Y.S.2d 62 [control through ownership is no sufficient]). Thus, the relevant inquiry is whether a defendant exercised "complete domination and control" over the other entity, and 4D's claimed requirement of "common ownership" is a complete fabrication.

## CONCLUSION

For the above reasons, 4D's motion to dismiss should be denied in its entirety. In the alternative, 4D's motion must be held in abeyance pending the conclusion of discovery directed at the jurisdictional issues.

Dated: January 11, 2007
New York, New York

KATTEN MUCHIN ROSENMAN LLP

By: _____
    Jonathan J. Faust (JF 2037)

Attorneys for Plaintiff
575 Madison Avenue
New York, New York 10022
(212) 940-8800

84267390.1