UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------- x

GENERAL ELECTRIC CAPITAL CORPORATION,    :

                Plaintiff,    :    Case No. 07 Civ 9715 (RJH)

         - against -    :

NEW YORK MEG L.L.C., 4D NEUROIMAGING, INC.,    :
and MARTIN EGLI,
                             :

                Defendants.
                             :
------------------------------------------- x

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF ITS ORDER TO SHOW CAUSE APPLICATION**

84267031.1

# TABLE OF CONTENTS

                                                                                                                              Page

PRELIMINARY STATEMENT .................................................................................................. 1

RESPONSE TO NY MEG'S ARGUMENTS ................................................................................ 1

A.    NY MEG's "Commercial Reasonableness" Argument is Meritless .................................. 2

    1.    Doctrine Applies To Creditor's Conduct After Creditor Has Possession ............... 2

    2.    NY MEG's Invented Standard Would Invalidate GECC's Security Interest ......... 4

    3.    GECC's Objective ..................................................................................................... 5

B.    NY MEG's Use of the Equipment and "Continuing Installment Payments" Are No Reason to Deny GECC possession of the Equipment ........................................................ 6

C.    It Is Urgent That GECC Obtain Possession ........................................................................ 7

D.    NY MEG Is Required to Pay For the Delivery of the Equipment to GECC ...................... 8

E.    Failure To Maintain A Letter of Credit ............................................................................... 9

F.    GECC Is Entitled to Recover its Attorney's Fees ............................................................... 9

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page

**Cases**

Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240,257, 95 S.Ct. 1612, 1621 (1975) (NY MEG Memo. p. 19) .................................................................................... 10

Congressional Sec., Inc. v. Fiser Sec., Inc, 2004 WL 829028 *3-4 (S.D.N.Y. April 15, 2004) (Holwell, J) ................................................................................................... 10

CreditLeasing Int'l Corp. v. OMLW Invest. Co, 1990 WL 83520 (S.D.N.Y. June 11, 1990) .................................................................................................................... 3

Orix Financial Servics, Inc. v. Thunder Ridge Energy, Inc, 2006 W.L. 587483 *15-16 (S.D.N.Y. March 8, 2006; Holwell, J.) ................................................................... 4

SNCB Corp. Fin. Ltd. v. Schuster, 877, F.Supp. 820, 827 (S.D.N.Y. 1994) ................. 3

Summer v. Extebank, 88 A.D.2d 887, 452 N.Y.S.2d 873 (1st Dep't 1982) ................... 4

**Statutes**

N.Y.U.C.C. §§ 9-610 and 9-504 ................................................................................... 3

N.Y.U.C.C. §§ 9-610 Official Comment 2 .................................................................. 3

N.Y.U.C.C. §§ 9-610 Official Comment 4 .................................................................. 4

Plaintiff, GENERAL ELECTRIC CAPITAL CORPORATION ("GECC"), submits this reply memorandum in support of its application for an order directing defendant, NEW YORK MEG L.L.C. ("NY MEG"), to immediately deliver to GECC the collateral securing GECC's multi-million dollar loan to NY MEG, following NY MEG's complete failure to make payments required under the loan.

## PRELIMINARY STATEMENT

NY MEG's opposition papers do not say anything to meaningfully refute, limit or constrain GECC's right to immediate possession of the collateral securing loans that NY MEG has defaulted on. The only statements of any consequence in NY MEG's papers are its admissions that: (i) it executed a financing agreement and related contracts under which it was obligated to pay $2,412,786.58 to GECC on or before July 25, 2007 (the "Balloon Payment"); (ii) the Balloon Payment, and other of NY MEG's obligations to GECC, were secured by various collateral; (iii) NY MEG failed to make the Balloon Payment; and (iv) NY MEG failed to deliver the collateral to GECC. (see NY MEG Memo pp. 4, 6-7). Everything else in NY MEG's papers is a factually and legally irrelevant smokescreen.

## RESPONSE TO NY MEG'S ARGUMENTS

GECC's right to the requested relief is set forth in detail in the Affidavit of Jon D. Storck, dated October 10, 2007. Briefly summarized here, pursuant to various contracts, Plaintiff agreed to finance NY MEG's purchase of a multi-million dollar brain imaging system (the "Equipment"). NY MEG promised to repay Plaintiff in accordance with written schedules. To secure NY MEG's payment obligations, GECC was granted a security interest in the Equipment

84267031.1

and other specified collateral (collectively, the "Collateral"), which GECC perfected. The foregoing specifically is conceded by NY MEG. (NY MEG Memo. p. 4)

NY MEG defaulted on and breached its obligations to GECC by failing to: (i) pay the Balloon Payment; and (ii) maintain a required letter of credit in Plaintiff's favor. While NY MEG argues that it was not required to maintain a letter of credit (NY MEG Memo pp. 15-19), it admits that it defaulted on the Balloon Payment. (NY MEG Memo. pp 6-7) The two defaults claimed by GECC are separate and distinct, and each independently entitles GECC to, inter alia, recover the Collateral. Thus, NY MEG's disputed obligation to provide a letter of credit does not limit or affect GECC's right to recover the Collateral based on NY MEG's undisputed failure to pay the Balloon Payment.

NY MEG wrongfully continues to possess and use the Collateral for its own benefit. Defendants have specifically told GECC that NY MEG faces imminent business collapse, which places the Equipment in immediate jeopardy. Indeed, the parties have been unable to negotiate an amicable resolution to this dispute because NY MEG's claimed financial problems and limitations prevent the parties from reaching terms that are acceptable to GECC.

A. **NY MEG's "Commercial Reasonableness" Argument is Meritless**

    1. Doctrine Applies To Creditor's Conduct After Creditor Has Possession

NY MEG's contention that GECC is not entitled to possession of the Collateral (notwithstanding NY MEG's admitted breach/default for failure to pay the Balloon Payment) is factually and legally erroneous, and a complete misapplication of the "commercial reasonableness" doctrine.

There is absolutely nothing about the doctrine of commercial reasonableness that in any way limits, constrains or delays a creditor's right to immediately obtain possession of collateral securing a debt once the debtor defaults. To the contrary, this doctrine applies only to a creditor's handling and disposition of collateral *after the creditor obtains possession.* Indeed, by their very terms, N.Y.U.C.C. §§ 9-610 and 9-504 together with each and every case cited by NY MEG, concern the "method, manner, time, place and other terms" *of a creditor's sale of collateral that the creditor already has repossessed.*[1] E.g., SNCB Corp. Fin. Ltd. v. Schuster, 877 F.Supp. 820, 827 (S.D.N.Y. 1994) (NY MEG Memo p. 9; debtor's guarantors argued that creditor's failure to adequately advertise foreclosure sale or circulate information regarding the collateral that was sold resulted in "artificially low price" at auction); CreditLeasing Int'l Corp. v. OMLW Invest. Co, 1990 WL 83520 (S.D.N.Y. June 11, 1990) (NY MEG Memo p. 9; debtor's expert testified that equipment "could have been sold for between $500,000 and $700,000 when it actually was sold for around $250,000").

The doctrine simply recognizes that if a creditor seeks to sell repossessed collateral to satisfy the debtor's debt, the creditor must take commercially reasonable steps to achieve a fair sale price. As the debtor may be liable for any deficiency between the debt amount and the proceeds from any foreclosure sale of the collateral, the doctrine directs the creditor to act reasonably to try to maximize the sale proceeds. N.Y.U.C.C. §§ 9-610 Official Comment 2 (noting that a "higher realization on collateral" will benefit all concerned); Summer

---

[1] It is precisely because the doctrine is utterly inapposite and irrelevant to GECC's instant attempt to obtain possession that GECC's moving papers "did not address the 'commercial reasonableness' of its request." (see NY MEG Memo p. 9) Thus, while NY MEG repeatedly argues that GECC is "disingenuous" in its papers, it is NY MEG (not GECC) that misapplies a well-established doctrine.

v. Extebank, 88 A.D.2d 887, 452 N.Y.S.2d 873 (1st Dep't 1982) (purpose of doctrine is to ensure that collateral is not sold at a price artificially below the collateral's true value).

To that end, as Your Honor previously has held, a claim that a creditor acted unreasonably in the disposition of the collateral does not relieve the debtor of any of its obligations. Rather the penalty for a creditor's failure to act commercially reasonably is to reduce the debtor's remaining debt to the creditor by the amount that the creditor's actions unreasonably depressed the sale price of the collateral. Orix Financial Servics, Inc. v. Thunder Ridge Energy, Inc, 2006 W.L. 587483 *15-16 (S.D.N.Y. March 8, 2006 (Holwell, J.) (rejecting guarantors' claim that creditor acted unreasonably in not providing a local point of contact in the auction notice and, in any event, guarantor's recovery would be to "reduce plaintiff's recovery in an amount equal to the diminution in the proceeds from the sale attributable to the defect").

NY MEG cites no authorities -- and GECC is aware of none -- standing for the proposition that a creditor can be denied possession of collateral based on a claim of "commercial unreasonableness" or that the need to disassemble collateral prevents a secured creditor from obtaining possession after the debtor's default. Indeed, courts recognize that pre-disposition preparation, processing or assembly of collateral after it is delivered to the creditor is unobjectionable. N.Y.U.C.C. §§ 9-610 Official Comment 4.

2.   NY MEG's Invented Standard Would Invalidate GECC's Security Interest

NY MEG's claim that dismantling and shipping the Equipment to GECC is commercially unreasonable because: (i) such processing would render the Equipment valueless (NY MEG Memo pp 8-9); and/or (ii) NY MEG is one of only "a handful of entities in the world" capable of maintaining the Equipment (NY MEG Memo p 12) is a rhetorical tautology that

would entirely subvert GECC's security interest. If the Equipment cannot be disassembled, removed from its current location or taken from NY MEG's possession, then GECC's security interest can never be satisfied. NY MEG cannot thereby vitiate the parties' express agreement.

Moreover, NY MEG explicitly agreed that GECC is entitled to possession of the Equipment following default. (Storck Aff Exh A ¶¶ 8(a), 9(b) [Master Security Agreement]). NY MEG also specifically agreed that, following default, the Equipment would be removed from its current location and turned over to GECC -- at NY MEG's sole cost, and in good working order and condition. (Storck Aff. Exh A ¶ 8(a), 9(c); NY MEG Memo p. 14 [quoting the contract language]). As the parties' contract specifically contemplates removing the Equipment from NY MEG's premises and turning it over to GECC (id. [discussing "removal"]) and even de-installation and crating. (id at ¶ 8(b)), NY MEG cannot claim that doing so is unreasonable.

Further, nothing in GECC's application requires that the Equipment be dismantled and returned hastily or precipitously. GECC envisions an orderly, professional and protective process – *albeit one that starts immediately*. NY MEG simply cannot continue to use the Equipment after default/breach, or fail to immediately start the process of turning over possession to GECC, on the grounds that delivering possession to GECC is unreasonable.

3.   GECC's Objective

NY MEG challenges the "objective" behind GECC's application. (NY MEG Memo pp 11-13). However, GECC's objective is simple – to either be paid the outstanding amounts that it is owed under the parties' agreements or to recover the Collateral to which it is lawfully and contractually entitled. There is nothing unreasonable about GECC enforcing its contract rights. If NY MEG finds the loss of the Equipment unpalatable, it should pay its debt.

84267031.1                                      5

B.  **NY MEG's Use of the Equipment and "Continuing Installment Payments" Are No Reason to Deny GECC possession of the Equipment**

Incredibly, NY MEG argues that delivering the Collateral to GECC is "unnecessary to protect GECC's interest" because NY MEG: (i) will want to keep the Equipment running since it is integral to its business; and (ii) has continued to pay "$55,000 monthly installment payments" to GECC. These claims are legally irrelevant, and factual distortions. (NY MEG Memo pp 2-3, 11, 13)

First, as NY MEG specifically told GECC, while NY MEG currently is a going concern, it is in financial extremis and soon may be out of business. (Storck Aff. ¶¶ 52, 58). Indeed, it is precisely because of NY MEG's precarious financial position that NY MEG was unable to pay the Balloon Payment when due -- or at any other time over the past 6 months -- or even refinance its debt to GECC on terms acceptable to GECC. (Id.) So, while the Equipment may be important to NY MEG's business, NY MEG knows that it soon will be turned over to Plaintiff due to NY MEG's default. Thus, NY MEG has every incentive to abuse, overuse and misuse the Equipment excessively in the short term to generate revenues that will not be applied to pay off GECC. (see Storck Aff. ¶ 6) Likewise, recognizing that it cannot keep the Equipment, NY MEG will have no incentive to incur the expense or make the efforts required for proper long term maintenance of the Equipment.

NY MEG's claim of "continuing monthly payments" is a gross misnomer and a complete mischaracterization. GECC has not agreed to accept "continuing monthly payments" of $55,000, or otherwise restructure the overdue Balloon Payment. Rather, NY MEG paid: (i) $55,000 in October 2007 in exchange for GECC's consent to NY MEG's request to adjourn the hearing date in the state proceedings; and (ii) $110,000 in November 2007 in exchange for

84267031.1                                6

GECC's consent to NY MEG's request for a 45 day standstill in this action. (Reply Affidavit of Jonathan Faust, sworn to January 9, 2008, ¶¶ 2-7)   Such payments do not reflect any agreed upon course of future dealing.  Rather, GECC was unwilling to extend court dates as requested by NY MEG without NY MEG paying for its continued use of the Equipment, and the pre-Balloon Payment monthly installment amounts were a convenient unit of measurement. (Id.).

Moreover, NY MEG (as debtor) cannot prevent GECC (as secured creditor) from exercising its lawful remedies by unilaterally imposing a debt restructuring "plan" that GECC finds unacceptable.  NY MEG's monthly payments of $55,000 provide no comfort to GECC when *NY MEG owes GECC more than $2,412,786.58 (i.e. the Balloon Payment, plus interest, fees and other charges).*  Ignoring interest charges, at the rate of payment suggested by NY MEG, GECC will not be paid in full for almost 4 years!  To that end, while the parties' prior relationship included a period during which NY MEG paid $55,000/month to GECC, that arrangement was acceptable *because NY MEG also has in place a substantial letter of credit protecting GECC against NY MEG's default.*  NY MEG now refuses to furnish a comparable letter of credit (NY MEG Memo p. 7) underscoring the extent to which GECC is exposed.

C.     **It Is Urgent That GECC Obtain Possession**

NY MEG suggests that GECC's application for immediate return of the Equipment is somehow improper because GECC did not seek such relief immediately following NY MEG's default and breach on July 25, 2007. (NY MEG Memo p. 13)  This argument has no basis in law and is a grossly unfair effort to penalize GECC for acting honorably and reasonably in this action.  As NY MEG concedes, after NY MEG failed to make the Balloon Payment, GECC tried to pursue an amicable resolution to the dispute, including possible refinancing.

GECC commenced this action to enforce its security interest when it became clear that NY MEG: (i) could not (or would not) pay the Balloon Payment; (ii) would not agree to reasonable refinancing terms; and (iii) threatened GECC with an imminent collapse of its business. (NY MEG MEMO pp. 6-7; Storck Aff. ¶¶ 43-52). Moreover, after seeking judicial relief, GECC acquiesced to NY MEG's requests for extensions to accommodate defense counsel and to, again, try to negotiate a resolution.

GECC never waived any of its rights, and it is entirely inappropriate for NY MEG to use GECC's good faith willingness to discuss settlement as a purported grounds for denying GECC relief. Moreover, it was entirely proper for GECC to allow NY MEG to retain possession of the Equipment when it seemed as if the parties could negotiate a refinancing arrangement. Now that it is evident that a refinancing on terms acceptable to GECC is impossible, the exigencies warranting immediate relief become manifest.

NY MEG can be assured that, to guard against such arguments in GECC's other dealings with NY MEG or its principals, no similar accommodations will be made in the future.

**D.     NY MEG Is Required to Pay For the Delivery of the Equipment to GECC**

NY MEG's opposition papers try to invent a contractual ambiguity where plainly none exists. The parties' Master Security Agreement expressly states that, following NY MEG's default, GECC is entitled to possession of the Equipment and to "remove the same from its existing location" (Storck Aff Exh A ¶ 9(b)[Master Security Agreement]), and that "the cost *of removal and turnover*, including *all transportation*, of the Equipment ... will be at Debtor's expense". (Id. at ¶ 8(a) [emphasis added]; ¶ 9 (c)). Indeed, if NY MEG made modifications to its

premises after the Equipment was installed which impedes removal, the cost of removing the impediment(s) to allow for removal of the Equipment is also NY MEG's expense. Id.

Obviously, plainly and clearly, the foregoing language provides that NY MEG must bear the cost of delivering the Equipment to GECC. Whether NY MEG wishes to make and pay for its own removal arrangements to effect physical delivery to GECC, or simply pay for the arrangements made by GECC, there is absolutely no ambiguity that NY MEG must pay for the cost of physically delivering the Equipment to GECC.[2]

### E.  Failure To Maintain A Letter of Credit

NY MEG's default in failing to maintain a letter of credit is set forth in GECC's prior papers. However, even if the Court were to determine that NY MEG is not in default/breach for failure to maintain the required letter of credit, NY MEG remains in default/breach – and GECC remains entitled to possession of the Equipment – because of NY MEG's admitted and abject failure to pay the $2.4 million Balloon Payment, which has been outstanding since July 25, 2007. For this reason, GECC reserves its claim relating to the letter of credit and focuses this application on NY MEG's undisputed failure to pay the Balloon Payment.

### F.  GECC Is Entitled to Recover its Attorney's Fees

The lack of merit to NY MEG's arguments is evident in its claim that the "American Rule" prevents GECC from recovering its attorney's fees. (NY MEG Memo p. 19) As the very authorities cited by NY MEG clearly state, litigants pay their own attorneys' fees

---

[2] Indeed, while NY MEG claims that an ambiguity exists, they do not identify what any alternate reading of the contract terms could mean. What does "removal and turnover" mean if not "physical delivery"?

*except where the parties' contract (or an applicable statute) provides otherwise.* See e.g. Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 257, 95 S.Ct. 1612, 1621 (1975) (NY MEG Memo. p. 19). Indeed, this Court specifically has rejected the "American Rule" as a defense to the award of attorney's fees where the parties' contract provides for the recovery of attorneys fees incurred in connection with defendant's default/breach. see Congressional Sec., Inc. v. Fiser Sec., Inc, 2004 WL 829028 *3-4 (S.D.N.Y. April 15, 2004) (Holwell, J).

Here, the parties' agreements expressly provide for GECC to recover its costs and attorneys fees. (Storck Aff Exh A ¶ 9(d)["Debtor shall pay Secured Party's actual attorney's fees incurred in connection with the, assertion, defense or preservation of Secured Party's rights"]; see 17(c)). Accordingly, NY MEG is required to pay GECC's costs and attorneys' fees. NY MEG's assertion of the "American Rule" without regard for the governing contractual provisions is fatal to its argument, and indicative of the frivolous nature of its opposition to GECC's claims.

## CONCLUSION

By virtue of NY MEG's failure to pay the $2.4 million Balloon Payment, and other defaults, Plaintiff is entitled to the relief requested.

Dated: January 10, 2007
      New York, New York

                                    KATTEN MUCHIN ROSENMAN LLP

                                    By: _____
                                        Jonathan J. Faust (JF 2037)
                                    Attorneys for Plaintiff
                                    575 Madison Avenue
                                    New York, New York 10022
                                    (212) 940-8800